UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

3:11-CV-477

Shawn Massey,
                *Plaintiff*,

v.

Charlotte-Mecklenburg Police Officer J.J. Ojaniit;
Charlotte-Mecklenburg Police Officer Gerald J.
Esposito; Charlotte-Mecklenburg Police Officer
Tom. G. Ledford; and Charlotte-Mecklenburg
Police Officers John and Jane Does ##1–10, in
their individual capacities.

                *Defendants*.

## COMPLAINT AND JURY DEMAND

Plaintiff Shawn Massey, by and through his attorneys, Rudolf Widenhouse & Fialko, hereby alleges as follows:

## INTRODUCTION

1. Shawn Massey spent nearly 12 years—almost all of his adult life—wrongly imprisoned for a May 1998 armed robbery and kidnapping he did not commit. Mr. Massey was exonerated in May, 2010, after the Mecklenburg County District Attorney's Office moved to overturn his conviction based on newly discovered evidence of innocence.

2. Police knew or should have known from the first days of their investigation that Shawn Massey was innocent. No physical evidence ever linked Mr. Massey to the crime. Nor did he match the description given by the victim: she described her assailant as having his hair braided in cornrows, while Mr. Massey has always had short-cropped hair without any braids. Mr. Massey's wrongful conviction was the result of misconduct by the

investigating officers of the Charlotte-Mecklenburg Police Department, including, most notably, the fabrication that a friend of Mr. Massey's had told the police that Mr. Massey was wearing his hair in braids at the time of the assault.

3. As a direct result of Defendants' unconstitutional, willful, wanton, reckless, deliberately indifferent, and bad-faith acts and omissions, Shawn Massey sustained personal physical injuries and sicknesses, which resulted in substantial damages in each year from 1998 to the present. These included, but were not limited to, the following: various physical injuries; various physical illnesses; inadequate medical care; pain and suffering; severe mental anguish; emotional distress; humiliation, indignities and embarrassment; degradation; loss of the opportunity to attend school, obtain employment, marry and have children; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, family relations, television, travel, enjoyment, and expression.

## PARTIES

4. Plaintiff Shawn Massey is an individual who, at all times pertinent to this Complaint, resided in North Carolina.

5. Defendant J.J. Ojaniit is an individual who was an officer with the Charlotte-Mecklenburg Police Department and, upon information and belief, resided in North Carolina at all times pertinent to this Complaint.

6. Defendant Gerald J. Esposito is an individual who was an officer with the Charlotte-Mecklenburg Police Department and, upon information and belief, resided in North Carolina at all times pertinent to this Complaint.

7. Defendant Tom G. Ledford is an individual who was an officer with the Charlotte-Mecklenburg Police Department and, upon information and belief, resided in North Carolina at all times pertinent to this Complaint.

8. Defendants John and Jane Does ## 1-10 are individuals whose identities are currently unknown, who, on information and belief, resided in North Carolina at all times pertinent to this Complaint.

9. At all times herein, in committing the acts and omissions herein alleged, each of the Defendants was acting in the course of his employment and under color of state law.

## JURY TRIAL DEMAND

10. Shawn Massey hereby demands a trial by jury on all issues so triable.

## FACTS

### A. The Crime

11. At approximately 10:00 a.m. on May 22, 1998, an unknown armed assailant forced 21-year-old Samantha Wood and her two young children into her apartment at 5206 B Cherrycrest Lane in Charlotte, North Carolina.

12. The assailant was a 5'9" black male, approximately 180 lbs, with cornrows—that is, braids that ran from near his face all the way to the back of his head and then hung down over his neck. He was wearing a red shirt and blue jean shorts.

13. The assailant brought Ms. Wood to her bedroom and attempted to rape her; stopping only because she was having her period.

14. The assailant then took $60.00 from Ms. Wood's purse and threatened her before leaving the apartment.

3

Case 3:11-cv-00477-RJC-DCK   Document 1   Filed 09/23/11   Page 3 of 13

### B. The Investigation

15. Charlotte-Mecklenburg Police Officers J.J. Ojaniit responded to the scene and interviewed Ms. Wood shortly after the crime.

16. Ms. Wood described her assailant to Officer Ojaniit as a black male, 5'9" inches tall and 180 lbs to 165 lbs, "with his hair pulled back from his face and (4) small braids on the back of his head." She further told Officer Ojaniit the male was wearing a red shirt and blue jean shorts.

