IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CASE NO. 3:11-CV-477

| | |
|---|---|
| SHAWN MASSEY, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHARLOTTE-MECKLENBURG POLICE | ) |
| OFFICER J.J. OJANIIT; CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICER | ) |
| GERALD J. ESPOSITO; CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICER | ) |
| TOM G. LEDFORD; and CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICERS | ) |
| JOHN and JANE DOES ##1-10, IN THEIR | ) |
| INDIVIDUAL CAPACITIES, | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**


**INTRODUCTION**

On May 22, 1998, Samantha Woods was sure about one thing concerning the man who

had just robbed her of $60 at gunpoint: the man **"had his hair pulled back from his face and

(4) small braids on the back of his head."** Complaint, ¶16. Thus, if on May 22, 1998 Shawn

Massey did *not* have hair long enough to be "pulled back from his face," and did *not* have "small

braids on the back of his head," **he *could not* have been the person who committed this crime.**

Put another way, if Shawn Massey's hair was "cut short" with no braids on the day Samantha

Woods was robbed, as everyone who knew Shawn on that date confirmed, there was no probable

1

cause to arrest and prosecute him for the crime. Indeed, **if he had no braids on that date, this fact alone exonerated him of any involvement.** That is the central and compelling fact in this case, one that Defendants cannot and do not dispute.

It is therefore not surprising that this was the major focus of Mr. Massey's trial. Ms. Woods testified at the trial that her assailant had "braids in his hair, with five hanging down." Complaint, ¶ 24; Defendant Esposito's Exhibit 9 (hereinafter "Exhibit 9"), p. 40. Defendant called six witnesses who all testified that he had never worn his hair long or in braids. Complaint, ¶29; Exhibit 9, pgs. 215-252 and 279-284. The *only evidence* to the contrary was the report prepared by Defendant Esposito of his May 23, 1998 conversation with April Pride, in whose apartment Shawn Massey had stayed on the night of May 21, 1998. That report, in which Esposito falsely claimed that Ms. Pride told him "Mr. Massey wears his hair pulled back with 4 or 5 braids," was used to impeach Ms. Pride's testimony that on May 22, 1998, Shawn's hair was short with no braids. Complaint ¶28; Exhibit 9, pgs. 97-98. Esposito then testified to the contents of this false report, which was introduced into evidence. Exhibit 9, pages 108-110.

In short, Esposito's fabrication was material to any finding that it was Shawn Massey, wearing braids, who robbed Samantha Woods. *All* of the other evidence in the case established that Mr. Massey did not have braids on May 22, 1998 (or any other time), and therefore could not have been Ms. Wood's assailant.

In an attempt to avoid this inconvenient truth, Defendants engage in an extended argument, more appropriate to a motion for summary judgment (or trial) than to a motion for judgment on the pleadings, to convince this Court that Mr. Massey really is guilty of the crime (despite the fact that his conviction was vacated on motion of the District Attorney), that Esposito's fabrication (which must at this stage be assumed) really wasn't material, and that

Plaintiff should be denied the opportunity to conduct discovery to find out what Defendants' learned about Shawn Massey, and particularly about the way he wore his hair, between May 23, 1998 when Esposito wrote his report, and July 7, 1998 when warrants for Shawn Massey's arrest were finally authorized by the District Attorney's office and obtained by Defendants.[1]

In support of their argument, Defendants' focus not on Plaintiff's Complaint, but rather on the *trial* evidence most favorable to *their* position, and draw all inferences from that evidence in the light most favorable *to Defendants*. This Court should reject this impermissible shifting of the burden and deny Defendants Motion for Judgment on the Pleadings.[2]

### SUMMARY OF APPLICABLE LEGAL STANDARD

It is axiomatic that on a Motion for Judgment on the Pleadings, all of the factual allegations set forth in the Complaint, and the reasonable inferences that can be drawn therefrom, must be taken in the light most favorable to the non-moving party. Defendants' Motions for Judgment on the Pleadings pay lip service to this fundamental principle, but then rely extensively on portions of testimony from the trial transcript (attached as an exhibit to each Answer) that are most favorable to Defendants' arguments, and speculative inferences they draw from those portions of the testimony.

Plaintiff submits, as set forth in Plaintiff's Motion to Strike Defendants' Exhibits, that Defendants twist the rule governing materials that may properly be considered by a Court on such a motion ("written instruments" appropriately attached to a Complaint or an Answer) well

---

[1]     In Mecklenburg County, prior to obtaining warrants for such an offense, the investigators were required to present their evidence to the District Attorney's office in what was called a "papering" conference. Only if the Assistant District Attorney, based upon what the investigators told him, authorized the initiation of criminal charges against a suspect was a warrant then obtained.

[2]     Alternatively, the court should treat Defendants Motions as ones for summary judgment and give Mr. Massey an opportunity to obtain discovery. *See* Motion to Strike Defendants' Exhibits.

3

beyond the cases they cite, and the rationale for the rule itself. They do this in part by attaching as an Exhibit a transcript of testimony, which necessarily contains competing "facts," depending on which portions one believes, and then focusing only on some of these "facts." This, of course, is vastly different from attaching a "written instrument," such as the contract at issue in the lawsuit, which speaks for itself. Defendants then simply ignore the factual allegations properly pled in the Complaint

Defendants also ignore the fact that even if attaching a trial transcript (or a motion or a court order) as an exhibit to an Answer is permissible, the "facts" contained in that exhibit must be taken in the light most favorable to Plaintiff. Plaintiff will therefore summarize the facts pled in the Complaint, as supported by the trial transcript, as Defendants concede the Court must consider them – in the light most favorable to Plaintiff.

## SUMMARY OF FACTUAL ALLEGATIONS[3]

A.    Information Obtained From Witnesses

Shortly after she and her children were kidnapped and robbed at gunpoint on May 22, 1998, Samantha Woods was interviewed at her home by Defendant Ojanitt. Complaint, ¶15. Despite the fact that she had spent a number of minutes with the perpetrator,[4] and that his face was uncovered during this time, Ms. Woods was able to provide only a few relevant details of her assailant. She told Defendant Ojanitt that he was 5'9" tall and weighed 180-185 pounds.

---

[3]      In light of Defendants' extensive use of selected portions of the trial transcript in their memoranda, Plaintiff will also refer to portions of the same transcript, in addition to the factual allegations set forth in the Complaint. Of course, all such references should be disregarded if the Plaintiff's Motion to Strike Defendants' Exhibits is granted.

[4]      Ms. Wood "guessed" it was thirty minutes. Exhibit 9, p. 49.

4

Complaint, ¶16.  Later she stated that he was 5'8" tall.  Exhibit 9, pgs. 40-41.  But in either event, the man she described was chunky, not thin.[5]

In addition, she was able to describe the man's clothing as a "red *shirt* and blue jean *shorts*." Complaint, ¶16.  He was not wearing any covering on his head, which allowed Ms. Woods to describe the single most distinctive feature of her assailant:  that he had "his hair pulled back from his face and (4) small braids on the back of his head." *Id.*  The braids went all the way through his hair, and were not only at the back of his head. Exhibit 9, pg. 41.  She was not able to describe the man's facial features, whether he was light-skinned or dark-skinned, whether or not he had any facial hair, or the color of his eyes. Exhibit 9, p. 64.  No one was apprehended on that day.

