UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No.: 3:11-CV-477

| | |
|---|---|
| SHAWN MASSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLOTTE-MECKLENBURG POLICE | ) |
| OFFICER J.J. OJANIIT; CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICER | ) |
| GERALD J. ESPOSITO; CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICER TOM | ) |
| LEDFORD; AND CHARLOTTE- | ) |
| MECKLENBURG POLICE OFFICERS JOHN | ) |
| AND JANE DOES ##1-10, IN THEIR | ) |
| INDIVIDUAL CAPACITIES, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT OFFICER J.J.
OJANIIT'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS**

## Statement of the Case and Factual Background

See Defendant Officer J.J. Ojaniit's Memorandum in Support of Motion for Judgment on

the Pleadings for "Statement of the Case" and "Factual Background."

## Summary of Argument

In Plaintiff's Consolidated Response to Defendants' Motion for Judgment on the

Pleadings, the Plaintiff asks this Court to focus on one thing and one thing only- Mr. Massey's

hair- and to deny the Defendants' Motion for Judgment on the Pleadings as a result thereof.  In

particular, Plaintiff claims that because Mr. Massey's hair was allegedly not long enough to be

put in braids, this means he did not commit the crime of which he was convicted by a jury of his

peers and thus he is entitled to recover monetary damages from this Defendant and others.  **Doc.**

**No. 30**  This argument completely ignores all of the other evidence-- the victim's identification**s**,

the apartment manager's identification and the attacker's familiarity with the apartment complex (a familiarity which Massey had).

Nevertheless, if the Plaintiff wishes for hair to be the central focus of this case, then the "hair evidence" should at least be presented fully and accurately. Plaintiff characterizes the facts as if the Defendants "hid" or lied about what the witnesses in this case said about Mr. Massey and particularly about his hair. That is simply not true.

The only factual allegations made against this Defendant relate to a photo line up that he showed to the victim and a report he wrote about that viewing. The photo array that Officer Ojaniit presented to the victim has the following notation on it: "said this looks most like him except no braids." **Doc. No. 14, Ex. 5.** " Secondly, the allegedly "false and misleading report" specifically states "I looked at the photos and told the officer that one of the subjects looked like the suspect except that the suspect had longer hair with braids and he did not have a beard." **Doc. 14, Ex. 6.** (emphasis added.). That is the real "'inconvenient truth.'" **Doc. 30, p. 2**

Interestingly, all of the facts that Plaintiff claims support Massey's "innocence" were presented to the jury who convicted him. Plaintiff acknowledges as much in his Brief: 1. "Ms. Woods reiterated at trial, as she had told Defendant Ojaniit... that the person who attacked her had braids that ran through his hair (i.e., cornrows), with five braids 'hanging down' in the back." 2. She [Mrs. Woods] also testified that Shawn Massey's hair in court was shorter than the man who robbed her." 3. "…[E]veryone who knew Shawn Massey, from his grandmother and his sister, to his preacher and his employer, to a male friend and April Pride, all testified that Shawn Massey had never had any braids in his hairs, and that he wore his hair very short, too short to even comb." **Doc. 30, p. 9** Even with this allegedly exculpatory evidence, the jury convicted Mr. Massey of the attack.

## <u>ARGUMENT</u>

I.    **Probable cause existed at the time of the Plaintiff's arrest and thus Counts II, III and IV of Plaintiff's Complaint should be dismissed.**

Three of the Plaintiff's five claims (Counts II, III and IV) are explicitly based on, and require as one of their premises, a lack of probable cause. **Doc. No. 1, ¶¶ 44, 50, 59**

    **A. In his brief, Plaintiff improperly applies a burden beyond what is required to establish probable cause to the evidence that existed at the time Mr. Massey was arrested.**

