IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-CV-477-RJC-DCK

| | |
|---|---|
| SHAWN MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CHARLOTTE-MECKLENBURG POLICE ) | |
| OFFICER J.J. OJANIIT; CHARLOTTE- ) | |
| MECKLENBURG POLICE OFFICER ) | |
| GERALD J. ESPOSITO; CHARLOTTE- ) | |
| MECKLENBURG POLICE OFFICER TOM ) | |
| G. LEDFORD; and CHARLOTTE- ) | |
| MECKLENBURG POLICE OFFICERS JOHN ) | |
| and JANE DOES ##1-10, in their individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "...Motion[s] For Judgment On The Pleadings" (Document Nos. 16, 18, and 20). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and these motions are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that Defendant Ledford's motion be granted, and Defendants Esposito and Ojaniit's motions be denied.

**I. PROCEDURAL BACKGROUND**

Plaintiff Shawn Massey ("Plaintiff" or "Massey") filed his "Complaint And Jury Demand" (Document No. 1) (the "Complaint") against Charlotte-Mecklenburg Police Officers J.J. Ojaniit ("Ojaniit"), Gerald J. Esposito ("Esposito"), Tom G. Ledford ("Ledford"), and John and Jane Does ##1-10 (collectively, "Defendants") on September 23, 2011. The Complaint asserts causes of action for: (1) 42 U.S.C. §1983 due process violations under the 5th and 14th amendments to the U.S.

Constitution; (2) 42 U.S.C. §1983 malicious prosecution and unreasonable seizure under the 4th and 14th amendments to the U.S. Constitution; (3) 42 U.S.C. §1983 conspiracy to violate Massey's Constitutional rights; (4) impeding and hindering public and legal justice, false imprisonment and civil conspiracy; and (5) malicious prosecution and conspiracy. (Document No. 1).

Defendants Ledford, Ojaniit, and Esposito filed their Answers (Document Nos. 13-15) on November 18, 21, and 23, 2011, respectively. Each of the named Defendants then filed a Motion For Judgment On The Pleadings (Document Nos. 16, 18, and 20) on November 28, 2011. "Plaintiff's Consolidated Response To Defendants' Motions For Judgment On The Pleadings" (Document No. 30) was filed January 31, 2012. Defendants' reply briefs (Document Nos. 34, 36, and 38) in support of their motions were filed February 21, 2012.

Plaintiff also filed a "Motion to Strike Defendants' Exhibits or, In the Alternative, to Convert Defendants' Motions for Judgment on the Pleadings Into Motions for Summary Judgment..." (Document No. 28) on January 31, 2012. That motion was fully briefed on or about April 16, 2012. On July 20, 2012, Plaintiff's "Motion to Strike Defendants' Exhibits ..." (Document No. 28) was denied, and the undersigned scheduled a hearing on the pending motions for judgment on the pleadings. (Document No. 43).

After a careful review of the parties' briefs, and consideration of counsel's arguments at a motions hearing held on August 14, 2012, a memorandum and recommendation on the pending motions for judgment on the pleadings is now appropriate.

## II. STANDARD OF REVIEW

> The standard of review for a 12(b)(6) and a 12(c) motion is nearly the same - the Court must accept the nonmovant's allegations as true, viewing the facts in the light most favorable to the nonmoving party - with the real difference being that on a 12(c) motion, the Court considers the Answer as well as the Complaint. Furthermore, the

2

> Court notes that consideration of the . . . other materials on which the plaintiff's allegations explicitly rely does not convert this motion to one for summary judgment under Federal Rule of Civil Procedure 56.

Rinaldi v. CCX, Inc., 3:05-cv-108-RJC, 2008 WL 2622971 at *2 n.3 (W.D.N.C. July 2, 2008) (citations omitted); see also, Williams v. Branker, 462 Fed.Appx. 348, 352 (4th Cir. 2012) (we review Rule 12(c) motion for judgment on the pleadings "applying the same standard of review we apply to a Rule 12(b)(6) motion to dismiss") and Eagle Nation, Inc. v. Market Force, Inc., 180 F.Supp.2d 752, 754 (E.D.N.C. 2001) ("pleadings include the complaint, the answer, and any written instruments attached as exhibits.")

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1960 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only

3

> "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Fourth Circuit has noted, we must accept the allegations in the complaint, unless they represent "unwarranted inferences, unreasonable conclusions, or arguments,' or 'contradict matters properly subject to judicial notice or by exhibit.'" Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) and Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)).

