IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 3:11-CV-477

| | |
|---|---|
| Shawn Massey,<br><br>   Plaintiff,<br><br>vs.<br><br>Charlotte-Mecklenburg Police Officer J.J. Ojaniit; Charlotte Mecklenburg Police Officer Gerald J. Esposito; Charlotte-Mecklenburg Police Officer Tom G. Ledford; and Charlotte-Mecklenburg Police Officers John and Jane Does ##1-10, in their individual capacities,<br><br>   Defendants. | **OBJECTIONS TO MEMORANDUM AND RECOMMENDATION (28 U.S.C.§ 636(b)(1)(c), Fed.R.Civ.P. 72 (b)(2)-(3) and Local Civil Rule 72.1(C))** |

## DEFENDANT OFFICER J.J. OJANIIT'S OBJECTIONS TO MEMORANDUM AND RECOMMENDATION DENYING OFFICER OJANIIT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, Officer J.J. Ojaniit, through his undersigned attorney, pursuant to 28 U.S.C. §636(b)(1)(c), Fed.R.Civ.P. 72(b)(2)-(3), and Local Civil Rule 72.1(C)), files herewith his Objections to the Memorandum and Recommendation (**Doc. No. 44**) of United States Magistrate Judge Keesler (the "Recommendation"). Specifically, this Defendant objects to the Magistrate Judge's recommendation that Officer Ojaniit's Motion for Judgment on the Pleadings be denied because the Recommendation misapplied the standard for granting a Motion for Judgment on the Pleadings by accepting as true allegations in the Plaintiff's Complaint that are contradicted by documents properly before the Court as exhibits to the Defendant's Answer. (**Doc. No. 14**).

If the documents attached to Officer Ojaniit's Answer are taken into consideration, the only allegation of improper conduct by Officer Ojaniit is refuted and thus all claims against him should be dismissed. In addition, the documents illustrate that an additional ground exists for dismissing Counts I, IV and V of the Complaint against this Defendant. In particular, those counts are based entirely upon the interview and statement of April Pride. Because Officer Ojaniit had no involvement in the interview or statement- a fact which is revealed in the Complaint itself and confirmed by the documents attached to Officer Ojaniit's Answer- those claims should be dismissed against Officer Ojannit. (**Doc. No.1 and Doc. No. 14**).

## BACKGROUND FACTS

The full factual background of this case is set forth in Officer Ojaniit's Memorandum in Support of Motion for Judgment on the Pleadings. (**Doc. No. 19**). For purposes of these Objections, however, the key considerations are: (1) Officer J.J. Ojaniit's involvement in the investigation of the crime at issue as reflected by the documents attached to his Answer (**Doc. No. 14**); and (2) the allegations contained in the Complaint. (**Doc. No. 1**).

In May of 1998, when this crime occurred, Officer Ojaniit was a patrol officer who had been with the Charlotte Mecklenburg Police Department for around seven years. (**Doc. No. 14, Ex. 9 at p. 190**).

His involvement in the case of Mr. Massey can be summarized as follows:

(1) He responded to the scene of the crime and took a statement from Mrs. Wood. (**Doc. No. 14, Ex. 9 at pp. 190-193**). In her statement, Mrs. Wood described her attacker as a young black male who was approximately 5'9" tall and was wearing a red jersey with a "Hurricanes" symbol and blue jean shorts. (**Doc. No. 1 ¶¶15-16; Doc. No. 14, Ex. 3 at p. 2); Doc. No. 14, Ex. 9 at p. 41**). She also told police that her attacker had "(4) small braids on the

back of his head." (**Doc. No. 1 at ¶16; Doc. No. 3 at p. 2**). Mrs. Wood signed the statement after Ojaniit transcribed it for her. (**Doc. No. 14, Ex. 3 at p. 2**).

<u>Plaintiff has not made any allegations of any wrongdoing with regards to this interview or statement</u>. (**Doc. No. 1, ¶ 15**).

(2) The following day, Officer Ojaniit accompanied Officer Esposito back to the apartment complex where they conducted interviews. They interviewed the apartment manager, Theresa Savall, and Officer Esposito interviewed April Pride, a resident of the complex with whom Mr. Massey had spent the night on the night of the attack. (**Doc. No. 14, Ex. 9 at pp. 90-94**).

