IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CASE NO. 3:11-CV-477

_____
                                        )
SHAWN MASSEY,                           )
                                        )
            *Plaintiff*,                )
                                        )
      vs.                               )
                                        )
CHARLOTTE-MECKLENBURG POLICE            )
OFFICER J.J. OJANIIT; CHARLOTTE-        )
MECKLENBURG POLICE OFFICER              )
GERALD J. ESPOSITO; CHARLOTTE-          )
MECKLENBURG POLICE OFFICER              )
TOM G. LEDFORD; and CHARLOTTE-          )
MECKLENBURG POLICE OFFICERS             )
JOHN and JANE DOES ##1-10, IN THEIR     )
INDIVIDUAL CAPACITIES,                  )
                                        )
            *Defendants*.               )
_____)

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS'
OBJECTIONS TO
MEMORANDUM AND RECOMMENDATION**


On August 17, 2012, in a carefully considered eighteen page Memorandum and

Recommendation, the Hon. David C. Keesler denied Defendant J.J. Ojaniit's and Defendant

Gerald J. Esposito's Motions for Judgment on the Pleadings.[1] Magistrate Judge Keesler's

analysis of the issues is correct, and should be adopted by this Court.

---
[1]       Magistrate Judge Keesler recommended that Defendant Thomas Ledford's Motion for Judgment
on the Pleadings be granted. Plaintiff does not appeal that recommendation.

## BACKGROUND

On May 22, 1998, Samantha Wood was sure about one thing concerning the man who had just robbed her of $60.00 at gunpoint: the man **"had his hair pulled back from his face and (4) small braids on the back of his head."** Complaint, ¶16. Thus, if on May 22, 1998 Shawn Massey did *not* have hair long enough to be "pulled back from his face," and did *not* have "small braids on the back of his head," **he *could not* have been the person who committed this crime.** Put another way, if Shawn Massey's hair was "cut short" with no braids on the day Samantha Wood was robbed, as *everyone* who knew Shawn on that date confirmed, there was no probable cause to arrest and prosecute him for the crime. Indeed, **if he had no braids on that date, this fact alone exonerated him of any involvement.** That is the central and compelling fact in this case, one that Defendants cannot and do not dispute.

It is therefore not surprising that this was the major focus of Mr. Massey's trial. Ms. Wood testified at the trial that her assailant had "braids in his hair, with five hanging down." Complaint, ¶ 24; Defendant Esposito's Exhibit 9 (hereinafter "Exhibit 9"), p. 40. Mr. Massey called six witnesses who all testified that he had never worn his hair long or in braids. Complaint, ¶29; Exhibit 9, pp. 215-252 and 279-284. The *only evidence* to the contrary was the report prepared by Defendant Esposito of his May 23, 1998 conversation with April Pride, in whose apartment Shawn Massey had stayed on the night of May 21, 1998. That report, in which Esposito falsely claimed that Ms. Pride told him "Mr. Massey wears his hair pulled back with 4 or 5 braids," was used to impeach Ms. Pride's trial testimony that on May 22, 1998, Shawn's hair was short with no braids. Complaint ¶28; Exhibit 9, pp. 97-98. Esposito then testified to the contents of this false report, which was introduced into evidence. Exhibit 9, pp. 108-110.

In short, Esposito's fabrication was material to any determination that it was Shawn Massey, wearing braids, who robbed Samantha Wood. *All* of the other evidence in the case established that Mr. Massey did not have braids on May 22, 1998 (or any other time), and therefore could not have been Ms. Wood's assailant.

Nevertheless, as they did in their motions, Defendants continue to argue that Mr. Massey really is guilty of the crime (despite the fact that his conviction was vacated on motion of the District Attorney), that Esposito's fabrication (which must at this stage be assumed) really wasn't material, and that Plaintiff should be denied the opportunity to conduct discovery to find out what Defendants' learned about Shawn Massey, and particularly about the way he wore his hair, during the investigation that was conducted between May 23, 1998, when Esposito wrote his false report, and July 7, 1998, when warrants for Shawn Massey's arrest were finally authorized by the District Attorney's office and obtained by Defendants.[2]

And, as they did before Magistrate Judge Keesler, Defendants' focus not on Plaintiff's Complaint, or even on undisputed facts from the documents attached as exhibits to their Answers. Rather they attach the entire trial transcript, which contains witness testimony that was disputed during the trial, and then focus on the portions of the witness testimony most favorable to *their* arguments, drawing speculative inferences from that testimony in the light most favorable *to Defendants*.[3]

---

[2]    In Mecklenburg County, prior to obtaining warrants for such an offense, the investigators were required to present their evidence to the District Attorney's office in what was called a "papering" conference. Only if the Assistant District Attorney, based upon what the investigators told him, authorized the initiation of criminal charges against a suspect was a warrant then obtained.

[3]    For example, Defendant Esposito argues that Shawn Massey knew about the acoustics in Ms. Wood's apartment, and about Ms. Wood's daily schedule, because April Pride testified at trial that he came by Ms. Pride's apartment frequently. Esposito Objections, p. 21. But there is no evidence in the record that Shawn Massey actually knew anything about the acoustics in Ms. Wood's apartment or Ms. Wood's schedule. Defendant's argument is based on speculative inferences considered in the light most favorable to Defendant Esposito.

3

Plaintiff submits that in doing so, Defendants attempt to apply the rule governing material that may properly be considered by a court on a motion for judgment on the pleadings well beyond the cases they rely upon, and the rationale for the rule itself. Normally, the rule allows a court to consider a "written instrument" attached to an answer, such as a contract or a deed, to contradict an allegation in the complaint that is directly inconsistent with a fact *undisputedly established* by the written instrument, such as the date the contract was executed.[4] Instead of such a written instrument, Defendants attached as an exhibit to their Answer a complete trial transcript, then rely on selected portions of the disputed testimony, and ignore the factual allegations properly pled in the Complaint.

