# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:11-cv-477-RJC-DCK

| | | |
|---|---|---|
| **SHAWN MASSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Charlotte-Mecklenburg Police Officer J.J** | ) | **ORDER** |
| **OJANIIT; Charlotte-Mecklenburg Police** | ) | |
| **Officer GERALD J. ESPOSITO; Charlotte-** | ) | |
| **Mecklenburg Police Officer TOM G.** | ) | |
| **LEDFORD; Charlotte-Mecklenburg Police** | ) | |
| **Officers JOHN and JANE DOES ##1-10** | ) | |
| **in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendants' respective Motions for Judgment on the Pleadings, (Doc. Nos. 16; 18; 20); the Magistrate Judge's Memorandum and Recommendation, (M&R) (Doc. No. 44); Defendant Ojaniit's Objection to the M&R, (Doc. No. 45); Plaintiff's Reply to Objections, (Doc. No. 49); and Defendant Esposito's Objections to M&R, (Doc. No. 50). This matter is now ripe for adjudication.

## I.      BACKGROUND

This case requires a second examination of a horrible crime, the robbery and attempted rape of a woman who, when first assailed, carried her infant in her arms and her toddler by the hand. The inquiry now focuses on the investigating officers and the trial which concluded almost fourteen years ago to determine whether certain acts and omissions of the officers caused Plaintiff's arrest and conviction.

A.  Factual Background

1.  Robbery of Samantha Wood

At approximately ten o'clock in the morning on May 22, 1998, Samantha Wood (Wood) returned home with her two young children to find an armed man at her doorway. Pointing a gun at the head of her eighteen month old daughter, the man pushed Wood inside, attempted to rape her and refrained only when she informed him that she was having her "monthly." Changing course, the man ordered Wood through the apartment in search of money. He left after she gave him sixty dollars from her purse. In total, he spent thirty minutes in the apartment.

2.  Samantha Wood Interview

Defendants Ojaniit and Esposito, officers in the Charlotte-Mecklenburg Police Department, responded to the scene and interviewed Wood shortly after the crime at her apartment at 5206 Cherrycrest Lane, Charlotte, North Carolina. (Doc. No. 1 at 4). According to a statement written by Officer Ojaniit, Wood described the assailant as a black male approximately 5'9" tall, weighing 180 pounds, and wearing "his hair pulled back from his face and four (4) small braids on the back of his head." (Doc. No. 15-3). Additionally, she described the assailant as wearing a red shirt and blue jean shorts. (Id.).

3.  Theresa Savall Interview

The following day, May 23, 1998, Officers Ojaniit and Esposito obtained a break in the investigation. Returning to the Emerald Bay Apartments to conduct interviews, they spoke to Theresa Savall (Savall), the rental manager at the apartments, who reported that she had encountered a black male on the property the day before at approximately ten o'clock in the morning. (Id.; Doc. No. 13-7). The man, whom she described as approximately 5'11" tall, weighing 165 pounds and appearing "agitated," approached Savall and made vague propositions

2

towards her. (Doc. No. 15-10 at 68, 70). Savall asked the man if "he lived around here, and he said that he did not, he was just visiting." (Doc. No. 13-7). She stated that she observed the man approach her from the patio at 5038 C Cherrycrest Lane and that he wore a basketball jersey, blue jeans and a ball cap. (Doc. No. 15-10 at 70, 73).

### 4. April Pride Interview

Acting on the information obtained from Savall, Officer Esposito went to 5038 C Cherrycrest Lane and spoke with the resident, April Pride (Pride).[1] Officer Esposito told Pride that he was investigating a complaint about noise. (Id.). Pride told him that her friend, Shawn Massey had stayed at her apartment overnight on May 21. She reported that Massey was about 25 years old and lived with his grandmother. (Doc. No. 15-4: Esposito Report). Significantly, Officer Esposito's report states that Pride also provided information that Massey: "wears his hair pulled back with 4 or 5 braids." (Id.). Plaintiff contends that Officer Esposito fabricated this portion of the report and that Pride never said this to him. (Doc. No. 1 at 5). Officer Ojaniit was not present during the interview with Pride. (Doc. No. 15-10 at 91).

### 5. Wood Identification

Based on the information provided by Pride, the officers came up with a photo lineup to include Massey. On May 23, 1998, Wood met with Officer Ojaniit at the police station to attempt to identify the assailant from that photo lineup prepared by Defendant Ledford. According to the Complaint, "Ms. Wood selected the photo of Massey as 'looking most like' her assailant, but told Officer Ojaniit that, in contrast to the photograph of Massey, her assailant had longer hair with braids, and did not have a beard." (Doc. No. 1 at 5). Officer Ojaniit recorded

---

[1] In the court transcripts Pride is identified under the name April Pride-Thompson. The Court will refer to her as "April Pride" as the parties have done in their pleadings.

3

these qualifying statements on the photo array but did not request Wood's signature on the document. Plaintiff claims that, by offering such qualifying language, Wood did not make a positive identification of Massey. Additionally, Officer Ojaniit wrote a report on May 23, 1998, stating that Wood told him that "*one of the [men] looked like the suspect except that the suspect had longer hair with braids and he did not have a beard.*" (Doc. No. 13-6). Plaintiff alleges that the omission of the word "most" from Officer Ojaniit's report ("looked *most like*" as distinct from "looked *like*") made the written report of the identification false and misleading. (Doc. No. 1 at 5).

6.     Savall Identification

On May 26, 1998, Officer Ledford showed the same photo lineup to Savall, who stated that the photograph of Massey "looks like the person who spoke to me" on the morning of May 22, 1998, and that "I believe he is the same person." (Doc. Nos. 1 at 5; 13-7).