17. The following day, Officer Ojaniit and Officer G.L. Esposito returned to the scene to locate possible witnesses. They spoke to Theresa Savall, the rental manager. She reported that while on the property the day before, between 10:00 a.m. and 11:00 a.m., she had been approached by a man who had asked her out and complimented her on her appearance, and who she had rejected. Ms. Savall described this man as a male black, in his 20's, approximately 5'11" tall and 165+ lbs, wearing a "jersey" type shirt, blue jeans, and a ball cap. Ms. Savall stated she had seen this man coming from the patio of 5038 Cherrycrest Lane, Apartment C.

### C. The Fabrication

18. Officer Esposito then went to 5038 Cherrycrest Lane, Apartment C, and spoke with April Pride, who lived there. Officer Esposito lied to Ms. Pride about the purpose of his visit, telling her it was to investigate a complaint about noise. April Pride told him that her friend, Shawn Massey, had stayed in her apartment on the evening of Thursday, May 21, 1998.

19. Officer Esposito reported that April Pride also told him that "Mr. MASSEY wears his hair pulled back with 4 or 5 braids"—almost verbatim the same description that Ms.

Wood had given of her assailant's hairstyle. This report was a fabrication. Ms. Pride never told Officer Esposito or anyone else that Mr. Massey ever wore his hair pulled back or in braids. In fact, Mr. Massey has always kept his hair very short, and had never worn his hair in braids. Officer Esposito took no signed statement from April Pride.

### D. Mis-Identification

20. On the same day, May 23, 1998, Officer Ojaniit invited Ms. Wood to come down to the police station to view a photo line-up of possible suspects. Ms. Wood was shown a six-photograph line-up that included a photo of Shawn Massey. Ms. Wood selected the photo of Mr. Massey as "looking the most like" her assailant, but told Officer Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard. She did not make a positive identification of Mr. Massey.

21. Officer Ojaniit wrote a report that stated that claimed that Ms. Wood had told him that "one of the subjects looked liked the suspect." What Ms. Wood in fact told Officer Ojaniit was that the photo of Mr. Massey looked "the most like" the suspect of the photos in the lineup. The omission of the words "the most like" from Officer Ojaniit's report made the written report of the identification false and misleading.

22. Several days later, on May 26, 1998, Officer Ledford showed this same photo line-up to Ms. Savall, who stated that the photo of Mr. Massey "looks like the person who spoke to me" on the morning of May 22, 1998 and "I believe he is the same person."

23. Three days later, on May 29, 1998, Shawn Massey was arrested, and charged with armed robbery with a deadly weapon, three counts of kidnapping in the second degree, and felonious breaking and entering. The then-25-year-old Mr. Massey remained in custody continuously from the date of his arrest until his exoneration nearly 12 years later.

### E. Trial

24. Mr. Massey's trial began on September 13, 1999. Ms. Wood testified to the details of the robbery and kidnapping. When asked to describe her assailant, she said "He had braids in his hair, with five hanging down. He was about five-eight; but, I'm short, so, I don't measure that well." When asked by the prosecutor to clarify whether the braids went all through his hair or were just on the back or just on the sides, Ms. Wood testified the braids went through his hair. Ms. Wood also testified her assailant was wearing a red, jersey-type shirt with hurricane signs on it.

25. Ms. Wood also described the photo line-up at which she had tentatively identified Mr. Massey as the assailant, and positively identified Mr. Massey in court, although she testified that he looked different in court than he had at the time of the robbery, as his hair was shorter now and he was thinner. Ms. Wood also claimed to now recognize Mr. Massey's voice as that of her assailant.

26. Ms. Savall identified Mr. Massey as the man she had seen on the property on the morning of May 22, 1998. She explained that she had not seen this person's hair, as he was wearing a hat, but that she did not remember seeing any braids. She also testified the person she had spoken to had been wearing an orange and white jersey and blue jean pants – not shorts. Ms. Savall explained she had never felt threatened by this man, and that when she turned down his offer of a date and asked him to move along he had done so.

27. Ms. Pride testified that Shawn Massey had been staying at her apartment on May 22, 1998. She also testified that she'd known Mr. Massey for 10 or 11 years, saw him very frequently over that time, and that she had never known him to wear braids; rather, he

6

Case 3:11-cv-00477-RJC-DCK   Document 1   Filed 09/23/11   Page 6 of 13

had always kept his hair short. Ms. Pride specifically testified that on May 22, 1998, Mr. Massey was not wearing braids but had a "low" haircut.