The next day, Defendant Esposito accompanied Defendant Ojaniit back to the scene.  He interviewed two witnesses, the apartment rental manager, Theresa Savall, and Shawn Massey's friend, April Pride.  Complaint, ¶¶17-18.  Although Ms. Savall described a man who had approached and asked her out the day before, *this man did not fit the description of the man who robbed Samantha Wood.*  Specifically, Ms. Savall stated that this man was approximately 5'11" and weighed 165 pounds – thinner than the man described by Ms. Woods.  Complaint, ¶17.[6] He was not wearing shorts, but rather full-length jeans. Id.; Exhibit 9, p. 70.  He was not wearing a red shirt, but rather an orange and white basketball jersey.  *Id.*  Most importantly, he was wearing a ball cap, *Id.*, and Ms. Savall did not see any braids hanging down.  See Esposito Exhibit 3.  The man did not do anything threatening or intimidating, nor was he derogatory.  Exhibit 9, p. 79.  Ms. Savall told him to "take your young-self home," and he left. *Id.*

---

[5]    Mr. Massey is 6' tall and thin.  At the time of his arrest, he weighed approximately 160 pounds. At trial, Ms. Woods admitted that Mr. Massey appeared to be thinner than the man who robbed her.  Exhibit 9, p. 56

[6]    At trial, Ms. Savall changed her estimation to 5 feet 8 ½ inches and 150-155 pounds.  Exhibit 9, pgs. 68-69.

5

The only other person interviewed during the initial investigation was April Pride.[7]  Ms. Pride, who had known Mr. Massey for years and was a close friend, told Esposito that Shawn had stayed in her apartment on the night of May 21, 1998.  Complaint, ¶18.  She did not tell Esposito that he wore his hair pulled back with four or five braids.  Complaint, ¶19.  This interview, which was actually a very brief casual conversation, lasted only a few minutes.

B.     The Photo Spreads

Based solely on the fact that there was reason to believe that Shawn Massey had spoken to Theresa Savall on the morning of May 22, 1998, Officer Ojanitt showed a photo spread containing Shawn Massey's picture to Samantha Woods on May 23, 1998.  Contrary to Defendants' assertions, this identification procedure, which was not conducted in the double-blind manner now required by the Charlotte-Mecklenburg Police Department, *did **not** result in Ms. Woods identifying Shawn Massey as the person who robbed her*.  She did not even indicate that she *thought* he was the person who robbed her.  Rather, all that Ms. Woods could say was that **of the people in the photo spread**, the picture of Mr. Massey "**looked most like**" that person.  *But she immediately added that unlike Mr. Massey, her assailant had longer hair with braids.* She did not make a positive identification. Complaint ¶20.

Theresa Savall was shown the same photo spread by Defendant Ledford on May 26, 1998.  She stated that the photo of Mr. Massey "looked like" the person who had spoken with her on May 22.  The best she could do at that time was to say "I believe he is the same person."

---

[7]     Because no discovery has been conducted, Plaintiff does not know what other witnesses were interviewed by Defendants between May 23 and July 7, 1998 (when warrants for Mr. Massey's arrest were finally authorized by the District Attorney's office), what any such witnesses may have told Defendants about Mr. Massey's appearance in May 1998, what other evidence regarding Mr. Massey's appearance Defendants located, or what information regarding his appearance on May 22, 1998 they provided to the District Attorney.  There were, however, seven Sheriff's Department photos of Mr. Massey, all with short hair and no braids, found in the Massey file. Complaint ¶32.  One of these photographs was taken on March 9, 1998, fewer than two months before Ms. Wood was assaulted.  Viewed in the light most favorable to Plaintiff, a reasonable inference is that Defendants gathered these photos at some point before July 7, 1998, when the investigation apparently ceased with the issuance of warrants.

6

Complaint, ¶22. She subsequently explained that the person she talked to that day was considerably thinner than Mr. Massey appeared to be in the photo spread. Exhibit 9, p. 76. She described this person as being about 5'11", 165-170 lbs, and wearing a "basketball jersey which was orange and white, and pants similar to jeans." Defendant Ledford, Exhibit 7. She had never seen this person around the apartment complex before. *Id.*

C.    The Trial

The only witnesses called by the State with first hand information about the events of May 22, 1998 were Samantha Woods, Theresa Savall and April Pride.[8] Exhibit 9, pgs. 36-101.

Ms. Savall testified only about her brief encounter with a man she identified at trial as Shawn Massey. Other than the fact that she identified him as being at the apartment complex on the morning Ms. Woods was robbed, Ms. Savall's testimony did not provide even circumstantial evidence that Shawn Massey had any involvement in the robbery. She did not testify that he had any braids. She did not testify that he had any weapon. She did not testify that he asked her for any money, or threatened her. She did not testify that he made any incriminating statements. She did not even testify that he came from the direction of Samantha Wood's apartment. Nor was the person she identified as Mr. Massey dressed in the clothes that Ms. Wood described her attacker wearing. Ms. Savall's testimony was simply that Shawn Massey came up to her, told her she "looked good," asked if she would go out with him, and when she told him to leave her alone, he walked away. Exhibit 9, pages 70-72; 78-80.[9]

_____

[8]    The only other witnesses called by the State were Defendant police officers, and a crime scene tech. Exhibit 9, pages 102-127; 190-214.

[9]    According to Defendant Ledford, this man came up to Ms. Savall and had this conversation with her while the police were at Ms. Wood's apartment (Ledford Exhibit 7), hardly the actions of someone who had just robbed someone at gunpoint and fled the scene.

April Pride testified only that she had known Shawn Massey for about ten years, that he stayed at her apartment at Emerald Bay, with her and her husband, on the night of May 21, 1998, and that Shawn and her husband were still at her apartment when she left for work between 6:30 and 6:45 on the morning of May 22, 1998.  Exhibit 9, pgs. 90-91.[10]  Tellingly, **the prosecutor did not ask her any questions about how Shawn Massey's hair looked on that day, or about whether he had braids – either that day or ever.**  Exhibit 9, pgs. 87-93.  In response to questions by defense counsel, however, Ms. Pride testified Shawn had always kept his hair very short, and never had any braids.  Exhibit 9, pgs. 94-95.[11]

In sum, this was a classic "one-witness identification" case – the kind that has led to so many false convictions and exonerations over the past decade.  No physical evidence linked Shawn Massey to the crime, or indicated he had been inside Ms. Wood's apartment.  Exhibit 9, pages 206-207; 213.  **The only evidence produced by the State that Shawn Massey was the person who robbed Samantha Woods was her identification of him,** which assumed that, on the day she was assaulted, Shawn Massey in fact wore his hair braided from front to back with 4 or 5 braids hanging down the back of his neck.  Of course, Shawn was the only person sitting at defendant's table with his counsel, dressed in an orange jail jumpsuit, when the case was called

---

[10]      Contrary to the arguments made by Defendants, Ms. Pride's testimony did not undermine evidence that Shawn Massey was at work at the time Ms. Woods was attacked, nor did it make it "impossible" for Mr. Massey to have been picked up by his employer at his home around 7 am.  See Defendant Esposito's Memorandum in Support of Motion for Judgment on the Pleadings, hereinafter "Esposito Memorandum," pages 12-13.  Viewed in the light most favorable to Plaintiff, Ms. Pride testified that she could have left the apartment that morning as early as 6:30 AM, Exhibit 9, p. 90, while Mr. Dorsey testified that he could have picked up Mr. Massey at his home as late as 6:55 am, "something like that," because "the concrete company was scheduled between 7 and 7:30." Exhibit 9, p. 224.  There was no evidence that Shawn Massey could not have gotten to his home in that time period.  Nor, contrary to Defendants' argument, was there any evidence that Shawn Massey knew anything about the acoustics at the apartment complex, or about Ms. Wood's daily schedule.  Esposito's Memorandum, pages 6-7.  The fact that Shawn Massey visited Ms. Pride frequently does not support any such inferences, especially when considered in the light most favorable to Mr. Massey.