Plaintiff asserts that the Defendants initiated prosecution without probable cause in support of Counts II, III and IV of his Complaint. **Doc. 30, p. 19**. Plaintiff bases these assertions primarily on the "hair issues" set forth above. *Id.* Plaintiff mistakenly applies a mode of proof far beyond that required for probable cause in analyzing the evidence that was present at the time the warrant for arrest was issued. Contrary to Plaintiff's arguments, "[t]o establish probable cause, the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith…." *State v. Crawford*, 125 N.C.App. 279, 480 S.E.2d 422 (1997) (quoting *State v. Eubanks*, 283 N.C. 556, 196 S.E.2d 706 (1973)). The degree of certainty necessary for probable cause is "a 'fair probability,' an amount of proof greater than 'reasonable suspicion' but less than 'preponderance of the evidence,' 'clear and convincing,' or 'beyond a reasonable doubt.'" *Id.* In other words, probable cause only requires enough evidence 'warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Wilkes v. Young,* 28 F.3d 1362, 1365 (4th Cir. 1994).

    **B.    In conducting its analysis of whether probable cause existed, the Court may properly examine the evidence presented at trial and is not required to stop the analysis at the time the arrest warrant was issued as Plaintiff alleges.**

Plaintiff also alleges that the Defendants improperly relied upon evidence not known to the prosecution at the time of Massey's arrest to support the assertion that probable cause

3

existed.  Plaintiff cites to *Best v. Duke University*, 337 N.C. 742, 448 S.E.2d 506 (1994) to support his theory that the Court should only consider the evidence as it existed at the initiation of the proceedings.  **Doc. No. 30, p. 19**.  Interestingly, however, in *Best*, the North Carolina Supreme Court examined the evidence that was presented at trial to determine if probable cause existed- not simply the evidence that existed at the time of the arrest (i.e., "The uncontroverted evidence at trial showed….").

Likewise, in *Allison v. Food Lion*, 84 N.C.App. 251, 352 S.E.2d 256 (1987), the plaintiff brought a malicious prosecution action arising from his prosecution for stealing two packs of cigarettes from a Food Lion store.  The Court explained that the proper test for determining want of probable cause in an action for malicious prosecution is whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation.  *Id.* at 254, 352 S.E.2d at 257.  In applying that test, the Court noted that the plaintiff's evidence tended to show that he had purchased the cigarettes on his first trip to defendant's store and put them in his pocket; that he had a receipt for the cigarettes but had not produced it because he was upset and because he had not been asked if he had a receipt; and that defendant had declined to stop the prosecution when plaintiff returned the next day with the receipt.  *Id.*  On the other hand, the defendant's agent claimed that he asked plaintiff for the receipt proving his purchase and the plaintiff did not produce the receipt.  *Id.* at 254, 352 S.E.2d at 258.  Based on all of these factors, the Court determined that the defendant's motions for directed verdict and judgment notwithstanding verdict were properly denied.  *Id.*

The Court's consideration of all of these factors illustrates the continuing nature of the probable cause analysis—a party may have probable cause at the time of arrest but then additional evidence may come to light that illustrates otherwise.  Conversely, the State may have

PPAB 1927503v1

probable cause at the time of arrest and then additional evidence may come to light that further supports that determination. *Allison* illustrates that the Court may properly consider that additional evidence in analyzing a malicious prosecution claim.

Similarly, in *Williams v. Boylan-Pearce, Inc.,* 69 N.C.App. 315, 317 S.E.2d 17 (1984), aff'd, 313 N.C. 321, 327 S.E.2d 870 (1985), the Court ruled that the defendant's motions for a directed verdict and for judgment notwithstanding verdict were properly denied. In *William*s, a store clerk was accused of stealing earrings. *Id.* at 316, 317 S.E.2d at 18. The plaintiff's evidence tended to show that she took no earrings from defendant's stock, but only through forgetfulness, wore one pair out of the store, while defendant's evidence tended to show that a security officer observed plaintiff putting something in her purse while she was working and that plaintiff did wear a pair of defendant's earrings out of the store. Defendant's investigation disclosed no missing earrings nor disclosed that plaintiff had committed any trespass against defendant, an element of larceny. *Id.* at 319, 317 S.E.2d at 20. The Court determined that after defendant's agents had concluded their investigation, they could not have harbored a reasonable suspicion that plaintiff had stolen defendant's earrings. In other words, the probable cause analysis was once again an "ongoing" consideration. *Id.*