### III. DISCUSSION

**A. Factual Background**[1]

On May 22, 1998, at approximately 10:00 a.m., Samantha Wood ("Wood") was victim to an armed robbery, kidnapping, and attempted rape at her apartment at 5206 B Cherrycrest Lane, Charlotte, North Carolina. (Document No. 1, p.3). Defendants Ojaniit and Esposito responded to the scene and interviewed Wood shortly after the crime. (Document No. 1, p.4). According to a statement given by Wood to Ojaniit, the assailant threatened to kill Wood if she called the police and claimed to know her schedule. (Document No. 15-3). Wood described the assailant as being

---

[1] This factual summary is presented in the light most favorable to Plaintiff based on the allegations in the Complaint and consistent with relevant exhibits to the pleadings.

4

a black male, who was 5' 9" tall and 180lbs, "with his hair pulled back from his face and (4) small braids on the back of his head . . . wearing a red shirt and blue jean shorts." Id.; (Document No. 1, p.4).

The following day, May 23, 1998, Ojaniit and Esposito returned to the Emerald Bay Apartments to conduct interviews. (Document No. 1, p.4; Document No. 13-4). They spoke to Theresa Savall ("Savall"), the rental manager at the apartments. Id. Savall reported seeing a black male on the property at approximately 10:00 a.m., who approached her and asked her out. Id.; (Document No. 13-7). She described the man as approximately 5' 11'' tall and 165+lbs, wearing a basketball jersey, blue jeans, and a ball cap. Id. She stated he was coming from the patio at 5038 C Cherrycrest Lane. Id.

Esposito then went to 5038 C Cherrycrest Lane and spoke with April Pride ("Pride"). Id. Esposito told Pride he was investigating a complaint about noise. Id. Pride told him that her friend, Shawn Massey had stayed at her apartment the night of May 21-22. Id. Pride informed Esposito that Massey was about 25 years old and lived with his grandmother. Esposito's report states that Pride also provided information that "Mr. MASSEY wears his hair pulled back with 4 or 5 braids." Id.

Also on May 23, 1998, Ojaniit showed Wood a photo line-up of possible suspects at the police station. (Document No. 1, p.5). The six photographs included one of Shawn Massey. Id. Wood selected the photo of Massey as "looking the most like" her assailant, but that her assailant had longer hair with braids, and did not have a beard. Id. Ojaniit wrote a report on May 23, 1998, stating that Wood told him that "one of the suspects looked like the suspect except that the suspect had longer hair with braids and he did not have a beard." (Document No. 13-6).

On May 26, 1998, Ledford showed the same photo line-up to Savall, who stated that the

5

photo of Massey "looks like the person who spoke to me" on the morning of May 22, 1998, and "I believe he is the same person." (Document No. 1, p.5; Document No. 13-7).

On July 7, 1998, warrants were issued for Massey's arrest on three counts of second degree kidnapping, robbery with a dangerous weapon, and felonious breaking and entering. (Document No. 1, p.5; Document No. 15-7). The warrants were served on August 26, 1998. (Document No. 15-7).

Shawn Massey's trial began on September 13, 1999. Just before the trial began, Samantha Wood expressed doubt to Assistant District Attorney Eric Cottrell about her identification of Massey, apparently stating "I don't know if that's him or not." (Document No. 1, p.8); see also, (Document No. 13-2). Based on seeing his face and hearing his voice during a preliminary hearing, Wood then convinced Cottrell that she was satisfied with her identification of Massey as her assailant. Id. "This exchange was not disclosed to the defense." (Document No. 13-2).

During the trial, Wood described her assailant as having "braids in his hair, with five hanging down" and being "about five-eight." (Document No. 1, p.6; Document No. 15-10, p.40). She described his braids as going all through his hair, and that he wore a red shirt, like a jersey, with hurricane signs on it. (Document No. 1, p.6; Document No. 15-10, p.41). Wood identified Massey in court but testified that his hair was shorter and he was thinner than at the time of the robbery. (Document No. 1, p.6; Document No. 15-10, p.56).

Savall testified that she was the Assistant Community Director for Emerald Bay Apartments on May 22, 1998. (Document No. 15-10, p.67). She estimated that the person she saw was five eight-and-a-half, and weighed about 150-155 lbs. Id. at 68-69. She further testified that the person she spoke to had been wearing an orange and white jersey and long pants similar to jeans, not shorts. (Document No. 1, p.6; Document No. 15-10, p.70). She also explained that she did not feel at all threatened and that she told the man to move along. (Document No. 1, p.6; Document No. 15-10,

p.71).