<u>Plaintiff has not made any allegations of any wrongdoing with regards to the interview of Ms. Savall. Plaintiff's main argument centers around the statement taken from April Pride as he alleges it contains a fabrication. Officer Ojaniit did not interview April Pride nor did he take her statement. Plaintiff does not allege that Officer Ojaniit was involved in the April Pride interview. Further, the documents before the Court reflect his lack of involvement.</u> (**Doc. No. 1, ¶¶ 17-19; Doc. No. 14, Ex. 4.; Doc. No. 14, Ex. 10 at pp. 110-111**).

(3) Ojaniit's next involvement in this matter was on May 23, 1998 when Mrs. Wood came to the station to view a photo array. (**Doc. No. 14, Ex. 9 at p. 198**). Ojaniit did not put the array together; instead, he contacted an investigator who generated the line up for him. (**Doc. No. 14, Ex. 9 at p. 198-199**). When shown the photo array, Mrs. Wood selected Shawn Massey, telling investigators that his mug shot "looks most like the suspect except the suspect had longer hair with braids and he did not have a beard." (**Doc. No. 1, ¶20; Doc. No. 14, Ex. 9 at pp. 58, 64, Doc. No. 14, Ex. 3**). It is undisputed that Shawn Massey's mugshot showed no braids and

did not show the back of his head.[1] Ojaniit circled the subject that Mrs. Wood identified and wrote down what she had said on the array. (**Doc. No. 14, Ex. 9 at p. 201**). Ojaniit then completed a supplement report about showing Mrs. Wood the photo array. (**Doc. No. 14, Ex. 9 at p. 202, Doc. No. 14, Ex. 6**). Officer Ojaniit had no further contact with Mrs. Woods. (**Doc. No. 14, Ex. 9 at pp. 203-204**).

In the Plaintiff's Complaint, there are two paragraphs that relate to this line-up and there is only one allegation of "wrongdoing" (Paragraph 21) against Officer Ojaniit:

- Paragraph 20- "On the same day, May 23, 1998, Officer Ojaniit invited Ms. Wood to come down to the police station to view a photo line-up of possible suspects. Ms. Wood was shown a six-photograph line-up that included a photo of Shawn Massey. Ms. Wood selected the photo of Ms. Massey as 'looking the most like' her assailant, but told Officer Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard. She did not make a positive identification of Mr. Massey."

- Paragraph 21- "Officer Ojaniit wrote a report that stated that claimed that Ms. Wood had told him that 'one of the subjects looked like the suspect.' What Ms. Wood in fact told Officer Ojaniit was that the photo of Mr. Massey looked 'the most like' the suspect of the photos in the line-up. The omission of the words 'the most like' from Officer Ojaniit's report made the written report of the identification false and misleading."

<u>The referenced report is attached to the Defendant's Answer as Exhibit 6. The report specifically states "I looked at the photos and told the officer that one of the subjects looked like the suspect **except that the suspect had longer hair with braids and he did not have a beard**</u>." **Doc. 14, Ex. 6**. (Emphasis added.). The bolded "except" phrase was omitted from the

---

[1] The mug shot showed Mr. Massey with a light beard, which he did not have in May 1998.

Plaintiff's Complaint. Further, the Plaintiff fails to disclose that the photo array itself (which is also attached to the Defendant's Answer and thus is properly before this Court) has the following notation on it: "said this looks most like him except no braids." (**Doc. No. 14, Ex. 5**).

*The Prosecution of Shawn Massey*

Shawn Massey's trial began on September 24, 1999. His attorney filed a Motion to Suppress Mrs. Wood's identification of him, and to bar her from identifying him in court. The trial court held a hearing on the Motion, and took testimony from a number of witnesses, all but one of whom were called by defense counsel.[2] The thrust of the testimony offered by defense counsel was that Shawn Massey never wore braids in his hair, that his hair was never long enough to wear braids, and that he was at work at the time the crime occurred on May 22, 1998. Consequently, counsel argued the out of court identification conducted by Officer Ojaniit had been constitutionally defective and that any identification of Shawn Massey by Mrs. Wood was inherently unreliable. The trial court denied the Motion and entered extensive findings of fact and conclusions of law permitting the State to introduce both Mrs. Wood's out of court identification of Shawn Massey and to allow her to identify him in court during her testimony. (**Doc. No. 14, Ex. 9 at pp. 175-86**).