Defendants also ignore the fact that, assuming disputed testimony in a trial transcript may properly be considered in ruling on a motion for judgment on the pleadings, the inferences from such testimony must be considered in the light most favorable to Plaintiff. Plaintiff will therefore summarize the facts pled in the Complaint, *as supported by the trial transcript*,[5] in the light most favorable to Plaintiff.

## SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

A. <u>Information Obtained From Witnesses</u>

Defendant Ojaniit interviewed Samantha Wood at her home shortly after she and her children were kidnapped and robbed at gunpoint on May 22, 1998. Complaint, ¶15. Despite the fact that she had spent a number of minutes with the perpetrator,[6] and that his face was

---

[4]    See Rule 10(c), Federal Rules of Civil Procedure. See also cases discussed in Plaintiff's Memorandum of Law in Support of Motion to Strike Defendants' Exhibits, Document Number 29.

[5]    In light of Defendants' extensive use of selected portions of the trial transcript in their memoranda and objections, Plaintiff will also refer to portions of the same transcript, in addition to the factual allegations set forth in the Complaint.

[6]    Ms. Wood "guessed" it was thirty minutes. Exhibit 9, p. 49.

uncovered during this time, Ms. Wood was able to provide only a few relevant details of her assailant. She told Defendant Ojanitt that he was 5'9" tall and weighed 180-185 pounds. Complaint, ¶16. Thus, the man she described was not tall and thin.[7]

In addition, she was able to describe the man's clothing as a "red *shirt* and blue jean *shorts*." Complaint, ¶16. *He was not wearing any covering on his head*, which allowed Ms. Wood to describe the single most distinctive feature of her assailant: that he had "his hair pulled back from his face and (4) small braids on the back of his head." *Id.* The braids went all the way through his hair, and were not only at the back of his head. Exhibit 9, p. 41. She was not able to describe the man's facial features, whether he was light-skinned or dark-skinned, whether or not he had any facial hair, or the color of his eyes. Exhibit 9, p. 64. No one was apprehended on that day.

The next day, Defendant Esposito accompanied Defendant Ojaniit back to the scene. They interviewed two witnesses, the apartment rental manager, Theresa Savall, and Shawn Massey's friend, April Pride. Complaint, ¶¶17-18. Although Ms. Savall described a man who had approached and asked her out the day before, *this man did not fit the description of the man who robbed Samantha Wood.* Specifically, Ms. Savall stated that this man was approximately 5'11" and weighed 165 pounds – taller and thinner than the man described by Ms. Wood. Complaint, ¶17.[8] He was *not* wearing shorts, but rather full-length jeans. *Id.*; Exhibit 9, p. 70. He was *not* wearing a red shirt, but rather an orange and white basketball jersey. *Id.* Most importantly, *he was wearing a ball cap*, *Id.*, and Ms. Savall did *not* see any braids hanging down.

---

[7]     Mr. Massey is 6' tall and thin. At the time of his arrest, he weighed approximately 160 pounds. At trial, Ms. Wood admitted that Mr. Massey appeared to be thinner than the man who robbed her. Exhibit 9, p. 56

[8]     At trial, Ms. Savall changed her estimation to 5 feet 8 ½ inches and 150-155 pounds. Exhibit 9, pp. 68-69.

See Esposito Exhibit 3. The man did not do anything threatening or intimidating, nor was he derogatory. Exhibit 9, p. 79. Ms. Savall told him to "take your young-self home," and he left. *Id.*

The only other person interviewed during the initial investigation was April Pride.[9] Ms. Pride, who had known Mr. Massey for years and was a close friend, told Esposito that Shawn had stayed in her apartment on the night of May 21, 1998. Complaint, ¶18. She did not tell Esposito that he wore his hair pulled back with four or five braids. Complaint, ¶19. This interview, which was actually a very brief casual conversation, lasted only a few minutes.

B.     The Photo Spreads

Based solely on the fact that Shawn Massey had stayed at April Pride's apartment on the night of May 21, 1998, Officer Ojanitt showed a photo spread containing Shawn Massey's picture to Samantha Wood on May 23, 1998. Contrary to Defendants' assertions, this identification procedure, which was not conducted in the double-blind manner now required by the Charlotte-Mecklenburg Police Department, *did **not** result in Ms. Wood identifying Shawn Massey as the person who robbed her*. She did not even indicate that she *thought* he was the person who robbed her. Rather, all that Ms. Wood could say was that **of the six people in the photo spread**, the picture of Mr. Massey "**looked most like**" that person. *But she immediately added that unlike Mr. Massey, her assailant had longer hair with braids.* She did not make a positive identification. Complaint ¶20.

---

[9] Because no discovery has been conducted, Plaintiff does not know the names of the other witnesses who were interviewed by Defendants during the investigation of this matter between May 23 (when the investigation began) and July 7, 1998 (when warrants for Mr. Massey's arrest were finally authorized by the District Attorneys' office), what any such witnesses told Defendants about Mr. Massey's appearance in May 1998, what other evidence regarding Mr. Massey's appearance Defendants discovered, or what information regarding his appearance on May 22, 1998 they provided to the District Attorney. There were, however, seven Sheriff's Department photos of Mr. Massey, *all with short hair and no braids*, found in the state's Massey file. Complaint ¶32. One of these photographs was taken on March 9, 1998, fewer than two months before Ms. Wood was assaulted. Viewed in the light most favorable to Plaintiff, a reasonable inference is that Defendants gathered these photos at some point between May 23, 1998 and July 7, 1998, when the investigation apparently ceased with the issuance of warrants.