7.     Arrest and Trial of Shawn Massey

On July 7, 1998, Officer Ledford appeared before a magistrate to secure a warrant for Massey's arrest on three counts of second degree kidnapping, robbery with a dangerous weapon, and felonious breaking and entering. (Doc. Nos. 1 at 5; 15-7). The magistrate issued the warrants and Plaintiff was served with them on August 26, 1998. The trial began on September 13, 1999. That morning, prior to a pre-trial hearing, Wood expressed doubt to Assistant District Attorney Eric Cottrell (Cottrell) about her identification of Massey, informing him that: "I don't know if that's him or not." (Doc. Nos. 1 at 8; 15-1 at 4). However, during the hearing, Wood was able to observe Massey and to hear him address the court in extensive fashion. Based on these observations, Wood informed Cottrell that she was satisfied with her identification of Massey as her assailant based upon seeing his face and hearing his voice. (Doc. No. 15-4).

4

Neither Wood's doubts nor her subsequent confirmation were disclosed to the defense. (Id.).

8. Wood Testimony

During the trial,[2] Wood testified that at approximately ten o'clock in the morning on May 22, 1998, she was returning to her apartment with her eighteen month old daughter and six month old son. (Doc. No. 15-10 at 36). A man met her at the door to her apartment, snatched her daughter from her, and pointed a gun at the daughter's head. He told Wood to open the door, and followed her inside. (Id. at 39). Wood's daughter Leola was crying and the assailant "told me to quiet her down." (Id. at 43). Wood estimated that she spent "a few minutes" trying without success to get her children to quiet down. (Id.) During this time, the man was pointing his gun at the family. (Id.) After Wood placed her children in a playpen, the man pushed Wood through various rooms and ultimately onto a bed. He closed the bathroom door and again told Wood to "stay hushed up" because the apartment was not sound proof. (Id. at 45). He ordered Wood to lift her dress and to "[g]ive me some bitch." (Id. at 45-6). Wood informed him that she couldn't because "I was on my monthly." (Id.) The man asked Wood if she had any money and then "to get up," and then made her "go through all the house, open up all the cabinets, the doors and everything." (Id. at 47). Eventually, Wood turned over money from her purse. Wood "guess[ed]" that the man was in the apartment for approximately thirty minutes. (Id. at 49). Before leaving, the assailant told Wood that he was familiar with the schedule of her and her husband and that "if I called the cops and everything, he would come back and kill us." (Id.).

---

[2] Defendants offered the trial transcript as exhibits. (Doc. Nos. 15-10; 15-11). The trial transcript represents an undisputed and complete account of the testimony and evidence offered at trial. As neither Defendants' motions nor the exhibit present matters outside the Complaint, the inclusion of such documents does not convert Defendants' motions into ones for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353-54 (4th Cir. 2004). As the instant dispute turns in part on the cause of Plaintiff's conviction, the Court views the trial transcript as the "four corners" of the evidence presented at the trial. It forms no judgment as to the credibility of any witness.

5

Wood described her assailant as having "braids in his hair, with five hanging down" and being "about five-eight." (Doc. Nos. 1 at 6; 15-10 at 40). She described his braids as going all through his hair, and that he wore a red, jersey-like shirt, with hurricane symbols on it. Wood identified Massey in court but testified that his hair was shorter and he was thinner than at the time of the robbery. (Doc. Nos. 1 at 6; 15-10 at 56).

        9.      Savall Testimony

Theresa Savall testified that the man who approached her was about the same height as her, namely five foot eight and a half, and weighed about 150-155 pounds. She said that he "looked very young in the face" and that he wore an orange and white jersey and long pants similar to jeans. (Doc. No. 1 at 6; 15-10 at 67, 70). She said that she observed him approach her from the back of a patio of the 5038 building and that she had never seen him before. (Id. at 73). Savall testified that the entire conversation lasted "about 3 to 4 minutes," but she did not notice the man's hair because he wore a hat. (Id. at 76). She noted that she "was fairly certain" that the person she had identified in the photo array was the same person she had encountered on May 22, 1998. Finally, Savall made an in-court identification of Massey. (Id. at 75).

        10.      Pride Testimony for Prosecution

At trial, April Pride was called as a witness by both the government and the defense. For the government, Pride testified that she had known Massey for approximately ten years, that he had spent the night at her apartment, and that he was still present at the apartment when she left for work 6:45 a.m. on May 22, 1998. (Id. at 89-91). She acknowledged that she informed Officer Esposito the following day that Massey had been at the apartment on the morning of May 22, 1998. (Id. at 91). The prosecutor did not ask Pride any questions about Massey's hairstyle on direct examination. Finally, presented with the photo lineup that had been presented to Wood

and Savall, Pride identified Massey's photo.

On cross-examination, Pride engaged in the following line of questioning with the

defense counsel:

> Q: Have you ever seen Shawn Massey wear braids?
> A: No. Not that I can recall.
> Q: Have you ever seen Shawn Massey with hair long enough to braid?
> A: It might have been; but not long enough to where it could really be hanging; hanging braids; no.
> Q: Do you recall Shawn Massey having braids the day he was over at your house in May?
> A: No.
> Q: How do you recall his hair being styled on that date?
> A: A low haircut.

On re-direct examination, the State's prosecutor engaged Pride in the following line of

questioning:

> Q: If the officer had written in his notes, that Mr. Massey – that you told him that Mr. Massey wears his hair pulled back with four or five braids, would the officer have been making that up? [objection overruled]
> A: I recall the officer asking me if Shawn [Massey] wore braids. I do not recall telling him that he did.
> Q: So you have no idea why the officer would have written that down in notes of his conversation with you?
> A: That's right.

(Id. at 98).

11.    Officer Esposito Testimony

Following Pride's testimony, the State called Officer Esposito as a witness. He recounted

his conversation with Pride on May 23, 1998, eventually reading his report to the jury. The last

line of the report states that Pride told him that: "Massey wears his hair pulled back with four or

five braids." (Id. at 110). The prosecutor then asked Officer Esposito: "Would you have written

that last comment about how he wore his hair if she had not told you that?" Officer Esposito

replied: " No, sir." (Id.). Regarding the introduction of Officer Esposito's report into evidence,

7

the judge instructed the jury that they "may consider this account from Officer Esposito as to what was said to him by April Pride Thompson for the purpose of corroborating the testimony of April [Pride] Thompson, if indeed you do find that it does corroborate her testimony. Do not consider it for other purposes." (<u>Id.</u> at 109-110).