28. The prosecution impeached Ms. Pride with Officer Esposito's fabricated police report, which falsely stated she had told him that Mr. Massey wore his hair in braids. Ms. Pride testified that she had never told Officer Esposito that Mr. Massey wore braids, and that she had no idea why Officer Esposito would have written that down.

29. A number of friends and family members testified for the defense that Mr. Massey had always had short hair and had never worn braids of any kind.

30. A man for whom Mr. Massey did day labor testified that he had driven Mr. Massey to a work site the morning of May 22, 1998 and that Mr. Massey had not left the site until mid-afternoon. He produced pay records to show Mr. Massey had been paid for working on May 22, 1998. A co-worker, corroborated that Mr. Massey had been at work that day, and that Mr. Massey's hair was cut short.

31. On September 17, 1999, the jury convicted Mr. Massey of all charges. Judge James L. Baker sentenced him to a minimum term of 103 months and a maximum term of 133 months for the armed robbery with a dangerous weapon charge, and a minimum of 34 months and a maximum of 50 months for the consolidated kidnapping and breaking and entering charges. Judge Baker ordered that Shawn serve the sentences consecutively.

F. **Exoneration**

32. In the mid-2000s, the Duke Wrongful Conviction Clinic accepted Mr. Massey's case. During the course of its investigation, the Clinic uncovered a series of seven 8" by 10" arrest photos of Mr. Massey, taken over the period April 18, 1991, through May 29, 1998. In each photograph, Mr. Massey had short hair. One photograph was taken on

7

March 9, 1998, just eleven weeks before Ms. Wood was robbed; in that photo, Mr. Massey's hair was cut very short. Furthermore, two professional barbers with experience braiding hair provided affidavits asserting it was not possible that Mr. Massey's hair could have grown long enough between March 9, 1998 and May 22, 1998 to be braided into cornrows, and that if he had had cornrows cut off at some point on or after May 22, 1998, lines in his scalp would still have been visible in his May 29, 1998, arrest photo (which they were not).

33. The clinic also located and interviewed Ms. Wood. She disclosed that, despite her unequivocal in-trial identification of Mr. Massey as her assailant, she had had doubts about her identification of Mr. Massey when she had first seen him in person in court in September, 1999. This was confirmed by the Assistant District Attorney. Ms. Wood also confirmed that her assailant had worn cornrows; that is, braids that ran from near his face to the back of his head.

34. Based on this newly discovered evidence of innocence, the Mecklenburg County District Attorney's Office asked the court to vacate Mr. Massey's conviction and order his immediate release.

35. On or about May 6, 2010, the judge signed an order vacating Mr. Massey's conviction and directing the prison to release him immediately. DA Gilchrist dismissed all charges against Mr. Massey. After nearly 12 years, Mr. Massey was finally released from prison that day.

8

## CAUSES OF ACTION

## COUNT I

## 42 U.S.C. §1983 DUE PROCESS VIOLATION UNDER 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION

36. Plaintiff incorporates the allegations made in paragraphs 1-35 above and further alleges as follows:

37. Defendants deliberately fabricated evidence by falsely reporting, both in oral pretrial reports to the prosecutor and in written reports, that April Pride had stated that Mr. Massey wore his hair pulled back from his face and in braids.

38. In fact, Ms. Pride knew that Mr. Massey had always worn his hair cut short and had never worn braids, and never reported any differently to Defendants or any other law enforcement officer.

39. This fabrication was repeatedly used against Mr. Massey, both at the time of his arrest and at trial, when it impeached Ms. Pride's truthful testimony that Mr. Massey had never worn braids and she had never told anyone any differently.

40. This act and omission was committed under color of law, and violated clearly established law of which any reasonable official would have known.

41. As a direct and proximate result of defendants' deliberate, reckless, deliberately indifferent, and/or bad-faith acts and omissions, Shawn Massey was deprived of his Fourteenth Amendment rights to substantive due process, to a fair trial and not to be deprived of liberty without due process of law, was wrongfully convicted, and suffered nearly 12 years of imprisonment as well as all the physical, emotional and pecuniary injuries set forth above.