[11]      The prosecutor then impeached Ms. Pride with the false statement written by Defendant Esposito.  Complaint ¶28; Exhibit 9, pgs. 97-98.

for trial.[12]  And Ms. Wood's previous identification had been equivocal at best:  Mr. Massey's photo looked "the most like" the person who robbed her, *except he didn't have any braids*. Complaint ¶20.

Ms. Woods reiterated at trial, as she had told Defendant Ojaniit just moments after the crime, that the person who attacked her had braids that ran through his hair (i.e., cornrows), with five braids "hanging down" in the back. Complaint ¶24; Exhibit 9, pgs. 40-41.  She also testified that Shawn Massey's hair in court was shorter than the man who robbed her. Complaint ¶25.

Thus, at the time of his arrest, and at the time of trial, whether Shawn Massey had braids in his hair on May 22, 1998 was *the* critical issue.  But everyone who knew Shawn Massey, from his grandmother and his sister, to his preacher and his employer, to a male friend and April Pride, all testified that Shawn Massey had never had any braids in his hair, and that he wore his hair very short, too short to even comb.  Complaint ¶27 and 29; Exhibit 9, pgs. 94-95; 215-253; 279-284.[13]

The *only* evidence that corroborated Ms. Wood's identification of Shawn Massey was the false report prepared by Defendant Esposito, and his testimony about that report.  Specifically, Defendant Esposito testified that April Pride told him on May 23, 1998 that Mr. Massey "wears his hair pulled back with four to five braids."  Complaint ¶¶19 and 28; Exhibit 9, p. 108-110.  He further testified that he would not have written that in his report if Ms. Pride had not said it. Exhibit 9, p. 110.  Esposito's false report was read to the jury.  *Id*.

---

[12]       Mr. Massey did not change into street clothes until after the denial of his lawyer's motion to withdraw. Exhibit 9, p. 20. Ms. Woods was present during this motion, and therefore observed Mr. Massey in the orange jumpsuit at Defendant's table.  Exhibit 9, p. 57.  Despite this, she told the prosecutor at that time that she had doubts about whether Mr. Massey was the person who robbed her.  Complaint ¶33. She specifically told him "I don't know if that's him or not."  Esposito Exhibit 1, ¶6.

[13]       The witnesses' testimony is corroborated by seven photographs of Shawn Massey in the District Attorney's files, taken between April 18, 1991, and March 9, 1998, that showed he wore his hair exactly as the witnesses testified.  Complaint ¶32.  These photos were never disclosed to defense counsel.

9

Thus, considering all of the allegations in the pleadings in the light most favorable to Plaintiff, including even the contents of exhibits inappropriately attached by Defendant Esposito to his Answer, the jury had to have credited Esposito's false report about Mr. Massey's hair on the day of the robbery. If the jury believed April Pride's testimony about Mr. Massey's hair on May 22, 1998, as corroborated by Brady Dorsey, Annie Massey, Bobby Ross, Reverend Linda Brown, and Roberta Massey, they would have had to conclude that Ms. Wood's identification was mistaken. Put another way, if the jury had believed April Pride's testimony that Shawn Massey did not have braids on May 22, 1998, that alone would have exonerated him from any involvement in the robbery of Samantha Woods – committed by a black male with cornrows and four or five braids hanging down. Taken in the light most favorable to Plaintiff, therefore, Esposito's fabrication, used to impeach this critical aspect of April Pride's testimony (and to thereby corroborate Ms. Wood's identification), was a linchpin of Shawn Massey's conviction; if Mr. Massey did not have braids running through his hair on May 22, 1998, he was not the person who assaulted Ms. Wood.

Despite this, Defendants argue that this Court should find, as a matter of law, that Esposito's fabrication was not "material" and did not "cause" Shawn Massey to be arrested, prosecuted or convicted. This argument ignores the appropriate legal test to be applied on a motion for judgment on the pleadings, and misapplies the law regarding due process claims based upon fabricated evidence. Defendants' motions should therefore be denied.

10

A.     Applicable Legal Standard

Defendants have each moved for judgment on the pleadings, pursuant to Rule 12(c), Federal Rules of Civil Procedure.  In ruling on these motions, the facts alleged in the Complaint must be accepted as true and construed liberally in Plaintiff's favor.  *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 498 (4th Cir. 2005).  Moreover, in civil rights actions like this one, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotations and citations omitted, emphasis in original).  *See also Giarrantano v. Johnson*, 521 F. 3d 298, 302 (4th Cir. 2008) (citing *Bell Atlantic Corp. V. Twombly*, 550 U.S. 554, 570 (2007) (emphasis in original).[15]

Although Defendants do not dispute these principles, their motions rely extensively upon information contained in Exhibits they attach to their answers and then selectively quote, and on facts and inferences that are construed in the light most favorable to Defendants.  Defendants simply ignore the factual allegations in the Complaint and the reasonable inferences therefrom, and instead rely upon "facts" cherry-picked from their exhibits, and speculative inferences drawn from those "facts."   They seek not to test the legal sufficiency of the Plaintiff's complaint, but

---

[14]     For the sake of judicial economy, Plaintiff will focus primarily on the legal arguments made on behalf of Defendant Esposito, since almost all of these same arguments are also made on behalf of the other defendants.

[15]     Esposito Memorandum at 13-14; Ojaniit Memorandum at 12-13; and Ledford Memorandum at 5.

rather to present their trial defenses, before Plaintiff has had the opportunity to conduct any discovery.

This is not the proper role of a motion for judgment on the pleadings, nor should this court attempt to resolve at this stage whether Plaintiff will ultimately prevail. The only question to be resolved now is whether plaintiff may be entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. If so, Defendants' motions must be denied.

B.    Due Process Claim

Plaintiff's first and primary claim is that Defendants Esposito, Ojaniit and Ledford violated Shawn Massey's due process right to a fair trial in that they "deliberately fabricated evidence by falsely reporting, both in oral pretrial reports to the prosecutor and in written reports, that April Pride had stated that Mr. Massey wore his hair pulled back from his face and in braids." Complaint, Count I, ¶37. Plaintiff further alleged that his due process rights were violated when Defendants repeatedly used this fabrication against Mr. Massey, "both at the time of his arrest and at trial." *Id*. at ¶39. Finally, Plaintiff alleged that "[a]s a direct and proximate result of defendants' deliberate, reckless, deliberately indifferent, and/or bad-faith acts and omissions," he was "deprived of his Fourteenth Amendment rights to substantive due process, to a fair trial and not to be deprived of liberty without due process of law." *Id*. at ¶41.