Further, in *Williams v. Kuppenheimer Manufacturing Company, Inc*., 105 N.C.App. 198, 412 S.E.2d 897 (1992), the Court's probable cause analysis was not limited to a consideration of the facts that existed at the moment of arrest. Plaintiff sued for malicious prosecution after he was accused of stealing due to a number of suspicious void sales on his cash register. *Id.* at 898-899, 412 S.E.2d at 198-199. The Court explained that some of the evidence tended to show prima facie the existence of probable cause, *i.e.* the grand jury returning a bill of indictment and plaintiff's waiver of a preliminary hearing. *Id.* at 202, 412 S.E.2d at 901. On the other hand,

some of the evidence tended to show prima facie the absence of probable cause, *i.e.* the court's dismissal of the criminal charge against Williams at the close of the State's evidence. *Id.* In summary, the Court once again considered the evidence of probable cause beyond the time of detention in analyzing the plaintiff's malicious prosecution claim.

Finally, the pattern jury instruction for Malicious Prosecution in North Carolina likewise illustrate the continuing nature of the probable cause analysis. N.C.P.I. Civil 801.00- "Malicious Prosecution - Criminal Proceeding"

"The (state number) issue reads:

'Did the defendant maliciously prosecute the plaintiff?'

On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove, by the greater weight of the evidence, three things:

First, that the defendant [instituted a criminal proceeding] [**caused a criminal proceeding to be continued**] against the plaintiff without probable cause. "Probable cause" exists if there are facts and circumstances which would cause a reasonable person to believe that prosecution is justified. You should consider only the facts and circumstances that the defendant knew or should have known at the time the proceeding was [instituted] [**continued**]."

(Emphasis added.)

In other words, the model instructions anticipate probable cause being examined as the proceedings continue- not just at the initiation of the proceeding.

Based on the above, this Court can and should consider all evidence of probable cause that existed regarding Mr. Massey- not just the evidence that existed at the time the warrants were issued. Plaintiff's wise attempt to avoid the evidence presented at trial is understandable as it only further highlights that probable cause existed in 1998, and continues to exist today[1], to believe that Massey committed this crime. This evidence includes 1. Mrs. Wood's identification

---

[1] It is important to note that the District Attorney did not dismiss this action because he lacked probable cause. The District Attorney dismissed the action because he determined he would not be able to convince a jury of Massey's guilt beyond a reasonable doubt.

6

of  Massey on **two** additional occasions after the photo array with Ojaniit (**Doc. No.  14, Ex. 9 at pp. 55-56 and Ex. 2 at p. 0141**);   2.  Theresa Savall's unequivocal identification of Massey as the man who accosted her on the morning of the crime in the same apartment complex, placing him in the apartment complex at around the time of the crime.  (**Doc. No. 14, Ex. 2 at p. 0141**); and 3.  April Pride's testimony that established Massey's familiarity with the complex which is important since there is no dispute that the attacker was familiar with the complex, was familiar with the fact that the walls were not soundproof, and had been in and around the complex enough to be able to observe Mrs. Wood and her husband to the point where he knew their schedules. (**Doc. No. 14, Ex. 9 at pp. 45-48**).  This evidence goes far beyond the "fair probability" required to show probable cause.