Pride testified at trial that she'd known Massey about ten or eleven years, saw him quite frequently, and had never known him to wear braids, or to have hair long enough to have hanging braids.

(Document No. 1, p.6; Document No. 15-10, pp.89, 94-95). Pride further testified that Massey had a "low haircut" on May 22, 1998. (Document No. 1, p.7; Document No. 15-10, p.95). Pride also testified that she recalled Esposito asking her if Massey wore braids, but that she did not recall telling him that he did and had no idea why Esposito would have written that down in his notes. (Document No. 1, p.7; Document No. 15-10, p.98-99).

A man Massey worked for, Brady Dorsey ("Dorsey"), also testified that he had never known Massey to wear braids. (Document No. 15-10, pp.145-146). Dorsey also testified that he remembered picking Massey up for work at 3132 Graymont at 7:00 a.m. on May 22, 1998. (Document No. 1, p.7; Document No. 15-10, p.147). Dorsey produced pay records showing that Massey had been paid for working on that day, and that he probably worked through about 4:30. (Document No. 1, p.7; Document No. 15-10, p.149, 156)

On September 17, 1999, the jury convicted Massey of all charges. (Document No. 1, p.7). Judge James L. Baker sentenced him to a minimum term of 103 months and a maximum term of 133 months for armed robbery, and a minimum of 34 months and a maximum of 50 months for the consolidated kidnapping and breaking and entering charges. Id. Judge Baker ordered that the sentences be served consecutively. Id.

In the mid-2000s, the Duke Wrongful Conviction Clinic ("Clinic") accepted Massey's case. Id. During its investigation, the Clinic uncovered a series of seven photos of Massey taken between April 1991 and May 1998. Id. In each photo, including one taken on March 9, 1998, Massey had

7

short hair.  Id.  Two professional barbers provided the Clinic affidavits asserting it was not possible for Massey's hair to have grown long enough to be braided into cornrows between March 9, 1998 and May 22, 1998.  (Document No. 1, p.8)

The Clinic also interviewed Wood.  Id.  She disclosed that she had expressed doubts about the identification of Massey as her assailant immediately before the trial.  Id.  "Wood also confirmed that her assailant had worn cornrows;  that is, braids that ran from near his face to the back of his head."  Id.

On or about May 5, 2010, based on the information gathered by the Clinic, the Mecklenburg County District Attorney, Peter S. Gilchrist, III, filed a "Motion to Set Aside Verdicts And Release Defendant."  (Document No. 1, p.8;  Document No. 13-1).  Gilchrist noted that "the issues of whether all photographs were provided to the defense and the failure of the State to notify the defense of Wood's initial reservation at trial concerning the identity of Massey" led him to conclude that it was likely that a jury would have "reasonable doubt about whether he committed the offense." Id.  On or about May 6, 2010, Massey was released from prison. (Document No. 1, p.8;  Document No. 13-2).

As noted above, Massey filed the instant lawsuit on September 23, 2011.  The undersigned will now address the parties' arguments regarding the pending motions for judgment on the pleadings filed on November 28, 2011.

**B. Officer Gerald J. Esposito**

Defendant Esposito contends that his motion for judgment on the pleadings should be granted because "the pleadings reveal that the Complaint fails to state a constitutional violation in that the Plaintiff cannot show any action by this Defendant caused his arrest, detention, or conviction, and thus that the Defendant is entitled to judgment as a matter of law."  (Document No.

8

16, p.1). Alternatively, Esposito contends that "the failure to state a constitutional claim entitles the Defendant to judgment based on his defenses of qualified immunity and public official immunity." Id.

  1. **Qualified Immunity**

Esposito suggests that he is entitled to qualified immunity although he concedes that for purposes of review of his motion that Plaintiff's assertion that he fabricated part of April Pride's statement to him "must be assumed to be true." (Document No. 17, pp.14-15). Esposito notes that based on his defense of qualified immunity, the Court must determine "[t]aken in the light most favorable to the moving party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (Document No. 17, p.15) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

The Complaint, in most pertinent regard to Esposito, specifically alleges that

> Officer Esposito reported that April Pride also told him that Mr. MASSEY wears his hair pulled back with 4 or 5 braids – almost verbatim the same description that Ms. Wood had given of her assailant's hairstyle. This report was a fabrication. Ms. Pride never told Officer Esposito or anyone else that Mr. Massey ever wore his hair pulled back or in braids. In fact, Mr. Massey has always kept his hair very short, and had never worn his hair in braids. Officer Esposito took no signed statement from April Pride.