The State's case against Shawn Massey was based on his identification by Mrs. Wood as being her attacker on two separate occasions and his identification by Theresa Savall as being the man who accosted her, thus placing him within the apartment complex at the time of the crime. (**Doc. No. 1, ¶¶24-25**). The State also called April Pride. Ms. Pride testified that Shawn Massey was the person that both Mrs. Wood and Theresa Savall had chosen in the photographic array, and identified Shawn Massey herself. (**Doc. No. 14, Ex. 9 at pp. 88-89, 94**). She testified that

---

[2] Due to the unavailability of witnesses, the Motion to Suppress was heard in the middle of the State's case, with the consent of both the State and the Defendant.

he spent the night at her apartment and that he was still at her apartment in the complex at 6:45am on the morning of the attack, when she went to work. (**Doc. No. 14, Ex. 9 at p. 91**). Ms. Pride and Shawn Massey had been friends for more than a decade, and Ms. Pride testified that he came by her apartment frequently. (**Doc. 1 ¶27; Doc. No. 14, Ex. 9 at pp. 89, 94**).

Mrs. Wood was questioned at trial about the photo array that she was shown by Officer Ojaniit. At trial, she once again selected Mr. Massey as her assailant from the array and said she recognized him "from the robbery." (**Doc. No. 14, Ex. 9 at p. 53**). When questioned as to what features in the picture led her to select Massey, she said "his facial." (**Doc. No. 14, Ex. 9 at p. 55**). In addition to making an in-court identification of Mr. Massey, Mrs. Wood also indicated that she recognized Massey's voice from the robbery. (**Doc. No. 14, Ex. 9 at p. 57**). Wood also acknowledged that Ojaniit circled the person she identified in her presence and wrote on the array what she told him in her presence. (**Doc. No. 14, Ex. 9 at pp. 59, 65**).

The Jury deliberated for approximately 2 hours and 35 minutes over the course of two days before finding Shawn Massey guilty on all counts. (**Doc. No. 14, Ex. 9 at pp. 310-11**). He was sentenced to between 103 and 113 months. (**Doc. No. 1, ¶31**).

Shawn Massey appealed his convictions, assigning two errors: (1) the failure to suppress his identification by Mrs. Wood, and (2) the evidence was insufficient to identify him as the perpetrator. On February 21, 2001, the Court of Appeals, in an opinion authored by Judge James Wynn, found no error. (**Doc. No. 19-1**). In that opinion, the Court held that the identification by Mrs. Wood was reliable, was based on a photographic lineup that was "fair," and that there was no evidence that Mrs. Wood was induced to select Shawn Massey's photograph from the lineup. **Opinion p. 4.** The Court further found that the evidence was sufficient to submit to the Jury.

### *The Postconviction Proceedings that Released Shawn Massey*

The events that lead to Shawn Massey's release on May 6, 2010, are set forth in a Motion filed by the District Attorney. (**Doc. No. 14, Ex. 1**). That Motion indicated that, after Massey's conviction was affirmed on appeal, the Duke Law School Wrongful Convictions Clinic concluded that he was innocent and raised two issues: (1) "Massey's hair was not as described by the victim Wood," and (2) "Wood expressed doubt as to Massey being the one who committed the crimes to the Assistant District Attorney trying the case." (**Doc. No. 14, Ex. 1 at ¶2**). The Duke University Clinic presented to the District Attorney a number of additional pictures of Massey that were in the possession of the Sheriff's Department (apparently as mug shots) from 1991, 1995, 1996 and 1998 which showed Shawn Massey with "close cropped hair." As is customary with such photographs, they did "not show side views or the back of the head." (**Doc. No. 14, Ex. 1 at ¶4**). These additional photographs may have been enlargements of photos contained in the District Attorney's files and it was not clear that they were produced to defense counsel for trial. (**Doc. No. 14, Ex. 1, ¶5**). Additionally, the Assistant District Attorney indicated that he did not reveal his conversation with Mrs. Wood before the preliminary hearing in which she expressed doubt about her identification to defense counsel. (**Doc. No. 14, Ex. 1,¶6**).