Theresa Savall was shown the same photo spread by Defendant Ledford on May 26, 1998. She stated that the photo of Mr. Massey "looked like" the person who had spoken with her on May 22. The best she could do at that time was to say "I believe he is the same person." Complaint, ¶22. She subsequently explained that the person she talked to that day was considerably thinner than Mr. Massey appeared to be in the photo spread. Exhibit 9, p. 76. She described this person as being about 5'11", 165-170 lbs, and wearing a "basketball jersey which was orange and white, and pants similar to jeans." Defendant Ledford, Exhibit 7. She had never seen this person around the apartment complex before. *Id.*

C.     The Trial

The only witnesses called by the State with first hand information about the events of May 22, 1998 were Samantha Wood, Theresa Savall and April Pride.[10] Exhibit 9, pp. 36-101.

Ms. Savall testified only about her brief encounter with a man she identified at trial as Shawn Massey. Other than the fact that she identified him as being at the apartment complex on the morning Ms. Wood was robbed, *Ms. Savall's testimony did not provide even circumstantial evidence that Shawn Massey had any involvement in the robbery.* She did not testify that Mr. Massey had any braids on that day. She did not testify that he had any weapon. She did not testify that he asked her for any money, or threatened her. She did not testify that he made any incriminating statements. She did not even testify that he came from the direction of Samantha Wood's apartment. Nor was the person she identified as Mr. Massey dressed in the clothes that Ms. Wood described her attacker wearing. Ms. Savall's testimony was simply that Shawn

---

[10]         The only other witnesses called by the State were Defendant police officers, and a crime scene tech. Exhibit 9, pp. 102-127; 190-214.

Massey came up to her, told her she "looked good," asked if she would go out with him, and when she told him to leave her alone, he walked away. Exhibit 9, pp. 70-72; 78-80.[11]

April Pride testified only that she had known Shawn Massey for about ten years, that he stayed at her apartment at Emerald Bay, with her and her husband, on the night of May 21, 1998, and that Shawn and her husband were still at her apartment when she left for work between 6:30 and 6:45 on the morning of May 22, 1998. Exhibit 9, pp. 90-91.[12] Tellingly, **the prosecutor did not ask her any questions about how Shawn Massey's hair looked on that day, or about whether he had braids – either that day or ever.** Exhibit 9, pp. 87-93. In response to questions by defense counsel, however, Ms. Pride testified Shawn had always kept his hair very short, and never had any braids. Exhibit 9, pp. 94-95.[13]

In sum, this was a classic "one-witness identification" case – the kind that has led to so many false convictions and exonerations over the past decade. No physical evidence linked Shawn Massey to the crime, or indicated he had ever been inside Ms. Wood's apartment. Exhibit 9, pp. 206-207; 213. **The only evidence produced by the State that Shawn Massey was the person who robbed Samantha Wood was her in-court identification of him at trial.**

---

[11]  According to Defendant Ledford, this man came up to Ms. Savall and had this conversation with her *while the police were at Ms. Wood's apartment* (Ledford Exhibit 7), hardly the actions of someone who had just robbed Ms. Wood at gunpoint and fled the scene.

[12]  Contrary to the argument made by Defendant Esposito, Ms. Pride's testimony did not "undermine" evidence that Shawn Massey was at work at the time Ms. Wood was attacked, nor did it make it "impossible" for Mr. Massey to have been picked up by his employer at his home around 7 am. Esposito Objections, page 21. *Viewed in the light most favorable to Plaintiff*, Ms. Pride testified that she could have left the apartment that morning as early as 6:30 AM, Exhibit 9, p. 90, while Mr. Dorsey testified that he could have picked up Mr. Massey at his home as late as 6:55 am, "something like that," because "the concrete company was scheduled between 7 and 7:30." Exhibit 9, p. 224. There was no evidence that Shawn Massey could not have gotten to his home between 6:30 am and 6:55 am. The argument made by Defendant Esposito is based on a speculative inference taken in the light most favorable to Defendants.

[13]  The prosecutor then impeached Ms. Pride with the false statement written by Defendant Esposito. Complaint ¶28; Exhibit 9, pp. 97-98, and called Defendant Esposito to read the false statement to the jury, and to emphasize that what was in his report was what Ms. Wood had allegedly told him. Ex. 9, pp. 108-110.

Of course, Shawn was the only person sitting at defendant's table with his counsel, dressed in an orange jail jumpsuit, when the case was called for trial.[14] And Ms. Wood's previous identification had been equivocal at best: Mr. Massey's photo looked "the most like" the person who robbed her of the six photos, except in the photo he didn't have any braids. Complaint ¶20.

Ms. Wood reiterated at trial, as she had told Defendant Ojaniit just moments after the crime, that the person who attacked her had braids that ran through his hair (*i.e.*, cornrows), with five braids "hanging down" in the back. Complaint ¶24; Exhibit 9, pp. 40-41. She also testified that Shawn Massey's hair in court was shorter than the man who robbed her. Complaint ¶25.

Thus, at the time of his arrest, and at the time of trial, whether Shawn Massey had braids in his hair on May 22, 1998 was *the* critical issue. But everyone who knew Shawn Massey, from his grandmother and his sister, to his preacher and his employer, to a male friend and April Pride, all testified that Shawn Massey had *never* had any braids in his hair, and that he wore his hair very short, too short to even comb. Complaint ¶27 and 29; Exhibit 9, pp. 94-95; 215-253; 279-284.[15]

The *only* evidence that corroborated Ms. Wood's identification of Shawn Massey was the false report prepared by Defendant Esposito, and his testimony about that report. Specifically, Defendant Esposito testified that April Pride told him on May 23, 1998 that Mr. Massey "wears his hair pulled back with four to five braids." Complaint ¶¶19 and 28; Exhibit 9, pp. 108-110.