12.     Officer Ojaniit Testimony

Officer Ojaniit testified that, during the photo lineup, Wood identified a photograph of Massey "that she believed was the suspect; looked most like him; except, in the photo, he has a beard and at the time of the occurrence, he did not have a beard; and that at the time of the occurrence, he had braids in his hair; and, in this particular photo, he did not have braids." (<u>Id.</u> at 201). Officer Ojaniit then "circled the picture which the victim had pointed out. And, next to the circling [Officer Ojaniit] wrote [his comments of what Wood] said. 'This looks most like him; except for no beard and he has braids?'" (<u>Id.</u> at 201-02). Officer Ojaniit then read from a report which he had prepared following the meeting with Wood. He read the relevant part to the jury in which Wood states: "I looked at the photos and told the officer that one of the subjects looked like the suspect, except that the suspect had longer hair, with braids and he did not have a beard."

13.     Pride's Defense Testimony

Pride testified as a defense witness on the second day of trial. She reiterated that Massey stayed the night at her apartment and that he was still there when she left at approximately 6:45 a.m. She stated that she was "positive" that Massey did not have braids in his hair at that time, that she never made any statements to Officer Esposito to the contrary, and that she had never known him to carry a weapon. (<u>Id.</u> at 281-83).

8

14. **Dorsey and Other Testimony**

Massey's employer, Brady Dorsey (Dorsey), testified that he remembered picking Massey up for work at 3132 Graymont at 6:55 a.m. on May 22, 1998. (Doc. Nos. 1 at 7; 15-11 at 221). Dorsey produced pay records showing that Massey had been paid for working on that day and stated that he most likely worked until around 4:00 p.m. (Doc. Nos. 1 at 7; 15-11 at 218-19). Additionally, Dorsey stated that he had known Massey for several years and had never seen him wear braids. (Id. at 222).

Finally, five various friends and family members of Massey testified that he had never worn braids, but always wore his hair short.

15. **Conviction and Dismissal of Charges**

On September 17, 1998, the jury convicted Massey of all charges. (Doc. No. 1 at 7). Judge James L. Baker sentenced him to a minimum term of 103 months and a maximum term of 133 months for armed robbery, and a minimum of 34 months and a maximum of 50 months for the consolidated kidnapping and breaking and entering charges. (Id.). Judge Baker ordered that the sentences be served consecutively.

In the mid-2000s, the Duke Wrongful Conviction Clinic (Clinic) accepted Massey's case. (Id.). During its investigation, the Clinic uncovered a series of seven photos of Massey taken between April 1991 and May 1998. In each photo, including one taken on March 9, 1998, Massey had short hair. (Id.). Two professional barbers provided affidavits asserting that it was not possible for Massey's hair to have grown long enough to be braided into cornrows between March 9, 1998 and May 22, 1998. (Doc. No. 1 at 8). The Clinic also interviewed Wood. (Id.). She disclosed that she had expressed doubt about the identification of Massey as her assailant before trial. (Id.). "Wood also confirmed that her assailant had worn cornrows; that is, braids

9

that ran from near his face to the back of his head." (Id.). Although Wood later convinced the

State's prosecutor that "she was satisfied Massey was the one who victimized her based on

seeing his face and hearing his voice," the initial doubts were not disclosed to the defense.

On May 5, 2010, Peter Gilchrist, III, the Mecklenburg County District Attorney, filed a

Motion to Set Aside Verdicts and Release Defendant. (Doc. Nos. 1 at 8; 13-1). Gilchrist noted

that "the issues of whether all photographs were provided to the defense and the failure of the

State to notify the defense of Wood's initial reservation at trial concerning the identity of

Massey" led him to conclude that, although the evidence "still supports a conclusion that Shawn

Massey is the person who committed the offense," nonetheless "it cannot be said with certainty

that the jury would still have reached the same conclusion" had such evidence been disclosed to

the defense. (Id. at 1, 5). On or about May 6, 2010, Massey was released from prison. (Doc.

No. 1 at 8; 13-2).

B.    Procedural Background

Plaintiff filed his complaint against Officers Esposito, Ojaniit, Ledford, and John and

Jane Does 1-10 (collectively: Defendants) on September 23, 2011. (Doc. No. 1). The Complaint

asserts causes of action under 42 U.S.C. § 1983 for: (1) due process violations under the Fifth

and Fourteenth Amendments; (2) malicious prosecution and unreasonable seizure under the

Fourth and Fourteenth Amendments; and (3) conspiracy to violate Massey's constitutional

rights; and related state law claims for: (4) impeding and hindering public and legal justice, false

imprisonment and civil conspiracy; and (5) malicious prosecution and conspiracy. (Id.).

Defendants Ledford, Ojaniit and Esposito filed their Answers on November 18, 21 and

23, 2011, respectively. (Doc. Nos. 13; 14; 15). Each of the named Defendants filed a Motion for

Judgment on the Pleadings on November 28, 2011. (Doc. Nos. 16; 18; 20). On August 17,

2012, the magistrate judge entered a Memorandum and Recommendation (M&R) concluding that the Court should grant Defendant Ledford's motion and deny Defendants Ojaniit's and Esposito's motions. (Doc. No. 44).

Defendant Ojaniit lodged two broad objections to the M&R on August 31, 2012. (Doc. No. 45). First, Defendant Ojaniit contends that the magistrate judge misapplied the standard for granting a Motion for Judgment on the Pleadings by accepting as true allegations in Plaintiff's complaint that were contradicted by exhibits to Defendant Ojaniit's Answer properly considered at this stage of litigation. (Id. at 9-11). Specifically, Defendant Ojaniit argues that such exhibits directly contradict Plaintiff's allegation that he misrepresented Wood's statement regarding the photo lineup. (Id.) Second, Defendant Ojaniit objects that the magistrate judge failed to recognize that Counts I, IV, and V of the Complaint are based entirely upon the interview and concomitant statement of April Pride in which he had no involvement as demonstrated by the attached exhibits. (Id. at 11).