9

# COUNT II

## 42 U.S.C. § 1983 MALICIOUS PROSECUTION AND UNREASONABLE SEIZURE UNDER THE 4th AND 14th AMENDMENTS TO THE U.S. CONSTITUTION

42. Plaintiff incorporates the allegations made in paragraphs 1-41 above and further alleges as follows:

43. Under color of state law, Defendants, acting individually and in concert, initiated and continued a criminal prosecution against Shawn Massey on charges of armed robbery and kidnapping.

44. Defendants knew, or reasonably should have known, that there was no probable cause for this prosecution of Mr. Massey because (a) the victim had only identified his photo as looking "the most like" her assailant of the photos in the line-up, (b) the victim had told Officer Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard, and (c) Shawn Massey did not have braids in his hair on May 22, 1998

45. The criminal prosecution terminated in favor of Mr. Massey on or about May 6, 2010.

46. Defendants' actions were malicious and evinced a reckless and callous disregard for, and deliberate indifference to, Mr. Massey's constitutional rights.

47. These acts and omissions were committed under color of law, and violated clearly established law of which any reasonable official would have known.

48. As a direct and proximate result of this malicious prosecution, Mr. Massey was seized and was deprived of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, was wrongfully convicted, and suffered nearly 12 years of imprisonment as well as all the physical, emotional and pecuniary injuries set forth above.

## COUNT III

## 42 U.S.C. § 1983 CONSPIRACY TO VIOLATE MASSEY'S CONSTITUTIONAL RIGHTS

49. Plaintiff incorporates the allegations made in paragraphs 1-48 above and further alleges as follows:

50. Under color of state law, Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Mr. Massey of his constitutional rights by charging and prosecuting him on charges of armed robbery, and kidnapping, which these Defendants knew were not supported by probable cause.

51. Defendants willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, but not limited to:

    a. Fabricating a statement attributed to April Pride;

    b. Pursuing a baseless prosecution; and

    c. Making false representations to prosecutors.

52. Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Mr. Massey's constitutional rights.

53. As a direct and foreseeable consequence of this conspiracy, Shawn Massey was deprived of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, was wrongfully convicted, and suffered nearly 12 years of imprisonment as well as all the physical, emotional and pecuniary injuries set forth above.

## COUNT IV

## IMPEDING AND HINDERING PUBLIC AND LEGAL JUSTICE, FALSE IMPRISONMENT AND CIVIL CONSPIRACY

54. Plaintiff incorporates the allegations made in paragraphs 1-53 above and further alleges as follows:

55. Defendants, acting in concert with each other, and under color of state law, conspired to and engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the State of North Carolina.

56. Defendants engaged in this obstruction of justice by conspiring to manufacture and by manufacturing a false and misleading statement attributed to April Pride with the knowledge that this statement would be used to advance and perpetuate the criminal process against Shawn Massey.

57. As a direct and foreseeable consequence of this conspiracy, Shawn Massey was wrongfully convicted, and suffered nearly 12 years of imprisonment as well as all the physical, emotional and pecuniary injuries set forth above.

## COUNT V

## MALICIOUS PROSECUTION AND CONSPIRACY

58. Plaintiff incorporates paragraphs 1-57 above and further alleges as follows:

59. Beginning on or around May 23, 1998, Defendants, acting individually and in concert, instituted or participated in the institution of criminal proceedings against Shawn Massey. These proceedings were not supported by probable cause and were terminated in Plaintiffs' favor on or about May 6, 2010.

60. Defendants demonstrated malice, spite, ill will, and wanton disregard for Shawn Massey's rights by conspiring to manufacture and by manufacturing a false and misleading statement attributed to April Pride with the knowledge that this false statement would be used to advance and perpetuate the criminal process against Mr. Massey.

61. As a direct and foreseeable consequence of this malicious prosecution, Shawn Massey was wrongfully convicted, and suffered nearly 12 years of imprisonment as well as all the physical, emotional and pecuniary injuries set forth above.

## PRAYER FOR RELIEF

1. Compensatory damages in an amount greater than $10,000.00, to be determined at trial;

2. Punitive damages in an amount, to be determined at trial, that will deter such conduct by Defendants in the future;

3. Pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees;

4. Any and all other relief to which he may be entitled.

RESPECTFULLY submitted this the 23rd day of September, 2011.

Plaintiff Shawn Massey, by and through his attorneys:

/s David S. Rudolf (Bar # 8587)
RUDOLF WIDENHOUSE & FIALKO
225 East Worthington Avenue, Suite 200
Charlotte, NC 28203
Telephone: 704-333-9945
Telefax: 704-335-0224