In response, as set forth in 4 pages towards the end of Defendant Esposito's Memorandum, Defendants argue that Plaintiff's due process claim must be dismissed "for lack of causation." Esposito Memorandum, pgs. 20-24. Defendants' argument misstates the law with regard to due process claims based upon fabricated evidence, and asks this Court to play the role of the jury in resolving factual disputes and finding the relevant facts – even before any discovery is conducted with regard to those facts.

The leading case in the Fourth Circuit on fabricated evidence claims is *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005). The case began with the arrest of Earl Washington for breaking into the apartment of an elderly neighbor and beating her with a chair. Following this arrest, Washington confessed in the presence of two Fauquier County Sheriff's deputies to the earlier rape and murder of Rebecca Lynn Williams. The next day, Virginia State Police Agent Curtis Wilmore and a Culpepper Virginia police officer questioned Washington about this murder, and obtained another confession, which was reduced to writing and typed. Two days later, Wilmore wrote a report about this second confession, in which he asserted that Washington had provided information about the crime that no one knew other than Wilmore himself. This information was that the perpetrator's shirt had been left behind at the scene.

Washington was convicted, but was later pardoned by the Governor of Virginia based upon DNA testing. He subsequently filed a 1983 suit against Wilmore and others, alleging *inter alia* the fabrication of evidence – that Washington had disclosed non-public information about the crime. *Id*. at 278. Despite the existence of the two confessions, the District Court denied summary judgment as to Wilmore, because there was a "reasonable likelihood" that the evidence regarding the abandoned shirt at the scene "*could have affected* the judgment of the jury." *Id*. at 278-279 (emphasis added).

The Fourth Circuit affirmed. After rejecting the same *Rooker-Feldman* argument Defendants make here,[16] the Court first noted that the right allegedly violated was Washington's "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity," *quoting Zahrey v. Coffey*, 221 F.3d 342, 349 (2nd Cir. 2000). *Id*. at 282. The Court then accepted for purposes of the appeal that Wilmore had "falsely

---

[16] *See* discussion of the proper scope of the *Rooker-Feldman* doctrine, *infra*, pp. 20-21.

stated in his police report . . . 'that Washington, when interrogated, divulged non-public information about Williams murder.'" *Id*. Finally, turning to the question of whether this fabrication had "caused" Washington's conviction, the Court held that the "*proper inquiry …is whether Washington's conviction was a reasonably forseeable result of Wilmore's initial act of fabrication* – the police report." *Id.* at 283 (emphasis added). Despite the existence of two independent confessions to the crime, the Court concluded "the facts stated by Washington allege the violation of his constitutional right not to be deprived of liberty as a result of the fabrication of evidence by an investigating officer." *Id*.

The Second Circuit has also dealt extensively with fabricated evidence claims. In *Zahrey*, *supra*, the case quoted by the Fourth Circuit in *Washington*, the court noted that it was "not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct *will contribute* to an 'independent' decision that results in a deprivation of liberty." 221 F.3d at 352 (emphasis added). The court concluded that if, as alleged, the prosecutor-defendant had fabricated evidence in his investigative role, "it was at least reasonably foreseeable that in his advocacy role he would later use that evidence before the grand jury, with the likely result that Zahrey would be indicted and arrested," and that the complaint "adequately alleges that the deprivation of Zahrey's liberty was the legally cognizable result of [the prosecutor's] alleged misconduct in fabricating evidence. *Id*. at 353-354.

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2nd Cir. 1997) also dealt with a claim that police officers had prepared a false report. In *Ricciuti,* as here, defendants claimed that as long as there was probable cause for the Plaintiff's arrest, independent of the allegedly fabricated evidence, the fabrication of the evidence was legally irrelevant. Put another way, defendants

argued the fabricated evidence did not "cause" any harm. The Second Circuit emphatically rejected this analysis:

> This argument -- an ill-conceived attempt to erect a legal barricade to shield police officials from liability – is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.' . . . *When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial*, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

124 F. 3rd at 130 (emphasis added). See also *Richardson v. City of New York*, 2006 WL 2792768 at *7 (E.D.N.Y.) (noting that there is an independent constitutional tort when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, and holding in the context of a malicious prosecution claim that "if it can be proved that a law-enforcement officer fabricated material evidence against a suspect and forwarded it to prosecutors, causing the suspect to be deprived of his liberty . . . then not only is the presumption of probable cause overcome, but the existence of probable based on non-fabricated evidence ceases to be a defense for the fabricator"); *Washington v. Brubaker*, 322 F. Supp. 2d 702, 712 (W.D. Va. 2006)(holding that "the Fourteenth Amendment cannot tolerate a criminal conviction based on the knowing use of false evidence, *Miller v. Pate,* 386 U.S 1, 7, 87 S.Ct. 785, 17

L.Ed.2d 690 (1967)," and that the test is whether there is a "reasonable likelihood" that the fabricated evidence "could have affected the judgment of the jury"); *Bramblett v. True,* 59 Fed. Appx. 1, 14, 2003 WL 58283, *11 (4th Cir.2003) (unpublished)("[t]he knowing use of perjured testimony constitutes a due process violation when 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' ") (quoting *Kyles v. Whitley,* 514 U.S. 419, 433, n. 7, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

In short, where the fabrication precipitates the sequence of events that results in the deprivation of liberty, or where it is foreseeable that the fabricated evidence was "reasonably likely to influence a jury's decision," the defendant has been denied his due process rights, and a cause of action under 42 U.S.C. §1983 arises.

These issues involve factual questions to be resolved by a jury, after appropriate discovery has taken place.  For example, whether Esposito's fabrication of Ms. Pride's description of Shawn Massey having braids precipitated or contributed to the prosecutor's decision to bring charges against Shawn Massey in the first place, given the weakness and explicitly conditional nature of Ms. Wood's pre-arrest identification, will be determined by examining the prosecutor's file and deposing the prosecutor who made this decision.[17]  Similarly, whether Esposito's report, as set forth in his trial testimony, was "reasonably likely" to have "influenced the jury's decision" to convict Shawn Massey is a factual question to be resolved by a jury after full explication of all the relevant facts – not just those cherry picked by defense counsel in making this motion.

---

[17]    Had the prosecutor declined to authorize Shawn Massey's arrest, there obviously would have never been any loss of liberty or conviction.