       **C.**      **The evidence that existed at the time of Massey's arrest, including Ms. Wood's identification of Mr. Massey, established probable cause.**

Even if the Court were to determine that the only evidence to be examined is that which existed prior to the arrest, there is still ample evidence of probable cause, particularly due to the victim's own identification of Massey.  Plaintiff attempts to minimize the significance of Mrs. Wood's identification of Massey because Plaintiff knows that the identification is in and of itself sufficient to support probable cause.  *See e.g. Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991) (noting that "it is certainly reasonable for a police officer to base him belief in probable cause on a victim's reliable identification of his attacker").   It is undisputed that the victim selected Massey's photograph as looking the most like her attacker prior to Massey's arrest.

       **D.**      **The Plaintiff is not permitted to have the reliability of Mrs. Wood's identification relitigated pursuant to North Carolina law.**

Plaintiff claims that the *Rooker-Feldman* doctrine (which bars Plaintiff from seeking what in substance would be appellate review of the state judgment in a United States district

court, based on the losing party's claim that the state judgment itself violates the loser's federal rights) does not apply to the instant case because they are not seeking redress for anything decided by the state court because the effect of Defendant Esposito's alleged "fabrication" has not been litigated in state court. **Doc. 30, pp. 26-27**.

First, Plaintiff makes no mention of Officer Ojaniit and thus presumably Plaintiff is not making this argument with regards to Officer Ojaniit (i.e., In the Brief, Plaintiff states that Massey's claims "all relate to the injury he suffered as a result of the false report [later referred to as "Defendant Esposito's false report"] that subjected him to arrest, trial and conviction.").

Ironically, the majority of Plaintiff's argument is devoted to attacking the identification of Mr. Massey (See Doc. 30, pp. 6-7, 21, 24-25) by Ms. Woods and emphasizing that this identification played a key role in Massey being convicted. Nevertheless, the Plaintiff wants to also argue that they are not challenging that identification in this case. Plaintiff should not be permitted to utilize the identification when it suits his case and disregard it when it hurts his case.

## II.   Officer Ojaniit's showing photographs to Ms. Wood and writing a report with respect therto was not the legal cause of the Plaintiff's conviction.

The essence of the Plaintiff's argument in opposition to the Motion for Judgment on the Pleadings is that he is not required to prove that any alleged fabrication caused his conviction in order to state a valid claim for a Due Process violation in Count I. Rather, he argues that if he can show that it was foreseeable that the claimed fabrication could cause a conviction, then it is irrelevant as to whether it actually caused the conviction. On this issue, Officer Ojaniit adopts by reference and incorporates the arguments of Officers Esposito and Ledford in their Replies.

## <u>Conclusion</u>

For the reasons set forth above, the Defendant requests that the Plaintiff's claims be dismissed and that his Motion for Judgment on the Pleadings be granted.

PPAB 1927503v1

This 21st day of February 2012.

/s/ David N. Allen
David N. Allen
N.C. State Bar #9095
Lori R. Keeton
N.C. State Bar #25813
**Parker Poe Adams & Bernstein LLP**
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Telephone: (704) 372-9000
Facsimile:  (704) 334-4706
davidallen@parkerpoe.com
lorikeeton@parkerpoe.com

*Attorneys for Defendant Officer J.J. Ojaniit*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2012, a copy of the foregoing **Reply Memorandum** was filed electronically. Notice of filing will be sent to all parties by operation of the Court's electronic filing system, including:

David S. Rudolf, Esq.
Rudolf Widenhouse & Fialko
2225 East Worthington Avenue, Suite 200
Charlotte, NC  28203

Daniel E. Peterson, Esq.
Assistant City Attorney
Office of the City Attorney
600 E. Fourth Street
Charlotte, NC  28202-2841

James P. Cooney, III, Esq.
Womble Carlyle Sandridge & Rice, LLC
One Wachovia Center
301 S. College St., Suite 3500
Charlotte, NC  28202-6037

/s/ Lori R. Keeton
Lori R. Keeton
N.C. State Bar #25813
**Parker Poe Adams & Bernstein LLP**
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC  28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
lorikeeton@parkerpoe.com

10