(Document No. 1, pp.4-5).

The Fourth Circuit addressed the issue of qualified immunity as follows:

> Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In considering an appeal from the rejection of a qualified immunity defense, our first task is to determine "whether a constitutional right would have been violated on the facts

9

> alleged." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150
> L.Ed.2d 272 (2001). If so, we must then proceed to consider whether
> the right asserted was clearly established at the time of the alleged
> violation. See id. In answering this latter question, the relevant
> inquiry is whether "it would be clear to an objectively reasonable
> officer that his conduct violated [the] right." Brown v. Gilmore, 278
> F.3d 362, 367 (4th Cir.2002); see Malley v. Briggs, 475 U.S. 335,
> 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (explaining that qualified
> immunity protects "all but the plainly incompetent or those who
> knowingly violate the law").

Washington v. Wilmore, 407 F.3d 274, 281 (4th Cir. 2005). "The right alleged by Washington, defined at the appropriate level of generality, is 'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" Washington, 407 F.3d at 282. The Fourth Circuit concluded that "the facts alleged by Washington amounted to the violation of a constitutional right." Id. a t 282-283. The Washington decision thus affirmed the district court's denial of qualified immunity to Wilmore in its partial denial of his motion for summary judgment. Id.

    The undersigned also finds the Zahrey decision to be instructive on this issue.

> We hold that there is a constitutional right not to be deprived of
> liberty as a result of the fabrication of evidence by a government
> officer acting in an investigatory capacity, at least where the officer
> foresees that he himself will use the evidence with a resulting
> deprivation of liberty. We also believe that this right was clearly
> established in 1996, when Coffey's alleged misconduct occurred. In
> addition, we conclude that Zahrey's complaint, assumed for purposes
> of the appeal to be true, adequately pleaded a deprivation of liberty
> as a result of Coffey's alleged misconduct. Finally, we conclude that
> the allegations of the complaint suffice to indicate that a qualified
> immunity defense may not be sustained without further development
> of the facts.

Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000). In Zahrey, the Second Circuit reversed and remanded a district court's decision to dismiss claims on the ground of qualified immunity. Id.

    Viewing the allegation of fabrication against Esposito in the light most favorable to Plaintiff,

10

the undersigned finds that Plaintiff has alleged conduct that would violate a constitutional right, and that such right was clearly established at the time of the alleged violation. Moreover, the undersigned will decline to recommend at this early stage of the litigation that the Court conclude as a matter of law that the alleged violation did *not* cause Plaintiff's arrest, detention, or conviction. Instead, reasonable inferences should be made in Plaintiff's favor, and this case should be allowed to proceed to discovery and dispositive motions.

### 2. Probable Cause

Next, Esposito asserts that Counts II, III, and V must be dismissed based on a lack of probable cause. (Document No. 17, p.15). Esposito contends that these claims are all premised on a lack of probable cause, and concludes that "[t]he facts as revealed in the Complaint and the exhibits in this case show plainly that, without the allegedly fabricated sentence, there was an abundance of probable cause in this matter." (Document No. 17, p.17).

The undersigned respectfully disagrees. Without the allegedly fabricated report that April Pride described Massey as having braids, there is substantially less evidence to link Massey to the crimes against Samantha Wood and her family. Viewed most favorably to Plaintiff, the facts in the Complaint and exhibits to the pleadings provide that Wood's assailant had braids, and that Massey did not have braids. Moreover, there was no physical evidence placing Massey, or anyone else, at the crime scene.

> In North Carolina, and it seems in a large number of jurisdictions, probable cause for a criminal prosecution is defined in the sense in which the term is used in actions for malicious prosecution, in substance, but with some verbal differences, as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged. . . .
> 'Probable cause, in cases of this kind (malicious prosecution), has been properly defined as the existence of such facts and

11

> circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution.'

Cook v. Lanier, 267 N.C. 166, 170 (1966) (citations omitted).

The undersigned is not persuaded that it is appropriate for the Court at this stage of the pleadings to weigh whether there was "enough evidence 'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Document . 17, p.17 (quoting Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).  Rather, the undersigned surmises that Plaintiff seeks to proceed with discovery in this matter to determine what Defendants knew, when they knew it, and how their knowledge and evidence may have informed the arrest, detention, and/or conviction of Massey.