The Motion indicated that, upon receiving this information, Shawn Massey agreed to and was given a polygraph examination. He tested deceptive on two issues: (1) his involvement in the crime and (2) his hair style at the time of the crime. (**Doc. No. 14, Ex. 1, ¶5**). In addition, after receiving this additional information, Mrs. Wood was reinterviewed by investigators on March 16, 2010. She again identified Shawn Massey as the man who robbed her. (**Doc. No. 14, Ex. 1, ¶5**).

It was the District Attorney's assessment that the potential failure to produce other photographs of Shawn Massey and the failure to disclose the Assistant District Attorney's conversation with Mrs. Wood, violated his Office's policies on discovery and that this additional evidence could create "reasonable doubt about whether [Shawn Massey] committed the offense." The District Attorney nonetheless believed that there was still "substantial evidence placing [Shawn Massey] in the area and identifying him as the perpetrator." However, in light of these two additional pieces of evidence, he concluded that a sufficient reasonable doubt could exist on retrial such that "it cannot be said with certainty that the jury would have reached the same conclusion, nor can it be assured that the jury would have rendered the same verdict." Thus, "out of an abundance of caution" he requested that the Superior Court set aside the jury verdicts so that he could then file a voluntary dismissal. (**Doc. No. 14, Ex. 1**)**.**

### *This Lawsuit*

Shawn Massey has brought five claims in this action. In Count I, he alleges a due process violation based upon fabricated evidence and false reporting with regards to the April Pride interview**. (Doc. No. 1, ¶ 37**). In Count IV, he alleges impending and hindering public and legal justice, false imprisonment and civil conspiracy based upon the April Pride interview. (**Doc. No. 1, ¶ 56**). In Count V, he alleges malicious prosecution and conspiracy based upon the April Pride interview. (**Doc. No. 1, ¶ 60**). Count II is for malicious prosecution and Count III is for conspiracy. Plaintiff cites the photographic line-up in Count II and the more general notion of making false reports to prosecutors in support of Count III. (**Doc. No. 1**)**.**

## STANDARD

This Court has *de novo* review over the portions of the Recommendation to which Officer Ojaniit objects, and can "reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(c).

## ARGUMENT

A. <u>The Recommendation is in error because it misapplies the standard for granting a Motion for Judgment on the Pleadings by accepting as true allegations in the Plaintiff's Complaint that are contradicted by documents properly before the Court as exhibits to the Defendant's Answer</u>.

Allegations in a complaint that are inconsistent with the terms of a properly written document, or state mere legal conclusions, need not be accepted as true. *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006). In fact, such allegations may be disregarded. *See Kimble v. U.S. Bank National Association, et al.*, 2009 WL 3152034 (W.D.N.C.) (recommending that defendants' motion to dismiss be granted where plaintiffs' sole allegation was "flatly contradicted" by the documents relevant to the transaction in dispute).

Furthermore, while the Court must view the pleadings before it in the light most favorable to the plaintiff when considering a Motion for Judgment on the Pleadings, such Motion should nevertheless be granted when the allegations of the Complaint are directly contradicted by documentary evidence made a part of the pleadings. *Muir v. Winston-Salem State University*, No. 1: 11-cv-282, 2012 WL 683359, *4 (M.D.N.C. March 2, 2012) (When considering either a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the court "need not accept as true any allegations in the complaint … that are directly contradicted by the exhibits.").

1. <u>There was no impropriety or misrepresentation by Officer Ojaniit regarding the photo line-up as illustrated by the documents relating to the line-up. Because the only allegation of wrongdoing by Officer Ojaniit relates to this line-up and it is refuted by the documents before this Court, the charges against him should be dismissed.</u>

As explained above, the only action of Officer Ojannit about which the Plaintiff complains relates to the photographic line up. Plaintiff complains that Officer Ojaniit utilized the phrase "looked like" as opposed to "looked the most like" and this resulted in Massey's conviction, his arrest and his prosecution without probable cause. However, this statement is proven untrue when the Court considers the documents attached to the Defendant's Answer.