---

[14] Mr. Massey did not change into street clothes until after the denial of his lawyer's motion to withdraw. Exhibit 9, p. 20. Ms. Wood was present during this motion, and therefore observed Mr. Massey in the orange jumpsuit at Defendant's table. Exhibit 9, p. 57. Despite this, she told the prosecutor at that time that she had doubts about whether Mr. Massey was the person who robbed her. Complaint ¶33. She specifically told him *"I don't know if that's him or not."* Esposito Exhibit 1, ¶6.

[15] The witnesses' testimony is corroborated by the seven photographs of Shawn Massey in the state's file, photos taken between April 18, 1991, and March 9, 1998, that showed he wore his hair exactly as the witnesses testified. Complaint ¶32. These photos were never disclosed to defense counsel.

9

He further testified that he would not have written that in his report if Ms. Pride had not said it. Exhibit 9, p. 110.  Esposito's false report was read to the jury.  *Id*.

Thus, considering all of the allegations in the pleadings in the light most favorable to Plaintiff, as supported by testimony in the trial transcript, the jury had to have credited Esposito's false report about Mr. Massey's hair on the day of the robbery.  It is a reasonable inference that if the jury believed April Pride's testimony about Mr. Massey's hair on May 22, 1998, as corroborated by Brady Dorsey, Annie Massey, Bobby Ross, Reverend Linda Brown, and Roberta Massey, the jury (or at least one of them) would have concluded there was a reasonable doubt about whether Ms. Wood's identification was mistaken.  Put another way, if the jury had believed April Pride's testimony that Shawn Massey did not have braids on May 22, 1998, that alone would have exonerated him from any involvement in the robbery of Samantha Wood – committed by a black male with cornrows and four or five braids hanging down.  Taken in the light most favorable to Plaintiff, therefore, Esposito's fabrication, used to impeach this critical aspect of April Pride's testimony (and to thereby corroborate Ms. Wood's identification), was a linchpin of Shawn Massey's conviction; if Mr. Massey did not have braids running through his hair on May 22, 1998, he was not the person who assaulted Ms. Wood.

Despite this, Defendants argue that this Court should reject the Memorandum and Recommendation and find, as a matter of law, that Esposito's fabrication was not "material" and did not "cause" Shawn Massey to be arrested, prosecuted or convicted.  This argument ignores the appropriate legal test to be applied on a motion for judgment on the pleadings, and misapplies the law regarding due process claims based upon fabricated evidence.  Defendants' objections should therefore be denied.

## THE MEMORAUNDUM AND RECOMMENDATION

After what he described as a "careful review of the parties' briefs, and consideration of counsel's arguments at a motions hearing," Magistrate Judge Keesler denied Defendant Esposito's and Defendant Ojanitt's motions.  As to Defendant Esposito, the court rejected his qualified immunity argument, his argument that there was probable cause to arrest Plaintiff despite the fabricated evidence, and his argument that the fabrication did not "cause" Plaintiff's conviction.  As to Defendant Ojanitt, the court rejected his argument that the facts were insufficient to establish that he also fabricated evidence.

Defendant Esposito

With regard to Esposito's argument that he was entitled to qualified immunity as a matter of law, the court rejected this claim, relying on *Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005) and *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).  Specifically, the court held that "[v]iewing the allegation of fabrication against Esposito in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has alleged conduct that would violate a constitutional right [the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity], and that such right was clearly established at the time of the alleged violation.  Memorandum and Recommendation, hereinafter "M&R," p. 11.

As to Esposito's argument that the alleged violation did not "cause" Plaintiff's arrest, detention or conviction, the court likewise rejected this argument, and found that the reasonable inferences from the Complaint and the exhibits attached to defendants' answers were sufficient to allow the case to go forward to discovery and dispositive motions.  *Id*.

With regard to Esposito's probable cause argument, the court found that

> "[w]ithout the allegedly fabricated report that April Pride described Massey as having braids, there is substantially less evidence to link Massey to the crimes against Samatha Wood and her family. Viewed most favorably to Plaintiff, the facts in the Complaint and exhibits to the pleadings provide that Wood's assailant had braids, and that Massey did not have braids. Moreover, there is no physical evidence placing Massey, or anyone else, at the crime scene."

*Id*. The court concluded that the 'crux" of the case was "the question of what exactly Pride stated to Esposito, and what impact Esposito's report of Pride's statement had on the rest of the investigation and prosecution." *Id*. at 12. Therefore, "a finding on whether, or when, probable cause was established in this case is an issue the parties should be allowed to pursue in discovery." Id. at 12-13.

Finally, with regard to Esposito's argument that Plaintiff's due process claim be dismissed for failure to show that it "caused" the conviction, the court held that regardless whether the standard to be applied was "reasonable foreseeability," as set forth in *Washington v. Wilmore, supra*, 407 F.3d at 283, or the "but for" test advocated by Esposito, "Plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its face,'" quoting *Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009). *Id*. at 13.

<u>Defendant Ojanitt</u>

With regard to Defendant Ojanitt's arguments, the court first rejected his legal arguments, noting "the legal arguments and analysis involving these first two Defendants are almost identical," and therefore applied its analysis of Esposito's claims to Ojanitt's arguments. *Id*. at 15. Moving on to the facts, the court noted that the allegations in the complaint against Ojanitt "present a closer call than those against Esposito." Nevertheless, the court concluded that "[a]t bottom, Plaintiff alleges that Ojaniit also committed a fabrication." *Id*. at 16. The court further

found that the difference between a report falsely stating that the witness identified the Plaintiff as "looking like the person who attacked her", and a report truthfully stating that the witness identified the Plaintiff as "looking the most like" the person who attacked her *of the photos in the lineup* was sufficient, "in the context of the lawsuit and all the allegations," to state a claim for relief.