Defendant Esposito filed objections to the M&R on September 4, 2012. (Doc. No. 50). First, Defendant Esposito objects that the M&R failed to give due consideration to facts which he claims undermine Plaintiff's claims, including: (1) the multiple identifications of Plaintiff by multiple eyewitnesses; (2) the language from the district attorney's Motion to Set Aside Verdict which indicated that there still existed substantial evidence identifying Plaintiff as the perpetrator; and (3) that the allegedly fabricated evidence was not used as substantive evidence against Plaintiff. (Doc. No. 46 at 9, 12-14). Defendant Esposito's second objection is that the magistrate judge failed to evaluate correctly whether the evidence, absent the allegedly fabricated evidence, was sufficient to establish probable cause. (Id. at 15-17). Third, Defendant Esposito objects that the magistrate judge failed to address properly whether the alleged

11

fabrication was the cause of Plaintiff's conviction. (Id. at 17-20). On October 17, 2012, Plaintiff filed a consolidated reply to Defendants Ojaniit's and Esposito's Objections. (Doc. No. 49). On December 28, 2012, Defendants Esposito and Ojaniit filed a Request for Supplemental Briefing in light of the decision handed down by the Fourth Circuit in Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012). (Doc. No. 50). Plaintiff filed his Response in Opposition to Supplemental Pleading on January 14, 2013. (Doc. No. 51). The Court denied Defendants' request. (Order, Feb. 8, 2013).

## II.    STANDARD OF REVIEW

The district court may assign dispositive pretrial matters pending before the court to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Given the broad scope of the objections filed by the respective Defendants, this Court will review the M&R de novo in its entirety. 28 U.S.C. § 636(b)(1); Camby, 718 F.2d at 200.

## III.   ANALYSIS

Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). But the court need not accept allegations that "contradict matters properly subject to judicial notice or exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). The court may consider the complaint, answer, and any materials attached

12

to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also FED. R. CIV. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes."). In contrast to a Rule 12(b)(6) motion, however, on a Rule 12(c) motion, the court may consider the answer as well. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

A.    Officer Esposito

The inquiry into whether qualified immunity exists is a "pure question of law." DeMeglio v. Haines, 45 F.3d 790, 794 (4th Cir. 1995). "Immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228 (1991). Courts must engage in a two-part inquiry in determining whether qualified immunity protects a law

enforcement officer from liability for a federal constitutional violation.  First, the court must determine "whether the facts that a plaintiff has alleged … make out the violation of a constitutional right."  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  If a violation is established, the court then decides whether the right was "clearly established" at the time of the defendant's alleged misconduct.  Id.  Qualified immunity protects the officers from suit unless the conduct alleged violates a clearly established constitutional right.  Id.

      1.  Count I: Due Process Claim

Plaintiff's first count alleges that the Defendants "deliberately fabricated evidence by falsely reporting, both in oral pre-trial reports to the prosecutor and in written reports, that April Pride had stated that Massey wore his hair pulled back from his face in braids."  (Doc. No. 1 at 9).  As a result, Plaintiff was "deprived of his Fourteenth Amendment rights to substantive due process, to a fair trial" and caused him to be "wrongfully convicted."  Id.  Plaintiff alleges that this violated his right "not to be deprived of liberty as a result of evidence by a government officer acting in an investigating capacity."[3]  Washington v. Wilmore, 407 F.3d 274, 282 (2005) (finding a Due Process violation under such conditions).

The parties dispute the proper causation inquiry applicable where a plaintiff alleges a

_____

[3] The Court understands Count I under the Fifth and Fourteenth Amendments to focus on the trial and conviction (deprivation of liberty) of Shawn Massey as distinct from the seizure of his person (arrest), which is protected by the Fourth Amendment and forms the basis of Count II.  The term "Substantive Due Process" in the context of this case is unhelpful in directing the Court towards any meaningful analysis of a constitutional violation.  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims."  Albright  v. Oliver, 510 U.S. 266, 273 (1994) (internal quotation marks omitted).  As there is no deprivation of liberty resulting from an unfair trial where a person is ultimately acquitted, the Court interprets the deprivation of liberty to relate solely to the conviction of Shawn Massey rather than the intrinsic fairness of his trial.  See Zahrey, 221 F.3d at 350 ("no deprivation of liberty occurs unless and until the jury convicts and the defendant is sentenced.").  In contrast, injuries incurred at a trial where a person is acquitted can obtain redress under the Fourth Amendment as the consequence of an unlawful arrest.

14

violation of the Due Process right recognized in <u>Wilmore</u>.  Defendant Esposito argues for the straightforward "but for" test.  (Doc. No. 17 at 21).  Plaintiff argues that the appropriate test is whether Plaintiff's conviction was the "reasonably forseeable" consequence of Officer Esposito's fabrication. (Doc. No. 30 at 13-15).  The Fourth Circuit phrased the issue of causation as follows:

> [W]hether the facts alleged by Washington demonstrate that the loss of liberty—i.e., Washington's conviction for the murder of Rebecca Williams and subsequent incarceration—resulted from Wilmore's fabrication of evidence.  Wilmore's only argument on this point is that he cannot be held liable for his testimony at trial, an indisputable proposition.  The proper inquiry, however, is whether Washington's conviction was a reasonably forseeable result of Wilmore's initial act of fabrication—the police report.

<u>Wilmore</u>, 407 F.3d at 282-83 (citing <u>Briscoe v. LaHue</u>, 460 U.S. 325, 245-46 (1983)).

Plaintiff places too much emphasis on the Fourth Circuit's "reasonably forseeable" language while ignoring its use of "resulted from."  The <u>Wilmore</u> court relied heavily on the Second Circuit's analysis in <u>Zahrey v. Coffey</u>, 221 F.3d 342 (2nd Cir. 1999), which offered extensive analysis on the differing approaches to causation.  Ultimately, the <u>Zahrey</u> court considered both actual (but for) causation and proximate causation.  221 F.3d at 350, 357 n.8.  This Court knows of no precedent dispensing "but for" causation or mandating an "either-or" approach where the use of one line of inquiry necessarily precludes the other.  <u>See</u> <u>Hovatter v. Widdowson</u>, No. 03-2904, 2006 WL 890713, at *5 (D. Md. Mar. 29, 2006) (holding that "the right enunciated in [<u>Wilmore</u> and <u>Zahrey</u>] would not be violated, even where an investigative officer fabricates evidence, if that fabrication was not the 'cause' of plaintiff's detention and conviction.").