Moreover, the question is not, as Defendants suggest, whether the fabricated report "was the pivotal piece of evidence that convicted Shawn Massey," or whether there was sufficient other evidence to send the case to the jury, or to constitute probable cause. Esposito Memorandum, pgs. 22-24. Rather, the question is whether Esposito's fabricated evidence was "reasonably likely" to have "influenced the jury's decision" to convict Shawn Massey. Put another way, the question for this court, taking the factual allegations in the light most favorable to Plaintiff, and drawing all inferences from those facts in his favor, is whether a reasonable juror in this case could conclude that the jury that convicted Shawn Massey would have had a reasonable doubt about Shawn Massey's guilt – in light of the evidence about how Shawn Massey generally wore his hair -- had Esposito's fabricated evidence about Shawn allegedly having braids on May 22, 1998 not been presented to them?[18]

Causation is an "intensely factual" question, *Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999), that "can be decided on summary judgment only in those instances when there are no causal facts in dispute," *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004) (citation and internal quotations omitted); *see also Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (N.C. 1984) ("Proximate cause is an inference of fact to be drawn from other facts and circumstances . . . [and thus] is ordinarily a question for the jury."). It is reversible error to "fail[] to draw the reasonable inferences from plaintiff's circumstantial evidence" as to causation. *Roehling v. National Gypsum Co. Gold Bond Bldg. Products*, 786 F.2d 1225, 1229 (4th Cir. 1986) (reversing grant of summary judgment where district court erroneously characterized

---

[18] In that regard, it is significant that the District Attorney, in his Motion to Set Aside Verdicts and Release Defendant, concluded that the Sheriff's photos of Mr. Massey with close cropped hair, coupled with Ms. Wood's uncertainty about her identification, "make it likely that a jury would conclude that although there is substantial evidence placing the defendant in the area and identifying him as the perpetrator, there is reasonable doubt about whether he committed the offense." *See* Esposito Exhibit 1, ¶6. *See also* Esposito Exhibit 2, Conclusions of Law 1 and 2.

plaintiff's inferential causation argument as "mere speculation"). Given the fact that Esposito's fabricated report was the only evidence that corroborated Samantha Wood's identification of Mr. Massey as her assailant, and that all of the other evidence in the case established that Shawn Massey never had braids, this is not a question that the Court should resolve as a matter of law, without any discovery having been conducted.

Finally, it is absolutely clear is that the cases relied upon by Defendants do not support the application of the test they suggest: that plaintiff must establish that in the absence of the fabrication, "the evidence would have been insufficient to convict him." Esposito Memorandum, p. 21. None of the cases Defendants cite has required such a showing, or granted a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment on this basis.[19] Contrary to the assertion of Defendants, the question is not

> "whether the Complaint, in light of the undisputed facts, demonstrates as a legal matter that 'but for' the claimed fabricated sentence in Officer Esposito's report, Shawn Massey would not have been convicted of these crimes."

Esposito Memorandum, p. 22. The "proper inquiry" on the causation question "is whether [Massey]'s conviction was a reasonably foreseeable result of [Esposito's]'s initial act of fabrication . . . ." *Washington*, 407 F.3d at 283.[20] In other words, taking the facts alleged in the Complaint in the light most favorable to the Plaintiff, could a reasonable juror conclude that the

---

[19]     In addition to *Zahrey*, *Washington*, *Riccuiti*, and *Richardson*, all of which are discussed above, Defendants rely upon the unpublished District Court opinion in *Hovatter v. Widdowson*, 2006 WL 890713 (D.Md.). But in *Hovatter* the plaintiff was never tried, and the only issue was whether he had been deprived of his Fourth Amendment right not to be arrested in the absence of probable cause. In determining this issue, the court in *Hovatter* employed a *Franks v. Delaware* analysis. Even assuming that analysis is good law in light of the holding in *Washington*, it has no place where a plaintiff was denied his due process right to a fair trial, as *Washington* makes clear.

[20]     "All that the plaintiff is required to prove on the question of foreseeability . . . is that in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 234, 311 S.E.2d 559, 565 (N.C. 1984) (citations omitted).

fabrication "precipitated" the District Attorney's decision to authorize felony charges against Mr. Massey, or that it was "reasonably likely to have influenced the jury's decision" to convict him. Since the answer to these questions is yes, Defendants' Motion for Judgment on the Pleadings with regard to Plaintiff's Due Process claim must be denied.

C.     Fourth Amendment Malicious Prosecution Claims

Plaintiff's second, third and fifth claims all allege that Defendants initiated a criminal prosecution without probable cause.[21]  Specifically, the complaint alleges that the Defendants knew the following facts at the time the criminal prosecution was initiated:

1.     No physical evidence linked Mr. Massey to the crime (Complaint ¶2);

2.     The assailant was a 5'9" black male, approximately 180 lbs., with his hair pulled back from his face in cornrows – that is, braids that ran from near his face all the way to the back of his head and then 4 small braids that hung downs over his neck (Complaint ¶¶12 and 16);

3.     The assailant was wearing a red shirt and blue jean shorts (Complaint ¶¶12 and 16);

4.     The rental manager of the victim's apartment complex saw a black male who was approximately 5'11" tall and 165-170 lbs (not 5'9" and 180 lbs), wearing an orange and white basketball "jersey" (not a red shirt), pants similar to blue jeans (not shorts), and a ball cap (not braids) on the day the victim was robbed (Complaint ¶17; Ledford Exhibit 7);

5.     April Pride did *not* tell Officer Esposito or anyone else on May 23, 1998 that Mr. Massey wore his hair pulled back or in braids, and that he in fact *wore his hair very short, and had never worn braids* (Complaint ¶¶19 and 38);

6.     The victim did not make a positive identification of Shawn Massey.  Instead, she selected the photo of Mr. Massey as "looking the most like" the person who robbed (of the people whose pictures were in the photo line-up), *but that*

---

[21]     The elements of this claim are (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to plaintiff; (3) lack of probable cause to support *the initiation* of that proceeding; and (4) the defendant's malice.  *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000); *Best v. Duke University,* 337 N.C. 742, 749 (1994)(emphasis added).  Defendants' motion challenges the sufficiency of Plaintiff's complaint only as to the third prong:  the lack of probable cause to support the initiation of the criminal proceedings against Shawn Massey.  Esposito Memorandum, pgs. 15-18.

*unlike Mr. Massey, her assailant had longer hair with braids,* and did not have a beard (Complaint ¶20);

7. Seven arrest photos of Mr. Massey, taken between April 18, 1991 and May 29, 1998 all showed that he had short hair (i.e., no braids) (Complaint ¶32);

8. That (a) the victim had only identified his photo as looking "the most like" her assailant of the photos in the line-up, (b) the victim had told Defendant Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard, and (c) Shawn Massey did not have braids in his hair on May 22, 1998 (Complaint ¶44); and

9. Mr. Massey did not match the description given by the victim (Complaint ¶2).

Each of these allegations, and all reasonable inferences based upon these allegations, must be taken as true.

In short, then, in ruling on Defendants' motions for judgment on the pleadings, this court must assume that as of the date that the Defendants met with the Assistant District Attorney to "paper" the case, and received authorization to obtain warrants for Shawn Massey's arrest, Defendants knew that the victim (Ms. Wood) had *not* been able to identify Shawn as the person who robbed her on May 22, 1998, that the person seen by the apartment manager on that day did *not* match the description of the person who robbed Ms. Wood in several critical respects (such as the absence of any braids), and most importantly, that Mr. Massey did *not* have braids on May 22, 1998, did *not* match the description of the perpetrator, and therefor could *not* have been the person who robbed Ms. Wood. Assuming these facts are true, the Complaint reasonably alleges that there was no probable cause on July 7, 1998 to obtain warrants charging Mr. Massey with this crime. These allegations fully support the claims alleged in Counts II, III and V, and justify the taking of additional discovery to further support these claims.

a. <u>Defendants Misstate the Record To Support Their Argument That Counts II, III and V Should Be Dismissed</u>

Defendants argue that even accepting that the above allegations in the Complaint are true, probable cause to arrest Shawn Massey existed on July 7, 1998. To make this argument, Defendants misstate the evidence that existed on July 7, 1998, the date the prosecution was initiated, and rely upon evidence that was not known by the Defendants at the time the prosecution was initiated.

i. *Defendants Misstate the "Identification Evidence" That Existed At the Time the Prosecution Was Initiated*

Defendants assert "Mrs. Woods identified Shawn Massey as her attacker." Esposito Memorandum, p. 17. This is simply not true. Prior to Shawn Massey's arrest, Mrs. Woods had identified a photo of Shawn Massey as "looking the most like" her attacker, but at the same time noted that her attacker had braids in his hair, while Mr. Massey did not. Taken in the light most favorable to Plaintiff, this statement certainly did not constitute an "identification" of Shawn Massey "as her attacker." Quite to the contrary, it tended to exonerate Mr. Massey if he did not have braids in his hair on May 22, 1998. Ms. Wood's statement therefore required the Defendants to conduct additional investigation to determine if Mr. Massey had braids before initiating his arrest. This investigation resulted in the Defendants securing arrest photos showing he did not have such braids at any time in the past, which further undermined the existence of probable cause.