The undersigned also notes that the principal cases cited by Esposito in his argument regarding probable cause involve review of decisions on this issue at summary judgment, or even following a jury verdict.  (Document No. 17, pp.15-19);  see also, Washington;  Wilkes;  Miller v. Prince George's County, 475 F.3d 621 (4th Cir. 2007);  Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir. 1991);  and Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999).

Another case cited by Esposito states that "[w]hether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court."  Best v. Duke University, 337 N.C. 742, 750 (1994).  Unlike Best, it does not appear that the facts relating to probable cause are "admitted and established" here.  Id.  Rather, at the crux of the instant dispute is the question of what exactly Pride stated to Esposito, and what impact Esposito's report of Pride's statement had on the rest of the investigation and prosecution.  As such, the undersigned is persuaded that a finding on whether, or when, probable cause was established in this case is an issue the parties should be allowed to pursue

12

in discovery.

The undersigned does not find that the facts in the pleadings, construed in the light most favorable to Plaintiff, require dismissal of Counts II, III, or V at this stage of the litigation.

### 3. Due Process

Defendant Esposito also contends that Count I of the Complaint fails. (Document No. 17, pp.20-24). Specifically, Esposito argues that "as with his claim for arrest without probable cause, the Plaintiff must show that the fabrication was the cause of conviction such that, in its absence, the evidence would have been insufficient to convict." (Document No. 17, p.21).

Plaintiff asserts that Esposito's argument misstates the law with regard to due process claims based on fabricated evidence and that Esposito asks this Court to play the role of jury in resolving factual disputes before any discovery is conducted with regard to those facts. (Document No. 30, pp.12-13) (citing Washington v. Wilmore). Plaintiff notes Washington's holding regarding the causation prong that the "proper inquiry, however is whether [Plaintiff's] conviction was a reasonably foreseeable result of [Defendant's] initial act of fabrication – the police report." (Document no. 30, p.14) (citing Washington, 407 F.3d at 283); see also, Hovatter v. Widdowson, 2006 WL 890713 at *4 (D.Md. March 29, 2006)

Regardless of the standard, the undersigned is not convinced that it is appropriate at this stage to determine whether or not the alleged fabrication was "the cause" of conviction or a reasonably foreseeable result of it. There is no dispute that Plaintiff alleges that he was deprived of his Fourteenth Amendment rights and wrongfully convicted based on Defendants' alleged acts, including fabrication. (Document No. 1, p.9). Moreover, accepting his allegations as true, the undersigned is satisfied that Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 196.

13

As with his probable cause argument, Esposito again relies principally on cases resolved at summary judgment to support his argument. (Document No. 17, pp.20-24); see Washington; Hovatter; Ricciuti v. New York Transit Authority, 124 F.3d 123 (2nd Cir. 1996); and Richardson v. City of New York, 2006 WL 2792768 (E.D.N.Y. Sept. 27, 2006). In Zahrey, the Second Circuit reversed a dismissal of claims by the district court and concluded "that the allegations of the complaint suffice to indicate that a qualified immunity defense may not be sustained without further development of the facts." Zahrey, 221 F.3d 344.

Also like the probable cause argument, the undersigned is persuaded by Plaintiff's arguments that he should at least be allowed to conduct discovery on the issue of causation.

**4. Other Claims**

In his final argument, Esposito appears to assert that Counts IV and/or V fail because the "Court's jurisdiction over the claim for conspiracy under North Carolina law is wholly dependent upon the existence of valid federal claims" and that those federal conspiracy claims "fail given the lack of materiality of the claimed fabrication." (Document No. 17, p.24). Esposito contends that because Plaintiff's previous claims fail, the Court should dismiss these claims or decline to exercise pendent jurisdiction and dismiss without prejudice.

Because the undersigned will not recommend that Esposito be granted judgment on his federal claims, his request to dismiss any claims dependent on those federal claims should also be denied. Plaintiff's allegations support a plausible claim of conspiracy, and the undersigned finds that Plaintiff should be allowed to conduct discovery on that issue as well.

**C. Officer JJ. Ojaniit**

Defendant Ojaniit also seeks a judgment on the pleadings and his arguments are very similar to those of Esposito's. (Document Nos. 18-19). As with Esposito, the undersigned will recommend

14

that Ojaniit's motion be denied.