The photo array itself has the following notation on it: "said this looks <u>most like him except no braids</u>." (**Doc. No. 14, Ex. 5**). " Secondly, the allegedly "false and misleading report" specifically states "I looked at the photos and told the officer that one of the subjects looked like the suspect <u>except that the suspect had longer hair with braids and he did not have a beard</u>." (**Doc. 14, Ex. 6**). (emphasis added). Thus, the alleged deception caused by Ojaniit due to his use of "looks like" versus "looks the most like" is a fiction.

While the Memorandum and Recommendation recognizes that the difference in semantics "may seem minor," it then goes on to state that such a difference could be relevant in the context of the lawsuit and thus is a grounds for not granting Officer Ojaniit's Motion. (**Doc. No. 44, p. 16**). However, the difference does not even exist when the documents are considered in their entirety. Such consideration is appropriate. *See Miller v. Whalen*, 2009 WL 2436592 (N.D.Ill.) (considering police report as a whole when ruling upon allegation that a police officer made a false statement and finding it was not false when considered in its entirety). Thus, it should not serve as a basis for denying the Motion for Judgment on the Pleadings.

      2.      <u>The Recommendation is contrary to North Carolina law because it fails to take into consideration that Counts I, IV and V of the Complaint are based entirely upon the interview and statement of April Pride.  Because Officer Ojaniit had no involvement in the interview or the statement- a fact which is revealed in the Complaint itself and confirmed by the documents attached to Officer Ojaniit's Answer- those claims should be dismissed against Officer Ojaniit.</u>

Officer Ojaniit did not interview April Pride nor did he take her statement.  Plaintiff does not allege that Officer Ojaniit was involved in the April Pride interview.  Further, the documents before the Court reflect his lack of involvement.  In particular, when you compare the summaries of the interview of Ms. Savall versus Ms. Thompson, it is apparent that Officer Esposito conducted the April Pride interview on his own while Officer Ojaniit participated in the interview of Ms. Savall.  The trial testimony likewise supports this fact.  (**Doc. No. 1, ¶¶ 17-19; Doc. No. 14, Ex. 4.; Doc. No. 14, Ex. 10 at pp. 110-111**).  Because the Complaint itself as well as the documents before the Court illustrate that Officer Ojaniit had no involvement in the acts complained of in Counts I, IV and V, those claims should be dismissed against him.

## CONCLUSION

For the reasons set forth above, the Defendant requests that the Plaintiff's claims be dismissed and that his Motion for Judgment on the Pleadings be granted.

This 31st day of August 2012.

                                                  /s/ Lori R. Keeton
                                                Lori R. Keeton
                                                N.C. State Bar #25813
                                                **Parker Poe Adams & Bernstein LLP**
                                                Three Wells Fargo Center
                                                401 South Tryon Street, Suite 3000
                                                Charlotte, NC  28202
                                                Telephone: (704) 372-9000
                                                Facsimile:  (704) 334-4706
                                                lorikeeton@parkerpoe.com

                                                ***Attorney for Defendant Officer J.J. Ojaniit***

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2012, a copy of the foregoing was filed electronically. Notice of filing will be sent to all parties by operation of the Court's electronic filing system, including:

>David S. Rudolf, Esq.
>Rudolf Widenhouse & Fialko
>2225 East Worthington Avenue, Suite 200
>Charlotte, NC  28203
>
>Daniel E. Peterson, Esq.
>Assistant City Attorney
>Office of the City Attorney
>600 E. Fourth Street
>Charlotte, NC  28202-2841
>
>James P. Cooney, III, Esq.
>Womble Carlyle Sandridge & Rice, LLC
>One Wachovia Center
>301 S. College St., Suite 3500
>Charlotte, NC  28202-6037

>/s/ Lori R. Keeton
>Lori R. Keeton
>N.C. State Bar #25813
>**Parker Poe Adams & Bernstein LLP**
>Three Wells Fargo Center
>401 South Tryon Street, Suite 3000
>Charlotte, NC  28202
>Telephone: (704) 372-9000
>Facsimile: (704) 334-4706
>lorikeeton@parkerpoe.com