**DEFENDANT ESPOSITO'S OBJECTIONS**

Defendant Esposito sets forth two broad grounds for his objections. First, Defendant Esposito claims that Magistrate Judge Keesler simply ignored "critical undisputed facts" in reaching his decision. Second, he claims that Magistrate Judge Keesler employed the incorrect legal standard in evaluating the Plaintiff's allegations. Neither claim is accurate.

     A.    <u>The Memorandum and Recommendation Does Not Ignore Critical Facts</u>

          *1. The Allegedly "Unequivocal" Identifications*

Esposito first claims that Magistrate Judge Keesler allegedly "ignored" the fact that Samantha Wood "unequivocally identified the Plaintiff as the man who attacked her on multiple occasions." Esposito Objections, page 9. He further argues that "[t]he significance of these identifications is that they are fatal to Plaintiff's claims premised on a lack of probable cause. *Id*. at 10.

Defendant's factual assertion is simply not true. Samantha Wood did *not* unequivocally identify Shawn Massey on multiple occasions as the man who attacked her. Indeed, Defendant's assertion is directly contradicted not only by the allegations in the Complaint, but also by the exhibits attached to Defendant's Answer.

The Complaint specifically alleges that prior to Shawn Massey's arrest, at which time probable cause is evaluated, the only "identification" made by Samantha Wood was to say that a

photo of Shawn Massey "looked the most like" her assailant *of the photos in the lineup*, but that "unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard." Complaint, paragraphs 20 and 21. Indeed, Defendant Esposito admitted in his Answer that this is what Ms. Wood said after viewing the photo lineup. Esposito Answer, paragraph 20. Moreover, the Complaint specifically alleged that Ms. Wood "did not make a positive identification of Mr. Massey." Complaint, paragraph 20.

The next time Ms. Wood saw Plaintiff was in September 1999, more than a year later, when he was brought to court in an orange jumpsuit for his trial. She told the District Attorney at that time that she had doubts about her identification of Mr. Massey. Complaint, paragraph 33. And although she subsequently identified Mr. Massey during the trial as the person who attacked her, she also testified "that he looked different in court than he had at the time of the robbery, as his hair was shorter now and he was thinner." Complaint, paragraph 25. [16]

In short, and contrary to Defendant Esposito's claim, Samanth Wood did not "unequivocally identify" Plaintiff "on multiple occasions." In fact, the only "identification" that existed prior to the time of trial was an extremely equivocal and tentative identification of a photo of Shawn Massey, coupled with a significant disclaimer concerning his hair – a disclaimer she repeated at trial. Nor did Magistrate Judge Keesler ignore the allegations concerning these matters. He specifically discussed these "identifications" in his factual summary, which was

---

16.     Ms. Wood also reiterated in court what she had told the police right after the crime – that the man who attacked her "had braids in his hair, with five hanging down." Complaint, paragraph 24. But the Complaint alleged that "[i]n fact, Mr. Massey has always kept his hair very short, and had never worn his hair in braids," Complaint paragraph 19, a fact which must be taken as true at this stage, and that "[a] number of friends and family members testified for the defense that Mr. Massey had always had short hair and had never worn braids of any kind." Complaint, paragraph 29. As Magistrate Judge Keesler correctly recognized, "the facts in the Complaint and exhibits to the pleadings provide that Wood's assailant had braids, and that Massey did not have braids." M&R, p. 11.

"presented in the light most favorable to Plaintiff based on the allegations in the Complaint and consistent with the relevant exhibits to the pleadings."  M&R, p. 4, n.1.

### 2.  The District Attorney's Motion to Set Aside Verdicts and Release Defendant

Defendant Esposito next argues that in determining whether probable cause existed in 1998, the court should have taken into account two of the allegations in the District Attorney's Motion to Set Aside Verdicts and Release Defendant, which was filed twelve years later, in 2010. This argument is meritless.

First, Esposito points to an allegation in the motion that in 2010 Ms. Wood still stood by her in-court identification.  Esposito Objections, p. 10. [17]  But this hardly a surprise, especially given the fact that Shawn Massey had already served over ten years in prison based on that identification.   More importantly, *it is completely irrelevant to the issue of whether probable cause existed in July 1998, when Plaintiff was arrested*.

Esposito also argues that the court should have taken into account the state's allegation in its motion that it is "likely that a jury would conclude that although there is substantial evidence placing [Shawn Massey] in the area and identifying him as the perpetrator, there is a reasonable doubt about whether he committed the offense."[18]  But the state's prediction of what a jury "likely" would have concluded is again irrelevant to the issue of whether probable cause existed when Plaintiff was arrested.  Magistrate Judge Keesler properly disregarded these allegations in conducting his analysis.

---

[17]      Although Defendant claims that Ms. Wood "positively identified" Mr. Massey in 2010, Esposito's Objections, p. 9, this claim is somewhat misleading.  The District Attorney's motion simply states that Ms. Wood "still identifies Shawn Massey as the man who robbed her."  It is unclear if she was actually shown another photo spread, or simply reaffirmed that she still believed her in-court identification was correct.

[18]      Defendant selectively quoted from this passage on pages 11-12 of his objections.  The entire quote is provided here to put the language quoted by Defendant into its proper context.

*3. The Court of Appeals Decision on Direct Appeal*

Similarly, Esposito argues that the court should have taken into account the 2001 summary unpublished opinion of the Court of Appeals affirming Plaintiff's conviction -- despite the fact that the District Attorney subsequently moved to vacate that conviction. Again, two examples are provided.