What is clear from these cases is that a plaintiff must demonstrate that the unlawful actions caused the conviction.  The "reasonably forseeable" analysis places a court's focus on the

15

defendant's behavior at the beginning of the causal chain; in contrast, the "but for" analysis is a retrospective glance at the same causal trajectory. Rather than precluding one another, both inquiries serve to focus the court on the totality of the causal relationship between the offending behavior and any injuries it may have caused. The task of the court is to take a complete account of the causal relationship between the offending behavior and the plaintiff's conviction as well as any factors which might weaken the causal chain. A close causal nexus between the offending act and conviction will defeat a defense of qualified immunity; an attenuated relationship will fail to establish a constitutional violation.

            a.      State's Case at Trial of Shawn Massey

In view of the totality of the evidence presented at trial, the Court concludes that Plaintiff cannot demonstrate that the fabricated evidence was the cause of his conviction. Several facts direct the Court to this conclusion.[4] The trial transcript is replete with evidence offered at trial the probative value of which was not affected by the fabrications by police and which formed the spinal column of the State's case. The State's case can be summarized as follows: the day after the incident, Officers Esposito and Ojaniit spoke to Savall who informed them of an encounter with an "agitated" man whose description bore similarity to the description offered by the victim. (Doc. No. 15-10 at 68). Savall informed them that she witnessed the man leave the patio area of Apartment 5038 C Cherrycrest Lane. (Id. at 70). Arriving at this location, the police

---

[4] The Court takes all facts in the light most favorable to the Plaintiff as the non-moving party. However, the Court does not have to accept as true allegations that contradict matters contained in an exhibit such as the trial transcript, which is a public record whose authenticity is not in dispute and is authoritative on the nature and quantum of evidence offered at trial. Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). Causation "can be decided on summary judgment only in those instances when there are no causal facts in dispute." Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (citations and internal quotation marks omitted). Here, insofar as the facts relating to causation occurred at a trial the transcript of which has been submitted as an exhibit, the facts (i.e. the nature of the testimony and evidence offered at trial) are not in dispute and can be determined by the Court.

16

interviewed Pride who informed them that Massey was present on the morning in question. Officer Ledford then generated a lineup containing the photos of six persons, one of whom was Shawn Massey. The victim identified the photograph of Massey as her assailant.[5] Two days later, Savall identified the photograph of Massey as the man whom she encountered in the vicinity of the crime scene during the general period in which the crime occurred. Savall's identification was made with no reference to the hairstyle of the man, who she claimed wore a hat. Likewise, Wood testified at trial that her identification was based on the "facial" features and general appearance of the man in the photograph. (Id. at 55). Both Wood and Savall made in-court identifications of Massey. Wood noted that her identification was based in part on vocal recognition after hearing Massey address the court at a pre-trial hearing. (Id. at 57). There is no evidence of collusion or improper motivation by Wood or Savall in their selection of Massey as the assailant. Neither person knew Shawn Massey prior to the identification.

In its case in chief, the State did not attempt to hide the discrepancies in Wood's description from the jury. The prosecutor questioned Wood about the lack of braids as well as her comments to Officer Ojaniit that the photograph of Massey "looked most like" the assailant except for braids and a beard. Finally, the State did not question Pride on direct examination about her comments to Officer Esposito that Massey wore braids on May 22, 1998. In so doing, the State's actions demonstrate that the fabrication was not among the evidence which it sought to introduce to establish its burden beyond a reasonable doubt.

––––––––––––––––––––––––––––––

[5] Plaintiff argues that the discrepancies in certain aspects of the identification (hairstyle, beard) necessitate the legal conclusion that the victim did not positively identify Massey. The Court is not aware of any precedent which requires this legal conclusion absent facts of suggestive or otherwise unconstitutional procedures. An identification need not be perfectly precise to be admissible. Discrepancies go to the weight the jury should accord the evidence or credibility of the witness. In this case, the prosecutor offered and the trial judge granted the admission of the photo lineup as evidence of an out of court identification.

17

b. Defense Case at Trial

Plaintiff's central argument is that: "Indeed, if on May 22, 1998, Shawn Massey did *not* have hair long enough to be "pulled back from his face and (4) small braids on the back of his head" he *could not* have been the person who committed the crime."[6] (Doc. No. 49 at 2; emphasis in original). Plaintiff's argument, though skillfully made, is not sufficient to persuade this Court that the crucial question at issue at the trial of Shawn Massey – to the exclusion of all other evidence – was his hairstyle on the day in question. Massey presented two general defenses at his trial: first, he presented an alibi defense to show that he was not present at the day in question; and, second, he argued that he was not the assailant because his hair had never been long enough to braid.

Dorsey testified that he picked up Massey at approximately 7:00 a.m. on May 22, 1998, and that Massey worked a full day for him. He produced pay stubs and testified that Massey would not have left the job site at any point that day. This testimony was contradicted by Pride who stated as both a witness for the State and the defense that Massey did not own a car and was at her apartment – several miles from the site where Massey was to be picked up – approximately fifteen minutes before he would have been picked up by Dorsey. Additionally, Savall's identification is significant insofar as it places him near the scene of the crime on the day in question rather than at work. The probative value of Savall's testimony is high as related

---

[6] In so arguing, Plaintiff raises to the level of certainty that the crime *could only* have been committed by a person with braids. This is an overstatement of an otherwise valid argument. That an eyewitness described an assailant as having braids does not, by operation of nature or law, exonerate all suspects who do not have braids; it merely calls into question that aspect of the description as applied against anyone not wearing braids. The factors which influence a witnesses' memory and perception are myriad; the Court only notes that, contrary to Plaintiff's assertions, it is within the realm of possibility that a person can accurately identify another person even as their perception or memory is incorrect as to certain aspects of that person's appearance. While Plaintiff has a strong argument that a description of an assailant with braids is not accurate as to a suspect shown never to have worn such, it does not go so far as to mandate the legal conclusion that such a description amounts to an exoneration of all persons without braids.