Similarly, Defendants assert "two independent witnesses placed Mr. Massey at Emerald Bay apartments on the morning of the crime" (Esposito Memorandum, p. 17), without pointing out that the description of Mr. Massey provided by these witnesses in May 1998 did not match the description of the assailant provided by Ms. Wood. In particular, the description provided by

the apartment rental manager, Mrs. Savall, indicated the person she identified as Shawn Massey was thin (5'11" and weighing 165 pounds, not 5'9" weighing 180 pounds), and was wearing a ball cap (not braids), an orange and white basketball jersey (not a red shirt), and long pants (not shorts). Moreover, taking the facts and inferences in the light most favorable to Plaintiff, any description provided to Defendant Esposito by April Pride confirmed that Mr. Massey had no braids on May 22, 1998.[22]

### ii. *Defendants Rely On Information They Did Not Possess When They Initiated the Prosecution*

In addition, Defendants attempt to use evidence first elicited at the trial, and *not known to Defendants at the time of Mr. Massey's arrest*, to support their argument that probable cause existed at the time of the arrest. For example, they rely upon April Pride's trial testimony that Mr. Massey was at her apartment "frequently," a fact not contained in any police report, to draw the inferences that he knew (a) the walls were not soundproof, and (b) that Ms. Wood left the apartment at about 4 am each day. Aside from the fact that such inferences cannot at this stage be drawn in Defendants' favor, there is no evidence that the fact supporting these inferences (that Mr. Massey was at April Pride's apartment "frequently") was even known to Defendants *prior to* Shawn Massey's arrest in 1998. This information was first disclosed during Ms. Pride's testimony at the trial. Ex. 9, p. 89.

"The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information." *Spiegel v. Cortese*, 196

---

[22]     Given the pretext for Esposito's "casual conversation" with April Pride (that there had been a complaint about an "intoxicated person" in her apartment)(Exhibit 9, p. 107), and the reason for this pretext (that he didn't want to make Ms. Pride suspicious about why he was asking her who had been at her apartment the day before), it is somewhat difficult to understand why he would have asked her to provide a description of Mr. Massey's hair. Certainly such a question might have made her suspicious. But if he did ask her about this, the *reasonable inference is that April Pride told him the truth – that Shawn Massey did not have braids on May 22, 1998.* Either way, Esposito's report was a fabrication.

F.3d 717, 723 (7th Cir. 1999). As the North Carolina Supreme Court noted in *Best*, probable cause refers to the facts and circumstances "known to the defendant at the time" prosecution is commenced. 337 N.C. at 750.

Likewise, Defendants argue that Ms. Pride's trial testimony "contradicted Massey's alibi" at the trial. (Esposito Memorandum, p. 17). Aside from the fact that this is not an inference that can be drawn in Defendants' favor, there is no evidence that the Defendants were aware of any such purported "conflict" before they initiated charges against him in 1998, or that they knew anything in May 1998 about what time April Pride left her apartment that day, what time Shawn Massey left her apartment that day, or what Shawn Massey's work schedule was on that day.

None of the cases relied upon by Defendants supports an analysis of probable cause based upon facts learned *after* an arrest. Indeed, the cases discussed by Defendants involved situations in which the facts that allegedly showed probable cause, including information alleged to be false, were contained *in a written document* prepared by the defendant(s) *prior* to the plaintiff's arrest. See e.g., *Wilkes v. Young*, 328 F.3d 1362 (4th Cir. 1994)(affidavit in support of arrest warrant for failing to appear in court); *Lambert v. Williams*, supra, 223 F.3d 257 (juvenile petition alleging abuse and neglect); *Miller v. Prince George's County,* 475 F.3d 621 (4th Cir. 2007)(affidavit in support of request for arrest warrant).

In this context, it is not surprising that the courts engaged in a *Franks v. Delaware* analysis to determine if the false information contained in the written document was "material" (i.e., whether the other information in the document provided probable cause even if the allegedly false information was disregarded). But such an analysis obviously has nothing to do with information learned by Defendants for the first time *after* the arrest, nor does it address the central allegation in this case – that *before* they initiated the arrest of Shawn Massey, the

Defendants knew (or acted in reckless disregard of the fact) that Shawn Massey did not fit the description of the perpetrator, because he did not have braids in his hair.

b. The Identification Procedure Conducted on May 23, 1998 Did
Not Establish "Probable Cause" to Arrest Shawn Massey

Defendants put much weight on the alleged "identification" of Shawn Massey by the victim. "Based on Mrs. Wood's identification alone, there was probable cause to arrest and seek the indictment of Shawn Massey for these crimes." Esposito Memorandum, p. 17. But none of the cases relied upon for this proposition involved less than a completely positive and unequivocal identification. In *Spiegel v. Cortese*, *supra*,196 F.3d 717, the eyewitness was the plaintiff's neighbor, and there was no doubt about the identification of plaintiff as the perpetrator. The only question was whether the eyewitness was telling the truth about what had occurred. In *Torchinsky v. Siwinski,* 942 F.2d 257 (4th Cir. 1991), the eyewitness had a sexual relationship with the plaintiff. Once again, there was no doubt about the identification of plaintiff as the perpetrator, assuming the eyewitness was telling the truth about what had occurred. The same was true in *Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999)(allegation of sexual assault by inmate against jail guard).

The Complaint in this case, in contrast, alleges that the Defendants simply ignored evidence that exculpated Shawn Massey – the fact that he had no cornrows or braids on the day of the crime – because the victim told them that Shawn's photo "looked the most like" the man who robbed her, except that her assailant "had longer hair with braids." As the Court in *Ahlers* noted:

> [O]fficers may [not] make hasty, unsubstantiated arrests with impunity. Several cases both from this and other circuits, caution against incomplete, poorly conducted investigations. See, e.g., *Kuehl v. Burtis*, 176 F.3d 646,651 (8th Cir. 1999) (rejecting officer's qualified immunity defense where the officer ignored

24

exculpatory evidence which would have negated a finding of probable cause); *Sevigny v. Dicksey*, 846 F.2d 953, 957-59 (4th Cir. 1988) (denying qualified immunity to a police officer who, when faced with two conflicting versions of an event, simply charged plaintiff with two separate, but mutually exclusive, offenses rather than conducting further investigation to ferret out the true course of events); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").