The legal arguments and analysis involving these first two Defendants are almost identical, and the undersigned will incorporate the analysis above instead of re-stating it here. However, the Ojaniit and Esposito cases are at least distinguishable on the facts alleged against them.

The key allegations against Ojaniit include the following:

> 20. On the same day, May 23, 1998, Officer Ojaniit invited Ms. Wood to come down to the police station to view a photo line-up of possible suspects. Ms. Wood was shown a six-photograph line-up that included a photo of Shawn Massey. Ms. Wood selected the photo of Mr. Massey as "looking the most like" her assailant, but told Officer Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard. She did not make a positive identification of Mr. Massey.
>
> 21. Officer Ojaniit wrote a report that stated that claimed that Ms. Wood had told him that "one of the subjects looked liked the suspect." What Ms. Wood in fact told Officer Ojaniit was that the photo of Mr. Massey looked "the most like" the suspect of the photos in the lineup. The omission of the words "the most like" from Officer Ojaniit's report made the written report of the identification false and misleading.

(Document No. 1, p.5).

As noted by Ojaniit, these allegations are somewhat inconsistent with exhibits to his Answer (Document No. 14). First, a copy of the photo line-up shown to Wood has a notation that appears to say "said this looks the most like him except no braids." (Document No. 14-5). Second, Ojaniit's report of Wood's statement specifically provides that she "looked at the photos and told the officer that one of the subjects looked like the suspect except that the suspect had longer hair with braids and he did not have a beard." (Document No. 14-6). Plaintiff's allegations also contend that Ojaniit initially interviewed Wood shortly after the crime and that he returned the following day with Esposito to locate possible witnesses. (Document No. 1, p.4).

15

The undersigned finds that the facts asserted against Ojaniit present a closer call than those against Esposito. For Ojaniit, it is less clear that the allegations are sufficient to support a constitutional violation. However, applying the appropriate standard of review, the undersigned finds that the Complaint alleges enough to keep Ojaniit in this case. At bottom, Plaintiff alleges that Ojaniit also committed a fabrication. While the difference in the semantics of "looked like" and "looks the most like" may seem minor, in the context of the lawsuit and all the allegations, the undersigned concludes that this matter and this Defendant are properly subject to further discovery.

**D. Officer Thomas G. Ledford**

In stark contrast to the claims against Esposito and Ojaniit, there are no specific allegations of wrongdoing by Ledford. (Document No. 1). In fact, the only mentions of Ledford's involvement are the following:

> 7. Defendant Tom G. Ledford is an individual who was an officer with the Charlotte-Mecklenburg Police Department and, upon information and belief, resided in North Carolina at all times pertinent to this Complaint.
>
> 22. Several days later, on May 26, 1998, Officer Ledford showed this same photo line-up to Ms. Savall, who stated that the photo of Mr. Massey "looks like the person who spoke to me" on the morning of May 22, 1998 and "I believe he is the same person."

(Document No. 1, pp.3, 5). These allegations simply do not support a finding that Ledford violated Plaintiff's constitutional rights or committed any other wrongdoing. They really don't even suggest that Ledford was more than minimally involved in any aspect of the case.

As such, the undersigned finds that Plaintiff's Complaint fails to state a plausible claim against Ledford, and will therefore, recommend that his motion for judgment on the pleadings (Document No. 20) be granted.

16

### E. Conclusion

Based on the foregoing, the undersigned concludes that Defendants Esposito and Ojaniit's motions should be denied. Simply put, Plaintiff has stated plausible allegations of constitutional violations against these two Defendants and applying the proper standard of review it is premature to grant their requests for judgment. However, the undersigned finds the Complaint completely devoid of any factual allegations that would support claims of wrongdoing against Ledford, and therefore, his motion should be granted. The undersigned expresses no opinion as to whether Ledford's motion would be granted if Plaintiff's Complaint had included the additional factual allegations Plaintiff presented at the hearing on August 14, 2012.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Defendant Officer Gerald J. Esposito's Motion For Judgment On The Pleadings" (Document No. 16) be **DENIED**; "Defendant Officer J.J. Ojaniit's Motion For Judgment On The Pleadings" (Document No. 18) be **DENIED**; and "Defendant Ledford's Motion For Judgment On The Pleadings ..." (Document No. 20) be **GRANTED.**

### V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed **within fourteen (14) days** after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure

to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

Any objections to this Memorandum And Recommendation shall be filed on or before **September 4, 2012**.

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: August 17, 2012

David C. Keesler
United States Magistrate Judge