First, Esposito claims that the court should have considered the finding of the Court of Appeals approving the admission of the photo lineup into evidence. *Id.* But Esposito misstates the significance of that decision. The Court of Appeals simply found that the photo lineup was not so suggestive as to require its suppression. It did not find that it was "unequivocal" or "reliable."

Second, Esposito claims that the court should have considered that the Court of Appeals found the evidence at trial was sufficient (viewed in the light most favorable to the prosecution) to support the conviction, and that it made no mention of April Pride's testimony in so finding. But the Court of Appeals did not address whether Esposito had fabricated his report, or the effect this fabrication had on the initiation of the prosecution or the verdict. These issues were simply not before it. The opinion of the Court of Appeals, like the motion filed by the District Attorney, is simply irrelevant to the issues before this court.

The simple fact is that Magistrate Judge Keesler considered the matters that were relevant to determining whether Plaintiff had adequately alleged in his Complaint, consistent with the relevant exhibits to the pleadings, that Defendant Esposito had deprived him of his rights under the Fourth and Fourteenth Amendments to the United States Constitution – as set forth in Counts II, III and V. The court correctly decided that based on all the relevant facts, taken in the light most favorable to the Plaintiff, the Complaint was sufficient. This finding should be adopted.

4. *Causation*

Defendant Esposito's next objection is that the Memorandum and Recommendation ignored "the way in which the allegedly fabricated evidence was used." Esposito Objections, p. 12. Specifically, Esposito argues that the fabrication did not "cause" the Plaintiff's conviction.

This argument simply ignores the fact that the fabrication was presented to the District Attorney's office as part of the "papering process" required in Mecklenburg County, to convince the District Attorney to authorize the Plaintiff's prosecution. In that regard, it is important to note that *all* the photos of Plaintiff that were in the DA's case file, taken over a period of years and as recently as a few months before the Wood assault, showed Shawn Massey always had short hair without braids (Complaint, paragraph 32), and there was *no* evidence other than the fabricated statement that he *ever* had braids (Complaint, paragraphs 19, 27, 29 and 30).

Esposito's argument also assumes that an instruction that was inherently confusing - that the fabricated evidence was to be used "for the purpose of corroborating the testimony of April Pride" -- despite the fact that it was directly inconsistent with her testimony that Shawn Massey did *not* have braids in May 1998 -- precluded the jury from considering this evidence.[19] The simple fact of the matter is that the state introduced this statement not to corroborate April Pride's testimony, but to *impeach* her testimony about Shawn Massey's hair. There was no other reason to call Defendant Esposito to the stand and to have him read the fabricated statement to the jury.[20] And, of course, the statement was admissible for that purpose.

---

[19]     Given that *all* of the other evidence was that Shawn Massey *never* had long hair or braids, and that the fabricated statement was the *only* evidence that he did have braids, this argument elevates form over substance.

[20]     In fact, the prosecutor specifically asked Esposito "would you have written that last comment about how he wore his hair if she had not told you that?" Esposito replied "no, sir." That was the only portion of the statement about which the prosecutor specifically asked.

But as Magistrate Judge Keesler noted, the crux of this case is not just what happened at trial. Rather, it is "what impact Esposito's report of Pride's statement had on the rest of the investigation and prosecution." M&R, p. 12. "Plaintiff seeks to proceed with discovery in this matter to determine what Defendants knew, when they knew it, and how their knowledge and evidence may have informed the *arrest, detention, and/or conviction* of Massey." Defendant's claim that Magistrate Judge Keesler ignored how the fabricated statement was used against Plaintiff is without merit.

B. <u>The Memorandum and Recommendation Did Not Apply the Law Incorrectly</u>

The final basis for Esposito's objections relates to the legal analysis conducted by Magistrate Judge Keesler. Specifically, Esposito argues that the court failed "to correctly evaluate the claims based on probable cause" and that it failed "to address the [legal] issue of causation in Plaintiff's Due Process claim. Esposito Objections, pp. 15 and 17.

*1. Probable Cause*

Defendant Esposito selectively quotes portions of the Memorandum and Recommendation to claim that "the Recommendation employed the incorrect standard" in evaluating the claims based on probable cause. But the Recommendation in fact applied the very standard that Defendant Esposito claims is appropriate. It simply rejected Defendant's conclusion that "the facts as revealed in the Complaint and the exhibits in this case show plainly that, without the allegedly fabricated sentence, there was probable cause in this matter." Esposito Objections, p. 16. Here is what the Recommendation said about Defendant's conclusion:

> "*The undersigned respectfully disagrees*. Without the allegedly fabricated report that April Pride described Massey as having braids, there is substantially less evidence to link Massey to the crimes against Samatha Wood and her family. Viewed most

> favorably to Plaintiff, the facts in the complaint and exhibits to the
> pleadings provide that Wood's assailant had braids, and that
> Massey did not have braids. Moreover, there was no physical
> evidence placing Massey, or anyone else, at the crime scene."

M&R, p. 11. The Recommendation concluded that "the undersigned is persuaded that a finding

on whether, or when, probable cause was established in this case is an issue the parties should be

allowed to pursue in discovery." *Id*. at 12-13. A complete discussion of the facts and inferences

that support the Magistrate Judge's findings is set forth in Plaintiff's Consolidated Response to

Defendants' Motions for Judgment on the Pleadings, Document No. 30, at pp. 19-25. Based

upon the facts and inferences set forth at pages 19-25 of Document No. 30, Defendant Esposito's

objection should be denied.

### 2. Due Process: Causation

The final objection made by Defendant Esposito is that the court "failed to address the

issue of causation in the context of the undisputed facts of this case." Esposito Objections, pp.