18

to the other evidence presented at trial as it directly contradicts Massey's alibi that he was at work on the day in question.

All of this evidence speaks to the alibi defense and is unaffected by whether Massey had braids. It was Pride who first informed the police of the identity of Shawn Massey and of his presence on the morning in question. Savall's identification places him in the vicinity of the crime scene in closer temporal proximity to the crime. Her identification corroborates that of the victim, Wood, who testified that she spent approximately "thirty minutes" with her assailant and who recognized him based on his facial features. This evidence formed the crux of the State's case against Massey. The fabricated description ascribed to Officer Esposito did not greatly affect the quantum of evidence in the State's case; at best, it merely weakened the testimony of Pride on the topic of whether Massey wore short hair on the day in question – a fact to which Pride was one of six persons to testify at trial.

       c.     Use of Fabrication at Trial

The trial judge's instructions limited Officer Esposito's testimony to those areas where it corroborated Pride such as whether Massey was at her house on May 22, 1998. The judge specifically instructed the jury to "consider this account from Officer Esposito as to what was said to him by April Pride Thompson for the purpose of corroborating the testimony of April [Pride] Thompson, if indeed you find that it does corroborate her testimony. Do not consider it for any other purposes." (Doc. No. 13-9 at 109-10). "Where the jury is given a limiting instruction, any concern that the jury will improperly use the evidence subsides." United States v. Branch, 537 F.3d 328, 342 (4th Cir. 2008).

The fabrication was not presented as substantive evidence on the issue of Massey's hair. The testimony was also limited in terms of its potential impact. Wood's trial testimony was

19

based upon two things: the visual and oral identification of her assailant.  Whether the perpetrator wore braids had no bearing on her identification of the vocal or facial features of her assailant.  Wood testified that she was able to hear Massey speak at the pre-trial hearing where he answered questions about his lawyer's representation.  (Doc. No. 13-9 at 57).  She testified that she recognized his voice from the day of the robbery.  (Id.).  At trial, Wood offered extensive testimony regarding communications made to her by her assailant.  He told her to "open the door," (Id. at 39); to "quiet down her child," (Id. at 43);  to "keep real quiet because Leola wouldn't quit crying," (Id. at 44); to "stay hushed-up because those walls, saying you could hear and everything," (Id. at 45); to "lift my dress," (Id.); to "give me some, bitch" (Id.); to "show him," (Id. at 46); to "get up" (Id. at 47); to "open this up" (Id.); to "get my purse" (Id. at 47-8); finally, he told her "everything he knew," including her "husband's schedule; when he went to work and came home and said what times; 4 o'clock and 8 o'clock," (Id. at 48).

This Court does not find the causal nexus to be sufficiently strong to bear the conclusion that the statement fabricated by Officer Esposito caused the conviction of Shawn Massey.  At best, it weakened one of the two defenses that Massey presented – that he never wore braids in his hair.  The Court cannot conclude that, absent this fabrication, the jury would have rendered a different verdict.

        d.     "Reasonably Forseeable" Analysis

Finally, this Court is not convinced that the conviction of Massey qualifies as the reasonably forseeable consequence of this fabrication of evidence.  To find it so would require Officer Esposito to have anticipated correctly that Pride would testify that Massey did not have braids, and that his fabricated statement would sufficiently rebut such testimony in the eyes of the jury.  It would have required the foresight to recognize, long before trial, this single issue

amidst the legion of potential issues, and to avert it by inserting such fabrication. It likewise would require Officer Esposito to have the foresight to predict the actions of numerous independent parties: how the defense would align its case; how witnesses would testify; how the prosecutor would seek to use such evidence at trial; and under what terms the judge would allow its admission. Unlike the planting of a weapon or the fabrication of a confession by a defendant, the Court finds the evidence here subject to far too many variables to be reasonably forseeable at the moment of fabrication to serve as the cause of the conviction even under the legal standard advocated by Plaintiff.

Accordingly, this Court finds that, viewing the evidence offered at trial and the causal nexus in its totality, the Plaintiff's has not alleged plausibly that the fabrication was the cause of his conviction; therefore, Defendant Esposito's Motion for Judgment on the Pleadings will be granted as to Count I and the claim against him will be dismissed.

2. Count II: Unreasonable Seizure

Plaintiff's second claim alleges that Defendant Esposito "initiated and continued a criminal prosecution against Massey" for armed robbery and kidnapping while he:

> knew or reasonably should have known, that there was no probable cause of his prosecution of Mr. Massey, because (a) the victim had only identified his photo as looking the "most like" her assailant of the photos in the lineup, (b) the victim had told Officer Ojaniit that, unlike Mr. Massey, her assailant had longer hair with braids, and did not have a beard, and (c) Shawn Massey did not have braids in his hair on May 22, 1998.

(Doc. No. 1 at 10).

Plaintiff alleges that the Defendants' actions led a magistrate to issue an arrest warrant, the State to prosecute him, and the jury to convict him for a crime that he did not commit in

violation of his Fourth and Fourteenth Amendment Rights.[7] (Id.). None of the named

Defendants are alleged to have seized Plaintiff or testified before the grand jury. See (Doc. No.

15-8). Only Defendant Ledford filled out a warrant affidavit or otherwise secured the arrest

warrant. (Doc. No. 15-7).

      To succeed on his claim, Plaintiff must demonstrate that Officer Esposito deliberately or

with "reckless regard for the truth" made material false statements in his affidavit."[8] Franks v.

Delaware, 438 U.S. 154, 171 (1986). "To determine materiality, a court must excise the

offending inaccuracies … and then determine whether or not the 'corrected' warrant affidavit

would establish probable cause." Miller v. Prince George's County, MD, 475 F.3d 621, 628 (4th

Cir. 2007) (internal quotation marks omitted). Probable cause exists where "the facts and

circumstances … are sufficient to warn a prudent person, or one of reasonable caution, that the

suspect has committed … an offense." Michigan v. De Filippo, 443 U.S. 31, 37 (1979). "[T]he

degree of certainty necessary for probable cause is a 'fair probability,' an amount of proof

greater than 'reasonable suspicion' but less than 'preponderance of the evidence,' 'clear and

convincing,' or 'beyond a reasonable doubt.'" State v. Crawford, 480 S.E.2d 422, 424 (N.C. Ct.