\* \* \* \* \*

*[O]fficers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.*

188 F.3d 371-372 (emphasis added). At a minimum, the fact that Shawn Massey did not have braids created "an apparent reason for the officer to believe that the eyewitness . . . was in some fashion mistaken . . . ." *Id.* at 370. Indeed, Ms. Wood's belief that Mr. Massey might be the person who assaulted her was conditioned on Mr. Massey having cornrows and braids hanging down the back of his neck on May 22, 1998; if he did not, then the practical effect of her pre-trial statement was that Mr. Massey was *not* the person who assaulted her.

c. The *Rooker-Feldman* Doctrine Does Not Preclude Plaintiff From Alleging that the "Identification" of Shawn Massey Did Not Provide Probable Cause

Apparently recognizing the weakness of Ms. Wood's initial "identification," Defendants claim that Plaintiff cannot "call into question the reliability of Mrs. Wood's identification." Esposito Memorandum at 19; Ojaniit Memorandum at 14; Ledford Memorandum at 13-15. According to Defendants, the *Rooker-Feldman* doctrine bars Mr. Massey "from seeking what in substance would be appellate review of the state court judgment in the United States District Court, based on the losing party's claim that the judgment itself violates the loser's federal rights." Ojaniit Memorandum at 14 (citing *Johnson v. DeGrandy, 512 U.S. 997, 1005-1006*

*(1994))*.  Defendants claim that the *Rooker-Feldman* doctrine "bars any re-examination of the legality, admissibility, or legal reliability of Mrs. Wood's identification;" and that under the doctrine, "Plaintiff cannot challenge that the evidence set forth in the Court of Appeals opinion was legally sufficient to submit this criminal case to the jury."  Esposito Memorandum at 19; Ojaniit Memorandum at 14-15; Ledford Memorandum at 13-15.

The *Rooker-Feldman* doctrine has no relevance to any of Mr. Massey's claims.  First, Defendants greatly overstate the scope of the doctrine.  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphatically rejected the broad interpretation of the doctrine on which Defendants rely.  Under the *Rooker-Feldman* doctrine, the relevant question is whether an issue previously decided in state court is so "inextricably intertwined" with the issue raised in the pending federal case that the "District Court is in essence being called upon to review the state court decision."  544 U.S. at 283.  In other words, the doctrine applies only when the loser in a state court proceeding brings a federal action "seeking redress for an injury allegedly caused by the state decision itself."  *Davani v. Virginia Dept. of Transportation*, 434 F. 3rd 712, 713 (4th Cir. 2006).  Nothing in the Complaint seeks redress for anything decided by a state court.

Second, the motion to suppress Samantha Wood's identification of Shawn Massey was premised on the allegation that the photo lineup was so unnecessarily suggestive as to render both her out-of-court and her in-court identification of him inadmissible.  The trial court's ruling that it was not so unnecessarily suggestive did not preclude defendant from arguing to the jury that the identification was not reliable, nor does it preclude Plaintiff from alleging that what Ms. Wood said during the photo identification procedure was not "an identification" of Shawn

Massey as the perpetrator, and did not constitute probable cause – especially in light of the fact he did not have braids.

Mr. Massey is not challenging the identification procedure itself, or the decision of the North Carolina Court of Appeals in the appeal from his criminal conviction. Rather, Mr. Massey's claims all relate to the injury he suffered as a result of the false report that subjected him to arrest, trial, and conviction. The District Attorney has since concluded that because of the evidence that Mr. Massey did not have cornrows or braids on May 22, 1998, he should not have been convicted of assaulting and robbing Ms. Wood. The only evidence to the contrary was Defendant Esposito's false report. The effect of that fabrication on the initiation of charges, or on the guilty verdict of the jury, has not in any way been litigated in state court. *Rooker-Feldman* in no way precludes that litigation in a 1983 suit in federal court.

> d. The Indictment Is Irrelevant to the Sufficiency of Plaintiff's Complaint

Finally, Defendants assert without any legal support that an indictment by a grand jury "while not conclusive of the question of the existence of probable cause, is some evidence of probable cause, evidence which the allegations of the Complaint do not overcome." Esposito Memorandum, p. 18. Defendants are once again wrong as a matter of law. Regardless of whether a grand jury indictment untainted by any fabricated evidence is "some evidence of probable cause," the Complaint here alleges that the Defendants *provided the fabricated evidence to the prosecutor before Shawn Massey was indicted,* in order to deprive him of his constitutional rights by causing him to be indicted on charges which the Defendants knew were not supported by probable cause. Complaint ¶¶ 37, 39 and 51. In other words, the fabricated evidence was presented to the prosecutor and subsequently tainted the indictment. As the Seventh Circuit noted in *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988):

"[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial--none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision."

Were the law otherwise, no one arrested pursuant to a warrant issued by a magistrate or an indictment issued by a grand jury could ever successfully bring a 1983 suit for violation of his 4th amendment rights. The cases allowing such suits to proceed establish that this is not the law.

     e.   <u>The Complaint Sufficiently Alleges Causes of Action Against Each Defendant for Acting in Concert and Conspiracy</u>

The Complaint alleges that the Defendants "acted in concert" with one another, and conspired with each other, to cause the arrest of Shawn Massey without probable cause, and to deprive Shawn Massey of a fair trial by fabricating evidence. Complaint, ¶¶ 43, 50, 55 and 59. Such a conspiracy requires: "(1) an agreement between two or more state actors. . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, "[t]here need not be any written statement or even a speaking of words which expressly communicates agreement." *U.S. v. Sabhnani*, 599 F.3d 215, 244 (2d Cir. 2010) (internal quotation and citation omitted). "The coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan," *U.S. v. Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992), and "[o]ne can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense," *Salinas v. U.S.*, 522 U.S. 52, 65 (1997). Most importantly, "both the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and . . . intent *may be established through circumstantial evidence*." *In re Dana Corp.*, 574 F.3d at 153 (internal quotation omitted)(emphasis added) (reversing summary judgment dismissal of conspiracy claim where, despite the "self-serving" denials of participation by all defendants,

circumstantial evidence supported the claim); *see also Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994) (noting "conspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence").

Moreover, the allegations of conspiracy and acting in concert are supported by factual allegations from which a reasonable juror could find that Defendants acted in concert and/or conspired with one another. Defendant Esposito went to the scene of the crime with Officer Ojaniit specifically to assist him in the investigation, and while there fabricated what April Pride allegedly said. Complaint ¶17. Defendant Ledford, who was the robbery investigator from the Felony Investigations Bureau assigned to this case (Exhibit 9, p. 115), was actively involved in the investigation, spoke with Esposito on May 23, 1998 right after Esposito spoke to April Pride (Ex. 9, p. 111), and accompanied Defendant Esposito (Exhibit 9, p. 118) when he showed a photo spread with Massey's photo to Theresa Savall on May 26, 1998. Complaint ¶22. Ledford also spoke to the victim about her identification (Ex. 9, p. 121), "papered" the case with Assistant District Attorney Leslie Tucker, at which time he provided her with the fabricated report (Exhibit 9, p.121-122), and was the witness who testified before the Magistrate on July 7, 1998 (to obtain the warrants) and before the grand jury on September 8, 1998 (to obtain the indictments). Defendant Ojaniit was working with Esposito on the investigation (Complaint ¶17), was present at the apartment complex on May 23, 1998 when Esposito spoke to April Pride about Shawn Massey, and reviewed the information Esposito allegedly obtained from Pride (Exhibit 9, p. 111). Ojaniit also showed the photo spread containing Massey's picture to Samantha Wood, and then wrote a report that misrepresented what she actually said about Mr. Massey's photo. Instead of reporting her actual words -- that he "looked the most like" the perpetrator -- Ojaniit wrote in his official report that Ms. Wood had said that Mr. Massey

"looked like" the perpetrator, omitting the critical words "the most" from the report that went to the District Attorney. Complaint ¶21.