17-20. This is essentially a rehashing of the argument made on pages 12-14 of Esposito's

Objections, coupled with a discussion of several cases and a brief reference to the *Rooker-*

*Feldman* doctrine. *Id*. at 20.[21] To make his argument, Defendant again quotes selectively from

the Memorandum and Recommendation, and ignores the court's central finding on the due

process claim:

> "There is no dispute that Plaintiff alleges that he was deprived of
> his Fourteenth Amendment rights and wrongfully convicted based
> on Defendants' alleged acts, including fabrication. (Document No.
> 1, p.9). Moreover, accepting his allegations as true, the
> undersigned is satisfied that *Plaintiff has alleged 'enough facts to*
> *state a claim to relief that is plausible on its face*.'"

M&R, p.13 (emphasis added).

---

[21]     The *Rooker-Feldman* doctrine has no relevance to any of Plaintiff's claims. This issue is
discussed in Plaintiff's Consolidated Response to Defendants' Motions for Judgment on the Pleadings, Document
No. 30, at pp. 26-27.

Defendant also misstates the law on the issue of causation. A complete discussion of the causation issue and the cases relied upon by Defendant is set forth in Plaintiff's Consolidated Response to Defendants' Motions for Judgment on the Pleadings, Document No. 30, at pp.14-19. Suffice it to say here that the Fourth Circuit does *not* use the "but-for" test urged by Defendant Esposito. Rather, the Fourth Circuit explicitly held in *Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005) that the "proper inquiry … is whether Washington's conviction was a *reasonably foreseeable* result of Wilmore's initial act of fabrication – the police report." *Id.* at 283 (emphasis added).

Indeed, the other cases cited by Esposito in his objections stand for this same rule. For example, in *Zahrey v. Coffey*, 221 F.3d 342 (2nd Cir. 2000), the court noted that it was "not readily apparent why the chain of causation should be considered broken where the initial wrongdoer *can reasonably foresee* that his misconduct *will contribute* to an 'independent' decision that results in a deprivation of liberty." 221 F.3d at 352 (emphasis added). The court concluded that if, as alleged, the prosecutor-defendant had fabricated evidence in his investigative role, "it was at least *reasonably foreseeable* that in his advocacy role he would later use that evidence before the grand jury, with the likely result that Zahrey would be indicted and arrested." *Id.* at 353-354. Similarly, *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2nd Cir. 1997) dealt with a claim that police officers had prepared a false report. Defendants argued the fabricated evidence did not "cause" any harm. The Second Circuit emphatically rejected this analysis:

> This argument -- an ill-conceived attempt to erect a legal barricade to shield police officials from liability – is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society…. [and] would make a mockery of the

> notion that Americans enjoy the protection of due process of the law and fundamental justice. . . . When a police officer creates false information *likely to influence* a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. §1983.

124 F. 3rd at 130 (emphasis added). *See also Richardson v. City of New York*, 2006 WL 2792768 at *7 (E.D.N.Y.) (noting that there is an independent constitutional tort when a police officer creates false information *likely to influence* a jury's decision and forwards that information to prosecutors); *Washington v. Brubaker*, 322 F. Supp. 2d 702, 712 (W.D. Va. 2006)(holding that "the Fourteenth Amendment cannot tolerate a criminal conviction based on the knowing use of false evidence," and that the test is whether there is a "reasonable likelihood" that the fabricated evidence "could have affected the judgment of the jury"); *Bramblett v. True,* 59 Fed. Appx. 1, 14, 2003 WL 58283, *11 (4th Cir.2003) (unpublished)("[t]he knowing use of perjured testimony constitutes a due process violation when 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' ") (quoting *Kyles v. Whitley,* 514 U.S. 419, 433, n. 7, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

In short, where the fabrication precipitates the sequence of events that results in the deprivation of liberty, or where it is foreseeable that the fabricated evidence was "reasonably likely to influence a jury's decision," the defendant has been denied his due process rights, and a cause of action under 42 U.S.C. §1983 arises.

Thus, the legal question regarding causation is not, as Defendant suggests, whether the fabricated report "was the cause of [the] conviction such that, in its absence, the evidence would have been insufficient to convict him." Esposito Objections, p. 18. Rather, the question is whether, taking the factual allegations in the light most favorable to Plaintiff, and drawing all

inferences from those facts in his favor, Esposito's fabricated evidence was "reasonably likely" to have "influenced the jury's decision" to convict him.[22]

Magistrate Judge Keesler held that this is not an issue properly decided on a motion for judgment on the pleadings. As the North Carolina Supreme Court has recognized, "[p]roximate cause is an inference of fact to be drawn from other facts and circumstances . . . [and thus] is *ordinarily a question for the jury*." *Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (N.C. 1984) (emphasis added). Moreover, it is reversible error to "fail[] to draw the reasonable inferences from plaintiff's circumstantial evidence" as to causation. *Roehling v. National Gypsum Co. Gold Bond Bldg. Products*, 786 F.2d 1225, 1229 (4th Cir. 1986) (reversing grant of summary judgment where district court erroneously characterized plaintiff's inferential causation argument as "mere speculation"). Given the fact that Esposito's fabricated report was the only evidence that supported Samantha Wood's identification of Mr. Massey as having braids, and that all of the other evidence in the case established that Shawn Massey never had braids, this is not a question that the Court should resolve in this case as a matter of law.

## DEFENDANT OJANITT'S OBJECTIONS

Defendant Ojaniit submits only two brief objections. First, he argues that the Magistrate Judge accepted as true allegations in the Complaint that were allegedly contradicted by the exhibits. Ojaniit Objections to Memorandum and Recommendation, hereinafter "Ojaniit Objections," p. 10. Second, he argues that Counts I, IV and V should have been dismissed because he had no involvement in the interview of April Pride. Ojaniit Objections, p. 11.

Both of these objections are simply wrong.