App. 1997) (internal citations omitted). Even deliberate falsehoods in a probable cause

statement do not violate the Fourth Amendment unless they are necessary to a finding of

probable cause. Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994).

      Here, to determine whether probable cause existed in the absence of the alleged

_____

[7] Count II cites "Malicious Prosecution and Unreasonable Seizure Under the 4th and 14th Amendments." The Court places its focus solely on the arrest of Massey as related to his rights under the Fourth Amendment. "There is no such thing as a § 1983 malicious prosecution claim. What we have termed a "malicious prosecution" claim … is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution…" Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000).

[8] Plaintiff has not alleged that Officer Esposito omitted any material facts from the affidavit. The Court dispenses with analysis applicable to omissions and limits itself to the false statement alleged.

fabrication, the Court excises the fabrication and views the totality of evidence as contained in the police reports. Miller, 475 F.3d at 628. The instant case presents difficulties for two reasons: first, more than one piece of fabricated evidence is alleged, and; second, neither Officer Esposito nor Officer Ojaniit filled out a warrant to secure the arrest. The Court finds that even when it removes the fabricated statement attributed to Officer Esposito *and* adds the word "most" to Officer Ojaniit's written report, there still exists sufficient probable cause to arrest Shawn Massey.

Ultimately, it is a "fair probability" that a suspect had committed a crime where the victim identifies the suspect out of six person photo lineup, a second person independently identifies him (from the same six person lineup) as having been near the scene of the crime during the relevant period, and a third confirms his identity and relates that she last saw him in the vicinity of the crime area several hours earlier. The discrepancies between the description by Wood and Massey's actual appearance, though relevant, do not rise to the level to defeat probable cause. To obtain the warrant, the officers needed only a fair probability that Massey committed the crime against Wood. The multiple identifications of Massey suffice to exceed that threshold. Therefore, the Court will grant Defendant Esposito's Motion on the Pleadings and dismiss Count II against him.

B.     Officer Ojaniit

1.     Count I: Due Process

The misconduct alleged by Plaintiff against Defendant Ojaniit is limited to the omission of a single word ("most") from a written report describing Wood's identification of Massey from a photo lineup. (Doc. No. 1 at 5). Wood picked Massey out of a photo lineup as "looking most like" her assailant, except that the assailant had longer, braided hair and did not have a beard.

23

Officer Ojaniit recorded on the photo lineup Wood's statement that the photo of Massey looked "most like" the assailant. The report subsequently produced by Officer Ojaniit described Wood as relating that "one of the subjects looked like the suspect except that the suspect had longer hair with braids and he did not have a beard."

At trial, the State's prosecutor engaged in the following inquiry with Officer Ojaniit:

Q: Did [Samantha Wood] make any comments to you about the photo?
A: She did.
Q: What were those comments, sir?
A: She stated that she believed that was the suspect; *looked most like him*; except, in the photo, he has a beard and at the time of the occurrence, he did not have a beard; and that at the time of the occurrence he had braids in his hair; and, in this particular photo, he did not have braids.

(Doc. No. 15-11 at 201; emphasis added).

For Plaintiff to prevail on this claim, he must demonstrate that the omission of the word "most" in the report was the cause of his conviction. Here, the trial transcript demonstrates clearly that there was no omission. Wood's comments were accurately presented by Officer Ojaniit to the jury. On cross-examination, he answered questions regarding the discrepancy between the comments on the margins of the photo lineup ("looks most like") and the written report of the interview with Wood ("looks like the suspect."). (Id. at 208-09). In light of this testimony, the Court declines to consider the semantic differences, if any, between the terms "most like" and "like" as both versions were presented to the jury for its consideration. At no point did Officer Ojaniit claim that his written report was an exact transcript; nor is the Court aware of any law that requires written reports of interviews to be such. Thus, the Court finds that the Plaintiff has failed to plead plausibly any Due Process violation against Officer Ojaniit and will dismiss Count I against him.

2. Count II:  Unreasonable Seizure

Plaintiff's second claim alleges that Defendant Ojaniit "initiated and continued a criminal prosecution against Massey" for armed robbery and kidnapping even though he knew of the absence of probable cause.  (Doc. No. 1 at 10).   Construing Plaintiff's Complaint liberally, Massey alleges that, with reckless disregard for truth, Officer Ojaniit made a material false statement in his report of Wood's identification of Massey.  Plaintiff does not plausibly connect Officer Ojaniit to Officer Esposito's alleged fabrication: he does not allege that Officer Ojaniit was present during the interview or communicated with Officer Esposito about the fabricated statement.  His Fourth Amendment claim is limited to this overstatement.

Even if this Court assumes that the magistrate had Officer Ojaniit's written report and not his written comments on the actual photo lineup, Plaintiff's claim against Officer Ojaniit would fail to sufficiently state a claim.  The alleged misrepresentation here – the alleged omission of the word "most" – is immaterial as a matter of law.  "To determine materiality, a court must excise the offending inaccuracies and insert facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause. Miller, 475 F.3d at 628 (internal quotation omitted).  Plaintiff has not plausibly pled that probable cause to arrest Massey disappears upon the inclusion of the word "most" in his report.  Therefore, the Court will dismiss Count II against Officer Ojaniit.

C.    Officer Ledford

Plaintiff does not allege that Defendant Ledford personally engaged in any misconduct. Instead, he alleges that he conspired with Officers Ojaniit and Esposito to deprive Plaintiff of his rights.  (Doc. No. 1 at 5,11).  Ledford raises qualified immunity and state public official immunity defenses.  (Doc. No. 21 at 6).  The Court, however, does not reach the issue of whether

25

any violation was clearly established because Plaintiff has failed to plead plausibly any violation in Counts I and II against Ledford. Plaintiff must establish the violation of a constitutional right to defeat qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). Therefore, Plaintiff's allegations in Counts I and II are will be dismissed against Officer Ledford.