In short, the Complaint alleges circumstantial evidence that these Defendants were acting in concert with one another in initiating a criminal proceeding against Shawn Massey, without probable cause, and in using fabricated evidence in furtherance of that goal. [23]

Despite these allegations, Defendants each claim that they cannot be held liable for the fabrication of evidence or for initiating the prosecution of Shawn Massey without probable cause. Defendant Esposito, for example, argues that even assuming that he fabricated a completely false version of his conversation with April Pride on May 23, 1998, he cannot be held liable for this fabrication because he did not "obtain any arrest warrants against the Plaintiff, did not arrest the Plaintiff, was not listed as a witness before the Grand Jury, and did not testify before the Grand Jury." In short, he argues that he did not "initiate" the criminal proceeding. Esposito Memorandum, p. 20.

The Fourth Circuit rejected a similar argument in *Miller v. Prince George's County, supra,* 475 F.3d at 630, noting that the fact that the defendant was not the arresting officer does not "eliminate his responsibility for the natural consequence of his use of intentionally or recklessly false material misrepresentations and omissions to obtain the arrest warrant." Thus, a defendant may be found to have initiated or continued a prosecution where he provides false information knowing that it will be communicated to the prosecution. *See Rothstein v. Carriere*, 373 F.3d 275, 294 (2d Cir. 2004); *Ricciuti*, 124 F.3d at 130. "[A] police defendant who acts

---

[23]     Until discovery is conducted, there is no way to determine more precisely what each Defendant did before or during the "papering" process, or what each knew about Shawn Massey's appearance on May 22, 1998 prior to his arrest. That is precisely why all factual allegations in the Complaint and the reasonable inferences therefrom must be taken as true at this stage, and why the complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Edwards v. City of Goldsboro, supra*, 178 F.3d at 244.

intentionally or with reckless disregard for the truth may not insulate himself from liability through the objectively reasonable conduct of other officers." *Burke v. Town of Walpole*, 405 F.3d 66, 86 (1st Cir. 2005).

Thus, if as alleged Defendant Esposito fabricated the information that April Pride told him Shawn Massey wore his hair pulled back with 4 or 5 braids on May 22, 1998, he cannot escape liability by providing that fabricated information to another officer to communicate to the District Attorney or the grand jury – even if that officer does not know the information was fabricated. He certainly does not escape liability by providing that information to an officer with whom he is acting in concert.

Nor do Ojaniit and Ledford escape liability if they, as alleged, were acting in concert with Esposito. Even those with minimal involvement in a conspiracy may be held liable so long as they (1) agreed (2) to act in concert towards an unlawful end and (3) acted to that purpose. *See, e.g., U.S. v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999). The circumstantial evidence, as alleged in the Complaint, and as disclosed in the trial transcript attached by Defendants to their motion, taken in the light most favorable to Plaintiff, more than plausibly establishes that plaintiff may be entitled to relief against all three Defendants under an acting in concert and/or conspiracy theory.

A motion for judgment on the pleadings involves "an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claim set forth therein. . . ." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). As discussed above, the Complaint in this case is more than sufficient to allege a violation of Shawn Massey's fourth amendment rights, a conspiracy to violate his fourth amendment rights, and the state tort of malicious prosecution. Defendants' motions for judgment on the pleadings as to Counts II, III and V should therefore be denied.

D.    Impeding and Hindering Public and Legal Justice Claim

Plaintiff's fourth cause of action alleges that the Defendants, acting in concert with one another, conspired to engage in acts that obstructed legal justice by "conspiring to manufacture and manufacturing a false and misleading statement attributed to April Pride with the knowledge that this statement would be used to advance and perpetuate the criminal process against Shawn Massey."  Complaint ¶¶ 55 and 56.  Defendants concede that North Carolina "recognizes a claim for common law obstruction of justice for the creation of false evidence."    Esposito Memorandum, p. 24.

Nevertheless, Defendants ask this Court to either dismiss this claim because Plaintiff cannot show that his prosecution was "in some way judicially prevented, obstructed, impeded or hindered by the acts of defendants."  *Id.*   However, the allegations of the Complaint, taken as true, would allow a reasonable juror to conclude that the fabrication of evidence by Esposito, acting in concert with Ojaniit and Ledford, obstructed and impeded justice by causing the prosecution to go forward despite the fact that Shawn Massey could not have been the perpetrator, since he had no braids, by causing April Pride to be impeached by this fabricated evidence during the trial, and by ultimately causing Shawn Massey to be convicted and to serve 12 years for a crime he did not commit.

In the alternative, Defendants ask this court to decline to exercise its pendent jurisdiction over this state law claim and dismiss the claim without prejudice for refiling in the courts of North Carolina.   Of course, this request is dependent on Defendants' argument that "[t]his Court's jurisdiction over the claim for conspiracy under North Carolina law is wholly dependent upon the existence of valid federal claims, as here is no other ground for jurisdiction alleged in the Complaint."  *Id.*   To the extent this Court declines to dismiss all of Plaintiff's federal claims,

therefore, it should likewise decline to dismiss Plaintiff's state law claim for common law obstruction of justice.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motions for Judgment on the Pleadings in their entirety.

RESPECTFULLY submitted this the 31st day of January, 2012.


**RUDOLF WIDENHOUSE & FIALKO**


/s/David S. Rudolf
David S. Rudolf; NCST #8587
Attorney for Plaintiff
225 East Worthington Avenue
Charlotte, NC 28203
Telephone:     704-333-9945
Telefax:         704-335-0224
Email:           Dsrudolf@rwf-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2012, I electronically filed the foregoing **Plaintiff Shawn Massey's Response to Defendants' Motions for Judgment on the Pleadings** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Daniel E. Peterson, Esq.
Assistant City Attorney Office of the City Attorney
600 E. Fourth Street
Charlotte, NC 28202-2841
dpeterson@charlottenc.gov

James P. Cooney, III, Esq.
Womble Carlyle Sandridge & Rice, LLC
One Wells Fargo Center
301 S. College St., Suite 3500
Charlotte, NC 28202-6037
jcooney@wcsr.com

Lori R. Keaton, Esq.
Parker Poe Adams & Bernstein LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
lorikeaton@parkerpoe.com

RESPECTFULLY submitted this the 31st day of January, 2012.

RUDOLF WIDENHOUSE & FIALKO

/s/ David S. Rudolf
David S. Rudolf; NCSB #8587
225 East Worthington Avenue
Suite 200
Charlotte, NC 28203
Telephone:    704-333-9945
Telefax:        704-335-0224
Email:          dsrudolf@rwf-law.com

34