---

[22]    In that regard, it is significant that the District Attorney concluded that the photos of Mr. Massey with close cropped hair, coupled with Ms. Wood's uncertainty about her identification, "make it likely that a jury would conclude that . . . there is reasonable doubt about whether he committed the offense." *See* Esposito Exhibit 1, ¶6.

*1. Report of the Photographic Lineup*

The Report and Memorandum specifically identified what it described as the key allegations against Ojaniit as set forth in paragraphs 20 and 21 of the Complaint.  M&R, p. 15. Essentially, these paragraphs alleged that although Ms. Wood told Ojaniit only that Plaintiff looked "*the most like*" the perpetrator *of the photos in the lineup*, his report claims that she said he "*looked like*" the perpetrator.  Moreover, contrary to Ojaniit's objection, the Court did not ignore what was in the exhibits.  Indeed, the court noted that the allegations were "*somewhat inconsistent"* with exhibits attached to Ojanitt's Answer.  *Id*.  Specifically, the Magistrate Judge noted that "a copy of the photo line-up shown to Wood has a notation that *appears to say* 'said this looks the most like him except no braids.'"  *Id*. (emphasis added).  In fact, the only words that are clearly legible are the words "said this looks most" and the words "except no."

Far from contradicting the Complaint, the exhibits confirmed the Complaint's allegations about the report of the photo line-up, which is what the Complaint alleged to be fabricated.  The exhibits make crystal clear that the report said exactly, word for word, what the Complaint alleged, and that what the report said was not true.  Ms. Wood did *not* say to Ojaniit that Plaintiff "looked like" the man who attacked her, as the report recites.  What Ms. Wood said was that he looked "*the most like*" the perpetrator *of the people in the six photos*.  This is an important distinction, as the Complaint alleged and the Memorandum and Recommendation recognized.

Moreover, at trial Ojaniit testified about the photo line-up as follows:  "when I gave [Wood] the line-up she looked at it for several seconds. And then, [she] *identified the individual* in the top portion, top-right-hand portion of my photo line-up [*the Plaintiff] as the suspect*." Defendant Esposito's Exhibit 9, pp. 200-201 (emphasis added).  He was also specifically asked whether the report at issue contained "what the victim said to you about the photo line-up," and

he replied "yes, it does." *He was then asked to read the report to the jury*, and stated "I looked at the photos and told the officer that one of the subjects *looked like the suspect*…." *Id.* at p. 203 (emphasis added), thereby emphasizing the misleading report to the jury. On cross-examination about the specific notation quoted by the Magistrate Judge that was contained on the photo, Ojanitt testified as follows:

> Q:    So, she did not identify him. Is that correct?
>
> A:    "She identified this subject to me, *stating she believed that was him*, except he has no braids [in the photo] and does not have a beard."
>
> Q:    But, looking the most like someone is not a positive I.D. is it?
>
> A:    Ma'am, that's a question you have to ask her.
>
> Q:    I'm just asking you, as an officer.
>
> A:    As an officer, her statement to me *she believed that was the suspect*, except in this particular photo, he has no braids and that he does not have a beard at this time."

Exhibit 9. p. 209 (emphasis added). In short, he misled the jury about the meaning of the notation "looked the most like…" on the photo spread. Defendant's claim that there was "no impropriety or misrepresentation by Officer Ojaniit regarding the line-up" is simply not supported by the transcript that was attached to the Answer.

Defendant's objection really goes to the issue of causation – whether (in light of the notation that was scribbled on the photo lineup and Ojaniit's misleading testimony about that notation) the fabricated report caused any harm to Plaintiff at any stage of the proceedings, including the decision by the District Attorney to authorize his prosecution. As the Memorandum and Recommendation held, that is an issue that, at a minimum, requires further discovery.

24

2. *Report of April Pride Statement*

Ojaniit's second objection is that Counts I, IV and V are based entirely on the interview and statement of April Pride, and that Ojaniit "did not interview April Pride nor did he take her statement." Ojaniit Objections, p. 11. Defendant simply ignores the fact that Counts IV and V of the Complaint allege that Defendants "acted in concert with each other" and "conspired" with each other. The Magistrate Judge found that the factual allegations of the complaint were sufficient to keep Ojaniit in the case. M&R, p. 16. Defendant sets forth no reason to disturb that finding, and his objection should be denied.

## CONCLUSION

Based on the foregoing argument, and on the Plaintiff's Consolidated Response to Defendants' Motions for Judgment on the Pleadings (Document 30), which is hereby incorporated by reference, Plaintiff respectfully requests that the Court deny Defendants' objections and adopt the Memorandum and Recommendation issued by Magistrate Judge Keesler.

RESPECTFULLY submitted this the 17th day of October, 2012.


**RUDOLF WIDENHOUSE & FIALKO**


/s/ David Rudolf
David S. Rudolf; NCSB #8587
Attorney for Plaintiff
225 East Worthington Avenue
Charlotte, NC 28203
Telephone:    704-333-9945
Telefax:        704-335-0224
Email:          Dsrudolf@rwf-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Lori Keeton
Parker Poe
401 S. Tryon Street
Suite 3000
Charlotte, NC  28202-1942

James P, Cooney, III
Scott Douglas MacLatchie
Womble Carlyle
301 S. College Street
Suite 3500
Charlotte, NC  28202-6050

Daniel Edward Peterson
Office of the City Attorney
600 East Fourth Street
Charlotte, N.C. 28202

**RUDOLF WIDENHOUSE & FIALKO**

/s/ David Rudolf
David S. Rudolf; NCSB #8587
Attorney for Plaintiff
225 East Worthington Avenue
Charlotte, NC  28203
Telephone:    704-333-9945
Telefax:        704-335-0224
Email:          Dsrudolf@rwf-law.com