3. Count III: Conspiracy

To establish conspiracy under § 1983, a plaintiff must present evidence that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996) (considering summary judgment). To state a claim, Plaintiff "needed to plead facts that would 'reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" Ruttenberg v. Jones, 283 F. App'x 121, 132 (4th Cir. 2008) (unpublished) (quoting Hinkle, 81 F.3d at 421). "[T]he bare, conclusory allegation that the defendants conspired to violate his constitutional rights and that the conspiracy culminated in the fabricated testimony" is not enough. Id. A "plausible suggestion of conspiracy" is required. Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 566 (2007).

Plaintiff's complaint recites that the "Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Massey of his constitutional rights by charging and prosecuting him on charges … which these Defendants knew were not supported by probable cause." (Doc. No. 1 at 11). Plaintiff, however, has failed to plead any facts that would "reasonably lead to the inference" of an agreement among Defendants. Hinkle, 81 F.3d at 421. Plaintiff pled that the Defendants: fabricated a statement attributed to April Pride; pursued a baseless prosecution; and made false

26

pretenses to prosecutors with the intent to further some purpose of the conspiracy. (Doc. No. 1 at

11). Absent from the Complaint are any allegations supporting the inference of an agreement.

The only specific allegation in Count III is against Officer Esposito. Plaintiff does not allege any

facts to suggest that Officer Esposito's fabrication was anything other than unilateral. See

Twombly, 550 U.S. at 566-67. Therefore, the Court will dismiss Count III against all

Defendants.

### 4. Counts IV and V: North Carolina State Claims

Plaintiff lodges several state law claims including obstruction of justice, false

imprisonment, civil conspiracy and malicious prosecution and conspiracy.

#### a. Obstruction of Justice

Obstruction of justice is a common law offense in North Carolina. In re Kivett, 309

S.E.2d 442, 462 (N.C. 1983). "At common law, it is an offense to do any act which prevents,

obstructs, impedes or hinders public of legal justice." Id. It does not appear that obstruction of

justice has been construed by North Carolina courts to extend to claims against police officers

acting in their official capacity. In Evans v. Chalmers, the Fourth Circuit reversed a district

court's decision to allow such a claim to go forward, concluding that "in forecasting whether

North Carolina would recognize such an action … we must conclude that although such a

holding may be a remote "possibility," it is not a reality." 703 F.3d at 658 (citing Wilson v. Ford

Motor Co., 656 F.2d 960, 960 (4th Cir. 1981)). Accordingly, the Court will dismiss the

obstruction of justice claim against all officers.

#### b. False Imprisonment and Malicious Prosecution

The analysis for both false imprisonment and malicious prosecution turns on whether the

defendants had probable cause to arrest Massey. "False imprisonment" has been defined as "the

illegal restraint of a person against his will." Marlowe v. Piner, 458 S.E.2d 220, 223 (1995). Specifically, an arrest without probable cause lacks legal authority and is therefore unlawful. State v. Zuniga, 322 S.E.2d 140, 145 (N.C. 1984).

To maintain an action for malicious prosecution, the plaintiff must demonstrate that the defendant (1) instituted, procured or participated in the criminal proceeding against the plaintiff; (2) without probable cause; and (3) with malice; and (4) the prior proceeding terminated in plaintiff's favor. State v. Moore, 476 S.E.2d 415, 421 (N.C. Ct. App. 1996). Malice "can be inferred from the want of probable cause alone." Fowler v. Valencourt, 423 S.E.2d 785, 788 (N.C. Ct. App. 1992). Having found that probable cause existed to arrest Massey, the Court will dismiss Plaintiff's false imprisonment and malicious prosecutions claims against all Defendants.

c.   Conspiracy

For his state law conspiracy claim, Plaintiff incorporated the facts alleged in the earlier counts and did not include any additional facts. Accordingly, and for the same reasons as related to the conspiracy claim brought under §1983, the Court finds that Plaintiff has not alleged facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Ruttenberg, 283 F. App'x at 132 (quoting Hinkle, 81 F.3d at 421). Therefore, the Court will dismiss Plaintiff's conspiracy claims in Counts IV and V against all Defendants.

D.   Defendants John and Jane Doe 1-10

Plaintiff has not identified or served Defendants "John and Jane Does ##1-10." The trial transcript does not indicate the involvement of additional officers in the case, nor do the facts alleged and exhibits submitted suggest the involvement of additional persons whose identity might be obtained through discovery or intervention by this court. "[I]f it does not appear that

28

the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court should dismiss the action without prejudice." <u>Schiff v. Kennedy</u>, 691 F.2d 196, 198 (4th Cir. 1982). Therefore, the Court will dismiss all claims against unknown Defendants "John and Jane Doe ##1-10" without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, this Court **DISMISSES** plaintiff's claims against all Defendants. Count I is **DISMISSED** against Defendant Esposito because Plaintiff has failed to state a constitutional violation and against Defendants Ojaniit and Ledford for failure to state a claim upon which relief can be granted. Count II is **DISMISSED** against Defendant Esposito for failure to state a constitutional violation and against Defendants Ojaniit and Ledford for failure to state a claim upon which relief can be granted. Counts III, IV and V are **DISMISSED** against all Defendants for failure to state a claim upon which relief can be granted.

**IT IS, THEREFORE, ORDERED** that:

1.    The Magistrate Judge's M&R (Doc. No. 44) is **ADOPTED in part;**

2.    Defendant Esposito's Motion for Judgment on the Pleadings (Doc. No. 16) is **GRANTED**;

3.    Defendant Ojaniit's Motion for Judgment on the Pleadings (Doc. No. 18) is **GRANTED**;

4.    Defendant Ledford's Motion for Judgment on the Pleadings (Doc. No. 20) is **GRANTED**; and

29

**5.** Plaintiff's Complaint (Doc. No. 1) in its entirety is **DISMISSED.**

Signed: March 29, 2013

Robert J. Conrad, Jr.
Chief United States District Judge